04-CV-01599-CMP

—— FILED ——ENTERED
—— LODGED——RECEIVED

JUL 20 2004    DJ

AT SEATTLE
CLERK U.S. DISTRICT COURT
BY WESTERN DISTRICT OF WASHINGTON
DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| SOUTH FERRY LP #2, Individually And On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> KERRY K. KILLINGER, THOMAS W. CASEY, DEANNA W. OPPENHEIMER, WILLIAM W. LONGBRAKE, CRAIG J. CHAPMAN, JAMES G. VANASEK, MICHELLE MCCARTHY, and WASHINGTON MUTUAL, INC., <br><br> Defendants. | No.: **CV4 1599** <br><br> <u>CLASS ACTION</u> <br><br><br> CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS <br><br> <u>DEMAND FOR JURY TRIAL</u> |

COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS

Milberg Weiss Bershad & Schulman LLP
1001 Fourth Avenue, Suite 2550
Seattle, WA 98154
Telephone: 206-839-0730 Fax: 206-839-0728

DOCS\213327v2

**INTRODUCTION**

1.    This is a federal class action on behalf of purchasers of the securities and/or sellers of put options of Washington Mutual, Inc. ("Washington Mutual," or the "Company") between April 15, 2003 and June 28, 2004, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

**OVERVIEW**

2.    By April 2003, Washington Mutual had grown from $21 billion in banking assets in 1990 to over $261 billion in assets under management. After recently making almost $25 billion in major banking acquisitions, including acquisitions of New York-based Dime Bancorp ($5.3 billion in cash and stock) and Fleet Mortgage Corp. ($7.5 billion in cash), Washington Mutual emerged as one of the 10 largest U.S. banks (measured by assets); by far the largest Savings & Loan and loan servicing entity and the second largest mortgage-loan originator in the country. Moreover, by the inception of the Class Period, Washington Mutual had publicly promoted itself as a "Category Killer" - - the "Wal-Mart of Consumer Finance." According to defendants, Washington Mutual's plan for profits and disciplined management would allow it to "revolutionize" consumer banking.

3.    Accordingly, throughout the Class Period, defendants consistently represented that Washington Mutual could achieve organic growth regardless of any expected interest rate increases because of its dynamic business model. In addition, defendants also claimed that they engaged in sophisticated financial hedging strategies that allowed Washington Mutual to diversify any additional risk that would otherwise subject the Company to disruptive volatility.

COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS                                       - 1 -

Milberg Weiss Bershad & Schulman LLP
1001 Fourth Avenue, Suite 2550
Seattle, WA 98154
Telephone: 206-839-0730 Fax: 206-839-0728

DOCS\213327v2

4.    Unbeknownst to investors, however, throughout the Class Period the Company was suffering from a host of undisclosed adverse factors which were negatively impacting its business, and which would foreseeably cause Washington Mutual to report declining financial results, materially less than the market expectations defendants had caused and cultivated.  In particular:

• At all times during the Class Period, it was materially false and misleading for defendants to claim that defendants were able to properly hedge the Company's financial and market risk.

• At all times during the Class Period, it was materially false and misleading for defendants to claim that Washington Mutual maintained a unique business strategy that would allow the Company to achieve growth and profitability in light of foreseeable changes in market conditions for interest rates.

• At all times during the Class Period, it was materially false and misleading for defendants to claim that defendants maintained adequate systems of internal financial, operational or market controls, so as to assure investors that defendants public statements were true and accurate at all times.

• At all times during the Class Period, it was materially false and misleading for defendants to claim that Washington Mutual's $25 billion acquisition spree was being integrated seamlessly into the Company and that, as a result, Washington Mutual was operating according to guidance sponsored and/or endorsed by defendants.

• As a result of the aforementioned adverse conditions which defendants failed to disclose, throughout the Class Period, defendants lacked any reasonable basis to claim that Washington Mutual was operating according to plan, that sufficient sources of funding were achieved and/or available to Washington Mutual or that the Company could maintain profitability or even remain a viable entity in the foreseeable near-term.

5.    On June 29, 2004, however, investors learned the truth about Washington Mutual after defendants issued a press release announcing a very significant earnings and net income shortfall which far exceeded any guidance previously sponsored and endorsed by defendants. According to this release, increases in interest rates had, in fact, impacted the Company's mortgage banking business to such an extent that earnings for the full year were revised to as low

COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS

DOCS\213327v2

- 2 -

Milberg Weiss Bershad & Schulman LLP
1001 Fourth Avenue, Suite 2550
Seattle, WA 98154
Telephone: 206-839-0730 Fax: 206-839-0728

as $3.00 per share, compared to up to $4.80 per share guidance provided at the inception of the Class Period. Also, according to defendants, they had not properly hedged the Company's interest rate risk such that it was now having a material adverse impact on Washington Mutual.

## JURISDICTION AND VENUE

6.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the United States Securities and Exchange Commission ("SEC") [17 C.F.R. § 240.10b-5].

7.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

8.      Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b). Washington Mutual maintains its principal place of business in this District and many of the acts and practices complained of herein occurred in substantial part in this District.

9.      In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

10.      Plaintiff South Ferry LP #2 as set forth in the accompanying certification, incorporated by reference herein, purchased the securities and/or sold put options of Washington Mutual at artificially inflated prices during the Class Period, and has been damaged thereby.

COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS                                    - 3 -

DOCS\213327v2

Milberg Weiss Bershad & Schulman LLP
1001 Fourth Avenue, Suite 2550
Seattle, WA 98154
Telephone: 206-839-0730 Fax: 206-839-0728

11.    Defendant Washington Mutual, Inc. is a Washington corporation with its principal place of business at 1201 Third Avenue, Seattle, Washington.  According to the Company's press releases, Washington Mutual is a retailer of financial services that provides a diversified line of products and services to consumers and commercial clients. At March 31, 2004, Washington Mutual and its subsidiaries had assets of $280.77 billion, and currently operates more than 2,400 retail banking, mortgage lending, commercial banking and financial services offices throughout the United States.

12.    Defendant Kerry K. Killinger ("Killinger") maintained dominance and control over the Company during the Class Period and, throughout this time, consolidated power over the Company by simultaneously holding the offices of Chairman of the Board of Directors, President and Chief Executive Officer of Washington Mutual.

13.    Defendant Thomas W. Casey ("Casey") was during the Class Period, Executive Vice President and Chief Financial Officer of the Company.

14.    Defendant Deanna W. Oppenheimer ("Oppenheimer") was during the Class Period, President of the Consumer Group, the Company's other division.

15.    Defendant William W. Longbrake ("Longbrake") was, during the Class Period, Vice Chairman of the Board of Directors and Controller of Washington Mutual.

16.    Defendant Craig J. Chapman ("Chapman") was during the Class Period, President of the Company's Commercial Group and Chief Administrative Officer of the Company.

17.    Defendant James G. Vanasek ("Vanasek") was during the Class Period, Executive Vice President and Chief Enterprise Risk Officer of the Company.

COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS                                              - 4 -

Milberg Weiss Bershad & Schulman LLP
1001 Fourth Avenue, Suite 2550
Seattle, WA 98154
Telephone: 206-839-0730 Fax: 206-839-0728

DOCS\213327v2

18.    Defendant Michelle McCarthy ("McCarthy") was during the Class Period, Senior Vice President and Market Risk Manager of the Company, having assumed this position on or about April 28, 2003.

19.    The defendants referenced above in ¶¶ 12 - 18 are referred to herein as the "Individual Defendants."

20.    Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about its business, operations, products, operational trends, financial statements, hedging and related activities, markets and present and future business prospects *via* access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith.

21.    It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein are the collective actions of the narrowly defined group of defendants identified above. Each of the above officers of Washington Mutual, by virtue of their high-level positions with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations, products, growth, financial statements, hedging and related activities and financial condition, as alleged herein.    Said

Milberg Weiss Bershad & Schulman LLP
1001 Fourth Avenue, Suite 2550
Seattle, WA 98154
Telephone: 206-839-0730 Fax: 206-839-0728

defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware, or deliberately disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

22.     As officers and controlling persons of a publicly-held company whose securities were, and are, registered with the SEC pursuant to the Exchange Act, and was traded on the New York Stock Exchange (the "NYSE"), and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate promptly, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, hedging and related activities, financial statements, business, products, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded securities would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

23.     The Individual Defendants participated in the drafting, preparation, and/or approval of the various public and shareholder and investor reports and other communications complained of herein and were aware of, or deliberately disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature. Because of their Board membership and/or executive and managerial positions with Washington Mutual, each of the Individual Defendants had access to the adverse undisclosed information about Washington Mutual's business prospects and financial condition

COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS                    - 6 -

DOCS\213327v2

Milberg Weiss Bershad & Schulman LLP
1001 Fourth Avenue, Suite 2550
Seattle, WA 98154
Telephone: 206-839-0730 Fax: 206-839-0728

and performance as particularized herein and knew (or deliberately disregarded) that these adverse facts rendered the positive representations made by or about Washington Mutual and its business issued or adopted by the Company materially false and misleading.

24.     The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and releases detailed herein and is therefore primarily liable for the representations contained therein.

25.     Each of the defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Washington Mutual securities and/or sellers of put options by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding Washington Mutual's business, operations, management and the intrinsic value of Washington Mutual securities; and (iii) caused plaintiff and other members of the Class to purchase Washington Mutual securities and/or sell put options at artificially inflated prices.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

26.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the securities and/or sold put options of Washington Mutual between April

Milberg Weiss Bershad & Schulman LLP
1001 Fourth Avenue, Suite 2550
Seattle, WA 98154
Telephone: 206-839-0730 Fax: 206-839-0728

15, 2003 and June 28, 2004, inclusive (the "Class") and who were damaged thereby. Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

27.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Washington Mutual common shares were actively traded on the NYSE. As of April 30, 2003, the Company had over 930 million shares issued and outstanding. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Washington Mutual or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

28.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

29.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

30.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS                                   - 8 -

DOCS\213327v2

Milberg Weiss Bershad & Schulman LLP
1001 Fourth Avenue, Suite 2550
Seattle, WA 98154
Telephone: 206-839-0730 Fax: 206-839-0728

(a)   whether the federal securities laws were violated by defendants' acts as alleged herein;

(b)   whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Washington Mutual; and

(c)   to what extent the members of the Class have sustained damages and the proper measure of damages.

31.   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

### Defendants' Materially False and Misleading
### Statements Made During the Class Period

32.   **1Q:03 Results.**   On April 15, 2003, the beginning of the Class Period, Washington Mutual published a release on *Business Wire* which purported to announce "record" financial results for the first quarter of 2003, the period ended March 31, 2003, in part, as follows:

> "Washington Mutual entered 2003 in an excellent position and we're poised to continue the momentum as the year progresses," said Kerry Killinger, the company's chairman, president and CEO. "Our record-breaking first quarter results reflect the strength of our underlying strategy of serving the broad middle

COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS

- 9 -

Milberg Weiss Bershad & Schulman LLP
1001 Fourth Avenue, Suite 2550
Seattle, WA 98154
Telephone: 206-839-0730 Fax: 206-839-0728

DOCS\213327v2

market by providing the combination of great value and efficient, friendly service. We are extremely proud of the first quarter results that our talented employees produced." (Emphasis added.)[1]

33. The Company's April 15, 2003 release also purported to provide near-term earnings and revenue guidance, in part, as follows:

## Outlook

"Despite the current challenges both domestically and internationally, our management team fully expects 2003 will be another record year for Washington Mutual," Killinger said. "Our business fundamentals remain strong and credit quality continues to perform in line with management's expectations."

"Our primary focus for the foreseeable future will be successfully executing our key business strategies, which are focused on internal growth and increased productivity, and continuing to make progress toward our long-term goal of building the nation's leading retailer of financial services to the broad middle market."

34. **Killinger CNBC Interview.** The following day, April 16, 2003, defendant Killinger appeared on the financial news cable-television network, CNBC, and granted an interview during which he continued to condition the market to believe that Washington Mutual was operating according to plan, and that the expected rise in interest rates would not have a foreseeable material adverse impact on Washington Mutual, as follows:

[W]e carefully manage all of the various portfolios we're in and we watch the national housing market very carefully. We do not have concerns that there is a housing bubble being created on a national basis. However, you know, at certain localities around the country we have been watching things very carefully and have adjusted our underwriting standards in certain parts of the country when that's appropriate. So, overall, you may have noticed that our credit quality actually improved in the most recent quarter. So we're very comfortable where things are at this point.

---

[1] Unless otherwise indicated, emphasis has been added.

Milberg Weiss Bershad & Schulman LLP
1001 Fourth Avenue, Suite 2550
Seattle, WA 98154
Telephone: 206-839-0730 Fax: 206-839-0728

35.   The statements contained in Washington Mutual's April 15, 2003 release and those made by defendants during the Company's 1Q:03 conference call, referenced above, were each materially false and misleading when made and were known by defendants to be false or were deliberately disregarded as such thereby at that time, for the following reasons, among others:

(a)   At all times during the Class Period, it was materially false and misleading for defendants to claim that defendants were able to properly hedge the Company's financial and market risk;

(b)   At all times during the Class Period, it was materially false and misleading for defendants to claim that Washington Mutual maintained a unique business strategy that would allow the Company to achieve growth and profitability in light of foreseeable changes in market conditions for interest rates;

(c)   At all times during the Class Period, it was materially false and misleading for defendants to claim that defendants maintained adequate systems of internal financial, operational or market controls, so as to assure investors that defendants public statements were true and accurate at all times;

(d)   At all times during the Class Period, it was materially false and misleading for defendants to claim that Washington Mutual's $25 billion acquisition spree was being integrated seamlessly into the Company and that, as a result, Washington Mutual was operating according to guidance sponsored and/or endorsed by defendants; and

(e)   As a result of the aforementioned adverse conditions which defendants failed to disclose, throughout the Class Period, defendants lacked any reasonable basis to claim

COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS                                         - 11 -

DOCS\213327v2

Milberg Weiss Bershad & Schulman LLP
1001 Fourth Avenue, Suite 2550
Seattle, WA 98154
Telephone: 206-839-0730 Fax: 206-839-0728

that Washington Mutual was operating according to plan, that sufficient sources of funding were
achieved and/or available to Washington Mutual or that the Company could maintain
profitability or even remain a viable entity in the foreseeable near-term.

36.    **1Q:03 Form 10-Q.**  On or about May 15, 2003, defendants filed with the SEC the
Company's quarterly financial report, pursuant to Form 10-Q. In addition to making many of the
same, or substantially similar, representations to those made previously on April 15, 2003, the
1Q:03 Form 10-Q also stated, in part, the following:

**Basis of Presentation**

The accompanying Consolidated Financial Statements are unaudited and include
the accounts of Washington Mutual, Inc. (together with its subsidiaries
"Washington Mutual" or the "Company"). Washington Mutual's accounting and
financial reporting policies are in accordance with accounting principles generally
accepted in the United States of America. The information furnished in these
interim statements reflects all adjustments that are, in the opinion of management,
necessary for a fair statement of the results for such periods....

\* \* \*

The Company continues to enhance its segment reporting process methodologies.
Changes to the operating segment structure and to certain of the foregoing
performance measurement methodologies, specifically funds transfer pricing,
were made during the first quarter of 2003. Additionally, effective January 1,
2003, the primary management responsibilities for the Company's originated
home loan mortgage-backed securities portfolio were transferred from the Home
Loans and Insurance Services Group to the Company's corporate treasury
operations.

The 1Q:03 Form 10-Q also contained representations that the Company maintained adequate
systems of internal operational controls as well as adequate systems of risk management and
fiscal controls. In addition to the foregoing, the 1Q:03 Form 10-Q also contained certifications
by defendants Killinger and Casey purporting to certify the veracity of the Company's financial
statements.

COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS

- 12 -

DOCS\213327v2

37.    The statements made by defendants to the investing public in late-April and early-May 2003, including those statements contained in the Company's 1Q:03 Form 10-Q filed with the SEC, referenced above, were each materially false and misleading when made and were known by defendants to be false or were deliberately disregarded as such thereby at that time, for the reasons stated herein in ¶ 35, *supra*.

38.    **2Q:03 Results.** On July 15, 2003, Washington Mutual published a release on *Business Wire* which purported to announce record setting financial results for the second quarter of 2003, the period ending June 30, 2003, in part, as follows:

> Based on the company's continued strong operating fundamentals, financial performance and capital generating ability, Washington Mutual's Board of Directors declared a cash dividend of 40 cents per share on the company's common stock, up 33 percent or 10 cents from 30 cents per share in the previous quarter. The company has now increased its cash dividend for 32 consecutive quarters.

> "The board's decision to significantly increase the cash dividend reflects the overall strength of our business and capital position as well as management's continued commitment to creating shareholder value," said Kerry Killinger, the company's chairman, president and CEO. "In addition, the recent reduction in the tax rate on dividend income allows us to more efficiently return capital to our shareholders."

> Killinger emphasized that in addition to the higher dividend payout, the company is maintaining its stated growth targets.

> *    *    *

> "Building on first quarter's momentum, Washington Mutual's balanced business model continued to deliver strong results in the second quarter," said Killinger. "Our record-breaking results reflect the strength of our underlying strategy of serving the broad middle market. We are extremely proud of the results that our talented employees have produced."

39.    **2Q:03 Form 10-Q.** On or about August 14, 2003, defendants filed with the SEC the Company's quarterly financial report pursuant to Form 10-Q. The 2Q:03 Form 10-Q also

COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS                                      - 13 -

Milberg Weiss Bershad & Schulman LLP
1001 Fourth Avenue, Suite 2550
Seattle, WA 98154
Telephone: 206-839-0730 Fax: 206-839-0728

DOCS\213327v2

contained representations that the Company maintained adequate systems of internal operational controls as well as adequate systems of risk management and fiscal controls. In addition to the foregoing, the 2Q:03 Form 10-Q also contained certifications by defendants Killinger and Casey purporting to certify the veracity of this report which were substantially similar, if not identical, to those certifications previously executed by these defendants and filed along with the Company's 1Q:03 Form 10-Q.

40.    The statements made by defendants to the investing public during investor conferences in June 2003, as well as those statements contained in the Company's July 15, 2003 release and its 2Q:03 Form 10-Q filed with the SEC, referenced above, were each materially false and misleading when made and were known by defendants to be false, or were deliberately disregarded as such thereby at that time, for the reasons stated herein in ¶ 35, *supra*.

41.    **Realignment.**    In an effort to further condition investors to believe that the Company continued to employ sufficient controls and procedures so as to assure the accuracy and truth of the Company's public disclosures, on September 30, 2003, defendants published a release on *Business Wire*, which purported to announce a Realignment "Intended to Drive Growth and Streamline Operations," which stated in part, the following:

> Washington Mutual Realigns Business Units; Move Intended To Drive Growth and Streamline Operations
>
> In a move that continues its evolution toward becoming America's leading retailer of financial services, Washington Mutual, Inc. (NYSE:WM) announced today its plans to align its principal business units around the company's primary customer groups of retail consumers and commercial clients.
>
> The realignment is designed to:

Milberg Weiss Bershad & Schulman LLP
1001 Fourth Avenue, Suite 2550
Seattle, WA 98154
Telephone: 206-839-0730 Fax: 206-839-0728

--    Create a more highly integrated and unified retailing strategy to maximize household growth and multiple product relationships with customers throughout the United States;

--    Deliver a superior customer experience across all delivery channels; and

--    Streamline and simplify operations, driving efficiencies and operational excellence throughout the company.

\*    \*    \*

Under the new structure, 18-year Washington Mutual veteran Deanna Oppenheimer, president of the company's Banking and Financial Services group, will manage the company's largest retail consumer businesses of retail banking, home lending, consumer insurance services and its retail brokerage services.

\*    \*    \*

Under Oppenheimer's direction, Washington Mutual's retail banking group has produced consistent double-digit growth in deposition and fee income while growing the company's base of retail checking accounts by some 1.8 million over the past 18 months, ending at June 30, 2003 at 7.6 million. Washington Mutual is also on track to open 250 financial center stores in 2003.

\*    \*    \*

"We have solid, proven management teams in both our retail banking and home lending businesses," Oppenheimer said. "Our management team will be focused on accelerating household growth and cross-sales, driving operational excellence and taking advantage of the natural synergies that exist in the two complementary businesses."

42.    **3Q:03 Results.** On October 21, 2003, Washington Mutual published a release on *Business Wire* which purported to announce record setting financial results for the third quarter of 2003, the period ending September 30, 2003, in part, as follows:

"Continued growth of accounts and our key loan portfolios, and the expansion of our national franchise led to another solid quarter for the company" said Kerry Killinger, Washington Mutual's chairman, president and CEO. "Although the period was marked by significant volatility in interest rates, we continued to see positive trends in the key drivers of our business."

Milberg Weiss Bershad & Schulman LLP
1001 Fourth Avenue, Suite 2550
Seattle, WA 98154
Telephone: 206-839-0730 Fax: 206-839-0728

43.    The statements made by defendants to the investing public and contained in the Company's September 30, 2003 release and its October 21, 2003 release, were each materially false and misleading when made and were known by defendants to be false, or were deliberately disregarded as such thereby at that time, for the reasons stated herein in ¶ 35, *supra*.

44.    **3Q:03 Form 10-Q.** Later, on November 14, 2003, defendants also filed with the SEC the Company's quarterly financial report pursuant to Form 10-Q. In addition to making many of the same, or substantially similar, representations to those made previously on October 21, 2003, the 3Q:03 Form 10-Q also contained representations that the Company maintained adequate systems of internal operational controls as well as adequate systems of risk management and fiscal controls. In addition to the foregoing, the 3Q:03 Form 10-Q also contained certifications by defendants Killinger and Casey purporting to certify the truth of the Company's financial statements to certify the veracity of this report which were also substantially similar, if not identical, to those certifications previously executed by these defendants and filed along with the Company's 1Q:03 and 2Q:03 Forms 10-Q.

45.    The statements made by defendants and contained in the Company's 3Q:03 Form 10-Q filed with the SEC, referenced above, were materially false and misleading when made and were known by defendants to be false, or were deliberately disregarded as such thereby at that time, for the reasons stated herein in ¶ 35, *supra*.

46.    **Moderate Revision: Continuing Misrepresentations.** On December 9, 2003, Washington Mutual issued a release which purported to reaffirm and moderately adjust defendants' growth initiatives and guidance for 2004, and which also announced massive cost reduction and growth initiatives campaign, in part, as follows:

Milberg Weiss Bershad & Schulman LLP
1001 Fourth Avenue, Suite 2550
Seattle, WA 98154
Telephone: 206-839-0730 Fax: 206-839-0728

Washington Mutual, Inc. (NYSE: WM) today announced that in light of lower mortgage loan volume, increasingly competitive pricing in the mortgage market and a greater emphasis on the origination of adjustable-rate mortgages by the company, gain from mortgage loans will be significantly lower in the fourth quarter than in the second quarter of 2003. As a result, the company expects earnings per diluted share for 2003 to range between $4.15 and $4.25, up from earnings of $4.02 per diluted share in 2002.

In light of the changed conditions and uncertain outlook for the mortgage market, the company also said it will broaden its outlook for diluted earnings per share for 2004 to a range of $4.30 to $4.80.

"Washington Mutual benefited from extraordinary mortgage volumes over the past few years, which allowed us to fund the expansion of a national retail banking franchise and multi-family lending business while producing solid earnings growth," said Kerry Killinger, chairman, president and chief executive officer, who spoke at the company's investor day in New York. "Now that the mortgage market has clearly slowed, we are adjusting our business to adapt to the new realities of the current environment. Therefore, we are taking steps to substantially reduce operating costs and streamline and improve operations to drive efficiency, enhance customer service and continue the growth of our leading national franchise."

Fourth Quarter 2003 Trends

The company said its mortgage volume in the fourth quarter is projected to decrease by approximately 50 percent from third quarter levels. Competitive pricing pressure throughout the fourth quarter has also eroded the expected gain from mortgage loans. Washington Mutual's average gain per loan, net of risk management instruments, was 47 basis points in this year's second quarter and is estimated to decline to approximately 10 basis points in the fourth quarter. In addition, Washington Mutual has recently placed greater emphasis on the origination of adjustable-rate mortgages for portfolio, a core strength of the company, further reducing the opportunity for gain from mortgage loans.

\* \* \*

2004 Plans for Efficiencies, Continued Growth

As part of its organizational realignment, the company has stepped up its plans to streamline operations, gain added efficiency, and improve operational performance. Together with the cost savings efforts in the mortgage business, these initiatives will provide Washington Mutual with opportunities for further growth in its core consumer and commercial businesses.

COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS                                          - 17 -

Milberg Weiss Bershad & Schulman LLP
1001 Fourth Avenue, Suite 2550
Seattle, WA 98154
Telephone: 206-839-0730 Fax: 206-839-0728

DOCS\213327v2

Key elements of the 2004 plan include:

Identifying and eliminating approximately $1 billion in noninterest expense over a six-quarter time period, beginning in the first quarter of 2004. By mid-2005, the company's actual level of expenses is expected to fully reflect these cost reductions, but also the effects of normal inflation, business volumes, growth initiatives and any potential acquisitions. The $1 billion of cost reductions represents approximately 13 percent of the company's projected annualized noninterest expense base for the fourth quarter of 2003. The cost reductions will be accomplished by completing the full integration of Washington Mutual's mortgage acquisitions from 2001 and 2002, as well as capturing significant cost saving opportunities company-wide.

\*    \*    \*

Implementation of a series of initiatives to drive operational excellence throughout the company to gain added productivity and continuously improve upon the company's customer service levels.

"We are instilling a discipline of operational excellence as we work to make further inroads to be a low-cost leader in our industry," Killinger said. "Our management team is now more focused than ever on driving process efficiency and reducing cycle times to improve our operational performance and customer service levels throughout the organization."

47.    The statements made by defendants and contained in the Company's December 9, 2003 release, referenced above, were each materially false and misleading when made and were known by defendants to be false, or were deliberately disregarded as such thereby at that time, for the reasons stated herein in ¶ 35, *supra*.

48.    **Moderate Analysts Revisions.** As evidence that defendants' December 9, 2003 release did not communicate to investors the true scope of the adverse conditions which were the adversely impacting the Company, immediately following the publication of this release, Fitch debt rating service did not lower its rating on the Company's debt or adjust its credit rating in any way. Moreover, at that time, analysts at Citigroup and USBancorp, among others, only moderately adjusted their EPS estimates and near term price targets to account for defendants'

minor revisions.  Accordingly, at that time, Citigroup lowered its 2003 estimate to $4.18 per share, from $4.40, and 2004 EPS estimate to $4.35, from $4.76 per share; lowering its near-term market cap estimate to approximately *$44 billion*.  USBancorp lowered its 2003 and 2004 EPS estimates to $4.18 and $4.40, respectively, from $4.41 and $4.75, respectively; lowering its near-term price target to $42 per share, representing a market capitalization forecast of approximately *$42 billion.*

49.    **4Q and FY:03 Results.**  On January 20, 2004, Washington Mutual published a release on *Business Wire* which purported to announce record setting financial results for the fourth quarter and full year 2003, the period ending December 31, 2003, as follows:

> "The fourth quarter of 2003 brought to a close a successful year in which we continued to profitably expand our key businesses nationally and enhance the value of our franchise," said Kerry Killinger, the company's chairman, president and CEO.  "We continued to see marked improvement in our credit position as the year progressed as well.  While 2003 was a solid year for our company, rising interest rates for mortgages in the second half of the year placed pressure on our business results.  Our management team is meeting the challenge head on, as reflected in the $180 million of technology write-downs and severance charges taken during the fourth quarter, and we expect our efforts to reduce costs will contribute to our results in 2004."

> BOARD OF DIRECTORS INCREASES CASH DIVIDEND

> Based on the company's continued strong operating fundamentals and financial performance, Washington Mutual's Board of Directors declared a cash dividend of 42 cents per share on the company's common stock, up from 41 cents per share in the previous quarter.  Dividends on the common stock are payable on February 13, 2004 to shareholders of record as of January 30, 2004.

50.    **FY:2003 Form 10-K.**  On or about March 15, 2004, defendants filed with the SEC the Company's year end financial report pursuant to Form 10-K.  In addition to making many of the same or substantially similar representations to those made previously on January 20, 2004, the  FY:2003 Form 10-K also contained representations that the Company maintained

COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS

- 19 -

Milberg Weiss Bershad & Schulman LLP
1001 Fourth Avenue, Suite 2550
Seattle, WA 98154
Telephone: 206-839-0730 Fax: 206-839-0728

DOCS\213327v2

adequate systems of internal operational controls as well as adequate systems of risk management and fiscal controls. In addition to the foregoing, the FY:2003 Form 10-K also contained certifications by defendants Killinger and Casey purporting to certify the veracity of this report which were also substantially similar, if not identical, to those certifications previously executed by these defendants during the Class Period.

51.    The statements made by defendants and contained in the Company's January 20, 2004 release and in its FY:2003 Form 10-K filed with the SEC, referenced above, were each materially false and misleading when made and were known by defendants to be false, or were deliberately disregarded as such thereby at that time, for the reasons stated herein in ¶ 35, *supra*.

52.    **1Q:04 Results.** On April 19, 2004, Washington Mutual published a release on *Business Wire* which purported to announce continued strong financial results for the first quarter of 2004, the period ending March 31, 2004, as follows:

> Based on the company's continued strong operating fundamentals and financial performance, Washington Mutual's Board of Directors declared a cash dividend of 43 cents per share on the company's common stock, up from 42 cents per share previously. Dividends on the common stock are payable on May 14, 2004 to shareholders of record as of April 30, 2004.
>
> Key highlights:
>
> The company's results were led by strong growth in its Retail Banking and Financial Services business, whose net income increased by 23 percent year over year;
>
> The net interest margin remained essentially unchanged at 2.89 percent due to stable short-term rates and the company's successful interest rate risk management activities.

53.    **1Q:04 Form 10-Q.** On or about May 10, 2004, defendants also filed with the SEC the Company's quarterly financial report pursuant to Form 10-Q. In addition to making

COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS
- 20 -

Milberg Weiss Bershad & Schulman LLP
1001 Fourth Avenue, Suite 2550
Seattle, WA 98154
Telephone: 206-839-0730 Fax: 206-839-0728

DOCS\213327v2

many of the same, or substantially similar, representations to those made previously on April 19, 2004, the 1Q:04 Form 10-Q also contained representations that the Company maintained adequate systems of internal operational controls as well as adequate systems of risk management and fiscal controls. In addition to the foregoing, the 1Q:04 Form 10-Q also contained certifications by defendants Killinger and Casey purporting to certify truth of the Company's financial statements which were also substantially similar, if not identical, to those certifications previously executed by these defendants during the Class Period.

54.    The statements made by defendants and contained in the Company's April 19, 2004 release and its 1Q:04 Form 10-Q filed with the SEC, referenced above, were each materially false and misleading when made and were known by defendants to be false, or were deliberately disregarded as such thereby at that time, for the reasons stated herein in ¶ 35, *supra*.

## THE TRUE FINANCIAL AND OPERATIONAL CONDITION OF WASHINGTON MUTUAL IS DISCLOSED

55.    On June 29, 2004, Washington Mutual issued a release which surprised and alarmed investors. On that day, defendants suddenly announced a very significant earnings and net income shortfall which far exceeded any guidance previously sponsored and endorsed by defendants, as follows:

> Washington Mutual Adjusts Earnings Outlook for 2004; Rising Interest Rates Impact Mortgage Banking; Growth in Retail Banking & Financial Services Continues
>
> Washington Mutual, Inc. (NYSE: WM) today announced that expectations *for a sustained increase in long-term interest rates will significantly impact the company's Mortgage Banking business resulting in 2004 earnings below previous guidance.* Higher interest rates have lowered the company's mortgage production expectations at a time when cost reduction plans have not yet fully taken effect. The rise in interest rates is not expected to have a material effect on

Milberg Weiss Bershad & Schulman LLP
1001 Fourth Avenue, Suite 2550
Seattle, WA 98154
Telephone: 206-839-0730 Fax: 206-839-0728

the 2004 performance of the company's Retail Banking & Financial Services and Commercial Group businesses.

"It now appears to us that the shift in the interest rate environment in recent months, with a sharp increase in long-term rates and a related reduction in mortgage volumes, will continue through the rest of the year. The effects of these changes are likely to outpace the timing of ongoing cost reduction plans in our Mortgage Banking business," said Kerry Killinger, Chairman, President and Chief Executive Officer.

"We're disappointed in this change in our 2004 outlook and we will not be satisfied until we have completed the resizing of our expense base and improved the efficiency and performance of our Mortgage Banking business," continued Killinger. "At the same time, we will remain focused on executing our core middle-market retail strategy."

***Earnings for the full year are now estimated to range from $3.00 to $3.60 per diluted share.***

The following table provides additional detail on the company's expectations regarding 2004 earnings composition, based upon the company's operating segment reporting. The 2004 estimate range is based on the assumption that the Fed Funds rate will increase gradually by between 75 and 125 basis points during the second half of the year and that the 10-year treasury yield will end the year between 4.5 percent and 5.0 percent:

Earnings Per Diluted Share

|  | 2003 Actual | 1Q04 Actual | 2004 Estimate |
|---|---|---|---|
| Mortgage Banking | $1.44 | $0.25 | $(0.15)-$0.35 |
| Rest of Washington Mutual | $2.77 | $0.93 | $ 3.15 - $3.25 |
| Total | $4.21 | $1.18 | $ 3.00 - $3.60 |

56.    **$5.0 Billion in Market Cap. Eviscerated.** Following the publication of the Company's surprising and belated release, shares of the Company fell precipitously, ***reducing its market capitalization by nearly $5 billion in after-market trading.*** Washington Mutual common shares fell to $36.50 per share, from a closing price of $41.31 per share on June 29, 2004; a decline of nearly 12%. The decline in the price of the Company's common shares also had a dramatic, negative impact on the value of the Company's options and other securities.

COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS

DOCS\213327v2

- 22 -

Milberg Weiss Bershad & Schulman LLP
1001 Fourth Avenue, Suite 2550
Seattle, WA 98154
Telephone: 206-839-0730 Fax: 206-839-0728

57.    The market for Washington Mutual's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and failures to disclose, Washington Mutual securities traded at artificially inflated prices during the Class Period.    Plaintiff and other members of the Class purchased or otherwise acquired Washington Mutual securities and/or sold put options relying upon the integrity of the market price of Washington Mutual securities and market information relating to Washington Mutual, and have been damaged thereby.

58.    During the Class Period, defendants materially misled the investing public, thereby inflating the price of Washington Mutual securities by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

59.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by plaintiff and other members of the Class. As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about Washington Mutual's business, prospects and operations.    These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Washington Mutual and its business, prospects and operations, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in

COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS

- 23 -

DOCS\213327v2

Milberg Weiss Bershad & Schulman LLP
1001 Fourth Avenue, Suite 2550
Seattle, WA 98154
Telephone: 206-839-0730 Fax: 206-839-0728

plaintiff and other members of the Class purchasing the Company's securities and/or selling put

options at artificially inflated prices, thus causing the damages complained of herein.

### Applicability Of Presumption Of Reliance:
### Fraud-On-The-Market Doctrine

60.     At all relevant times, the market for Washington Mutual's securities was an

efficient market for the following reasons, among others:

(a)     Washington Mutual's securities met the requirements for listing, and was

listed and actively traded on the New York Stock Exchange, a highly efficient and automated

market;

(b)     As a regulated issuer, Washington Mutual filed periodic public reports

with the SEC and the New York Stock Exchange;

(c)     Washington Mutual regularly communicated with public investors *via*

established market communication mechanisms, including through regular disseminations of

press releases on the national circuits of major newswire services and through other wide-

ranging public disclosures, such as communications with the financial press and other similar

reporting services; and

(d)     Washington Mutual was followed by several securities analysts employed

by major brokerage firm(s) who wrote reports which were distributed to the sales force and

certain customers of their respective brokerage firm(s).   Each of these reports was publicly

available and entered the public marketplace.

61.     As a result of the foregoing, the market for Washington Mutual securities

promptly digested current information regarding Washington Mutual from all publicly available

sources and reflected such information in Washington Mutual securities prices.   Under these

COMPLAINT FOR VIOLATION OF THE FEDERAL.
SECURITIES LAWS                                     - 24 -

DOCS\213327v2

Milberg Weiss Bershad & Schulman LLP
1001 Fourth Avenue, Suite 2550
Seattle, WA 98154
Telephone: 206-839-0730 Fax: 206-839-0728

1  circumstances, all purchasers and/or sellers of Washington Mutual securities during the Class

2  Period suffered similar injury through their purchase of Washington Mutual securities and/or sale

3  of put options at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

6  62.  The statutory safe harbor provided for forward-looking statements under certain

7  circumstances does not apply to any of the allegedly false statements pleaded in this complaint.

8  Many of the specific statements pleaded herein were not identified as "forward-looking

9  statements" when made.  To the extent there were any forward-looking statements, there were no

10  meaningful cautionary statements identifying important factors that could cause actual results to

11  differ materially from those in the purportedly forward-looking statements.  Alternatively, to the

12
13  extent that the statutory safe harbor does apply to any forward-looking statements pleaded

14  herein, defendants are liable for those false forward-looking statements because at the time each

15  of those forward-looking statements was made, the particular speaker knew that the particular

16  forward-looking statement was false, and/or the forward-looking statement was authorized

17  and/or approved by an executive officer of Washington Mutual who knew that those statements

18  were false when made.

## BASIS OF ALLEGATIONS

21  63.  Plaintiff has alleged the following based upon the investigation of plaintiff's

22  counsel, which included a review of SEC filings by Washington Mutual, as well as regulatory

23  filings and reports, securities analysts' reports and advisories about the Company, press releases

24  and other public statements issued by the Company, and media reports about the Company, and

COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS                                    - 25 -

Milberg Weiss Bershad & Schulman LLP
1001 Fourth Avenue, Suite 2550
Seattle, WA 98154
Telephone: 206-839-0730 Fax: 206-839-0728

DOCS\213327v2

1  plaintiff believes that substantial additional evidentiary support will exist for the allegations set

2  forth herein after a reasonable opportunity for discovery.

3

4  ### FIRST CLAIM

5  ### Violation Of Section 10(b) Of
   ### The Exchange Act And Rule 10b-5
6  ### Promulgated Thereunder Against All Defendants

7      64.    Plaintiff repeats and realleges each and every allegation contained above as if

8  fully set forth herein.

9      65.    During the Class Period, defendants carried out a plan, scheme and course of

10  conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing

11  public, including plaintiff and other Class members, as alleged herein; and (ii) caused plaintiff

12  and other members of the Class to purchase Washington Mutual securities and/or sell put options

13  at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct,

14
15  defendants, jointly and individually (and each of them,) took the actions set forth herein.

16     66.    Defendants (a) employed devices, schemes, and artifices to defraud; (b) made

17  untrue statements of material fact and/or omitted to state material facts necessary to make the

18  statements not misleading; and (c) engaged in acts, practices, and a course of business which

19  operated as a fraud and deceit upon the purchasers of the Company's securities and/or sellers of

20  put options in an effort to maintain artificially high market prices for Washington Mutual's

21
22  securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All defendants are

23  sued either as primary participants in the wrongful and illegal conduct charged herein or as

24  controlling persons as alleged below.

25

26

COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS                                    - 26 -

DOCS\213327v2

Milberg Weiss Bershad & Schulman LLP
1001 Fourth Avenue, Suite 2550
Seattle, WA 98154
Telephone: 206-839-0730 Fax: 206-839-0728

67.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Washington Mutual as specified herein.

68.    These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Washington Mutual's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Washington Mutual and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Washington Mutual securities during the Class Period.

69.    Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the

COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS

DOCS\213327v2

- 27 -

Milberg Weiss Bershad & Schulman LLP
1001 Fourth Avenue, Suite 2550
Seattle, WA 98154
Telephone: 206-839-0730 Fax: 206-839-0728

Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or deliberately disregarded was materially false and misleading.

70. The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with deliberate disregard for the truth in that they failed to ascertain and to disclose such facts. Such defendants' material misrepresentations and/or omissions were done knowingly or deliberately and for the purpose and effect of concealing Washington Mutual's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by defendants' overstatements and misstatements of the Company's business, operations and earnings throughout the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, deliberately disregarded their obligation to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

71. As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Washington Mutual securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of Washington Mutual's publicly-traded securities was artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which these securities trade, and/or on the absence of material adverse information that was known to or deliberately disregarded by defendants but not disclosed in

COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS                    - 28 -

DOCS\213327v2

Milberg Weiss Bershad & Schulman LLP
1001 Fourth Avenue, Suite 2550
Seattle, WA 98154
Telephone: 206-839-0730 Fax: 206-839-0728

public statements by defendants during the Class Period, plaintiff and the other members of the Class acquired and/or sold Washington Mutual securities during the Class Period at artificially high prices and were damaged thereby.

72.    At the time of said misrepresentations and omissions, plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Washington Mutual was experiencing, which were not disclosed by defendants, plaintiff and other members of the Class would not have purchased or otherwise acquired their Washington Mutual securities, or, if they had acquired such securities during the Class Period, and/or if they had sold put options, they would not have done so at the artificially inflated prices.

73.    By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

74.    As a direct and proximate result of defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation Of Section 20(a) Of
### The Exchange Act Against Individual Defendants

75.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

76.    The Individual Defendants acted as controlling persons of Washington Mutual within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their

Milberg Weiss Bershad & Schulman LLP
1001 Fourth Avenue, Suite 2550
Seattle, WA 98154
Telephone: 206-839-0730 Fax: 206-839-0728

high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

77.     In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

78.     As set forth above, Washington Mutual and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' wrongful conduct, plaintiff and other members of the Class suffered damages in connection with their purchases and/or sales of the Company's securities during the Class Period.

**WHEREFORE**, plaintiff prays for relief and judgment, as follows:

Milberg Weiss Bershad & Schulman LLP
1001 Fourth Avenue, Suite 2550
Seattle, WA 98154
Telephone: 206-839-0730 Fax: 206-839-0728

A.     Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B.     Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

D.     Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 and any appropriate state law remedies to assure that the Class has an effective remedy; and

E.     Such other and further relief as the Court may deem just and proper.

Milberg Weiss Bershad & Schulman LLP
1001 Fourth Avenue, Suite 2550
Seattle, WA 98154
Telephone: 206-839-0730 Fax: 206-839-0728

1

**JURY TRIAL DEMANDED**

2

Plaintiff hereby demands a trial by jury.

3

Dated: July 20, 2004

4

5

**MILBERG WEISS BERSHAD
& SCHULMAN LLP**

6

7

8

Lori G. Feldman (WSBA #29096)

9

Douglas C. McDermott (WSBA #31500)
1001 Fourth Avenue Plaza, Suite 2550

10

Seattle, Washington 98154
Tel: (206) 839-0730

11

Fax: (206) 839-0728

12

13

**MILBERG WEISS BERSHAD
& SCHULMAN LLP**

14

Melvyn I. Weiss

15

Steven G. Schulman
Salvatore J. Graziano

16

One Pennsylvania Plaza
New York, New York 10119

17

Tel: (212) 594-5300
Fax: (212) 868-1229

18

19

**LAW OFFICES OF
MICHAEL A. SWICK, LLP**

20

Michael A. Swick

21

One William Street, Suite 900
New York, New York 10005

22

Tel: (212) 584 - 0770
Fax: (212) 584 - 0799

23

24

25

26

COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS

- 32 -

DOCS\213327v2

1

2       **BULL & LIFSHITZ, LLP**
        Peter D. Bull
        Joshua M. Lifshitz
3       18 East 41st Street, 11th Floor
        New York, New York 10017
4       Tel: (212) 213-6222
        Fax: (212) 213-9405

5       Attorneys for Plaintiff

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Milberg Weiss Bershad & Schulman LLP
1001 Fourth Avenue, Suite 2550
Seattle, WA 98154
Telephone: 206-839-0730 Fax: 206-839-0728

## CERTIFICATE OF NAMED PLAINTIFF

I, SOUTH FERRY LP #2, certify that:

    1.    I have reviewed the complaint and authorized its filing or the filing of a Motion for Lead Plaintiff on my behalf by Bull & Lifshitz, LLP.

    2.    I did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

    3.    I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

    4.    My transactions in Washington Mutual Inc. securities that are the subject of this litigation during the class period set forth in the complaint are as follows:

| Security | Date of Transaction | Amount of Shares Stating Whether Purchased(P) or Sold(S) | Price Per Share |
|---|---|---|---|
| WM+HV 8 $42.5 | 6/24/04 | P-1,000 | $1.00 |
| | | | |
| | | | |

    5.    I have not served as or sought to serve as a representative party on behalf of a Class under this title during the last three years.

    6.    I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court including the award to a representative of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

    The foregoing are, to the best of my knowledge and belief, true and correct statements.