UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SOUTH FERRY LP #2, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

KERRY K. KILLINGER, THOMAS W. CASEY, DEANNA W. OPPENHEIMER, WILLIAM W. LONGBRAKE, CRAIG J. CHAPMAN, JAMES G. VANASEK, MICHELLE MCCARTHY, and WASHINGTON MUTUAL INC.,

Defendants.

CASE NO. C04-1599C

ORDER

This matter has come before the Court on Defendants' motion for certification of an interlocutory appeal under 28 U.S.C. § 1292(b). (Dkt. No. 75.) Having carefully considered the papers filed by the parties in support of and in opposition to the motion, the Court has determined that no oral argument shall be necessary. For the reasons that follow, Defendants' motion is GRANTED.

I.  BACKGROUND

As the Court has detailed in previous orders, this case arises from Plaintiffs' claims that Defendants—consisting of Washington Mutual, Inc. ("WAMU") and certain of its senior executive officers—made materially false and misleading statements to the effect that WAMU was well positioned from a technology standpoint to avoid losses resulting from changes in interest rates. *See generally*

ORDER – 1

*South Ferry LP #2 v. Killinger*, 399 F. Supp. 2d 1121 (W.D. Wash. 2005). Following the Court's partial denial of Defendants' motion to dismiss, *id.*, Defendants moved for reconsideration. (Dkt. No. 75.) The Court denied reconsideration but called for further briefing regarding Defendants' alternative request for certification of an interlocutory appeal under 28 U.S.C. § 1292(b). (Dkt. No. 77.)

II.     INTERLOCUTORY APPEALS UNDER 28 U.S.C. § 1292(b)

A district court may exercise its discretion to certify an order for an immediate interlocutory appeal if the "order involves a controlling issue of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). An issue is "controlling" if "resolution of the issue on appeal could materially affect the outcome of litigation in the district court" and is not merely "collateral to the basic issues" in dispute. *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026–27 (9th Cir. 1981). The interlocutory appeal procedure has been described as appropriate in large, complex cases in which protracted and expensive litigation could be expected to follow the district court's disputed ruling. *See* 16 CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 3929 at 365 & n.10 (3d ed. 2006) (citing *U.S. Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966)).

III.    QUESTION TO BE APPEALED

   A.    *Bases for Court's Findings of Actual or Constructive Knowledge*

Defendants' motion presents two separate questions: (1) whether the Court relied on the "core operations" inference in finding that Defendants had actual or constructive knowledge of the falsity of their public statements; and (2) whether the core operations inference may form any part of the basis for a finding of scienter under the PSLRA. As to the first question, the Court found that Plaintiffs had met their burden to plead "'particular facts in the complaint, [which] taken as a whole, raise a strong inference that defendants intentionally or [with] deliberate recklessness made false or misleading statements to investors.'" *In re Read-Rite Corp. Sec. Litig.*, 335 F.3d 843, 846 (9th Cir. 2003) (quoting *Ronconi v. Larkin*, 253 F.3d 423, 429 (9th Cir. 2001)). Specifically, the Court found that Plaintiffs had included

ORDER – 2

sufficiently particularized allegations in the complaint describing (1) how WAMU's ability to effectively integrate the various information technology systems of its recent acquisitions would impact its ability to withstand changes in the interest-rate environment; (2) the availability of contemporaneous information indicating that WAMU had *not* effectively integrated those technologies, and thus had exposed itself to significant interest-rate risks[1]; (3) the Defendants' job responsibilities and potential exposure to this contradictory information; and (4) the specificity with which Defendants' public statements referred to these technologies yet denied the apparent scope and effect of the problems. *Killinger*, 399 F. Supp. 2d at 1139–43. Because these technological and operational problems "were critical to WAMU's core operations," the Court concluded that knowledge of contemporaneous contradictory information about those problems could be imputed "to those Defendants making statements about them." *Id.* at 1141–42.

  C. *Viability of the Core Operations Inference*

  As to the second question, the Court stated in its order denying reconsideration that it does not interpret the *Read-Rite* case as categorically rejecting the proposition that specific allegations of core operations problems could form some part of the basis for a scienter finding. (Dkt. No. 77.) Indeed, Ninth Circuit cases have consistently emphasized the importance of analyzing "the complaint in its entirety to determine whether the totality of facts and inferences demonstrate a strong inference of scienter." *Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002); *accord Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 948 (9th Cir. 2005); *Read-Rite*, 335 F.3d at 846. The *Read-Rite* case itself affirmed the district court's finding that the complaint had failed to include specific allegations of false or misleading statements made during a time when the defendants knew of those statements' falsity. *Read-Rite*, 335 F.3d at 846. Based on this lack of specific allegations, the court held

---

[1] Defendants' present motion is not addressed to the Court's finding that, based on information provided by certain of Plaintiffs' confidential witnesses, the complaint pled with sufficient particularity the existence of contemporaneous contradictory information. *Id.* at 1140. Instead, Defendants target the finding that they had knowledge of this contradictory information when they made their statements.

ORDER – 3

that plaintiffs could establish only a "reasonable inference" of scienter rather than the required strong inference. *Id.* at 848.

However, the *Read-Rite* court also noted that *Epstein v. Itron, Inc.*, 993 F. Supp. 1314 (E.D. Wa. 1998), which plaintiffs cited for the proposition that "facts critical to a business's core operations or an important transaction generally are so apparent that their knowledge may be attributed to the company and its key officers," predated the PLSRA's "strong inference" requirement. *Read-Rite*, 335 F.3d at 848. This language has led a number of district courts in this circuit to interpret *Read-Rite* as restricting to a greater or lesser degree the viability of the "core operations inference" as a basis for a scienter finding under the PLSRA. *See, e.g.*, *Wojtunik v. Kealy*, 394 F. Supp. 2d 1149, 1168 (D. Ariz. 2005) (*Read-Rite* rejected strong inference "that defendants would be aware of financial-related misrepresentations based on their job duties"); *In re Bus. Objects S.A. Sec. Litig.*, No. C04-2401, 2005 WL 1787860, at *8 n.3 (N.D. Cal. Jul. 27, 2005) (construing *Read-Rite* as "rejecting the notion that a strong inference of scienter can be presumed from allegations that relate to a company's core operations"); *In re Metawave Commc'ns Corp. Sec. Litig.*, 298 F. Supp. 2d 1056, 1075 n.9 (W.D. Wa. 2003) ("*Epstein* and its presumption that knowledge can be imputed to key executives may not be viable in the Ninth Circuit after [*In re Silicon Graphics Sec. Litig.*, 183 F.3d 970 (9th Cir. 1999)].").

Although each of the cases cited above ultimately found plaintiffs' allegations insufficiently specific, the Court recognizes that the cases do provide substantial grounds for a difference of opinion as to the viability of the core operations inference. *See APCC Servs., Inc. v. AT&T Corp.*, 297 F. Supp. 2d 101, 107 (D.D.C. 2003) ("A substantial ground for dispute also exists where a court's challenged decision conflicts with decisions of several other courts."). Specifically, these cases raise at least the possibility that under the PLSRA, plaintiffs may no longer rely on even the most specific, particularized allegations if their scienter theory requires an inference that "facts critical to a business's core operations or important transaction are known to a company's key officers." *In re Northpoint Commc'ns Group, Inc. Sec. Litig.*, 184 F. Supp. 2d 991, 998 (N.D. Cal. 2001).

ORDER – 4

It is also apparent that the viability of the core operations inference is central to the outcome of this case: notwithstanding the specificity of Plaintiffs' allegations, the complaint does rely on circumstantial evidence and an inference of knowledge arising from the connection between Defendants' job roles and the core operations of the business. *See Killinger*, 399 F. Supp. 2d at 1142 ("Plaintiffs' circumstantial evidence regarding this factor alone is sufficient."). Should the Ninth Circuit rule that the core operations inference is improper, even Defendants' specific statements indicating first-hand knowledge of WAMU's technological and operational systems may be insufficient to support a strong inference of scienter.

Finally, this is certainly the type of large, complex litigation in which protracted and expensive pretrial litigation will take place. Regardless of the result, certifying an appeal sooner rather than later will provide certainty to all parties going forward. The Court concludes, therefore, that Defendants have met their burden under § 1292(b).

IV. CONCLUSION

In accordance with the foregoing, the Court hereby GRANTS Defendants' motion. The Court's order denying dismissal in part (Dkt. No. 73) is thus CERTIFIED for immediate interlocutory appeal pursuant to 28 U.S.C. § 1292(b). The Court further STRIKES the current trial date pending the outcome of appeal.

SO ORDERED this 6th day of March, 2006.

*[signature: John C. Coughenour]*

UNITED STATES DISTRICT JUDGE

ORDER – 5