1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

SOUTH FERRY LP #2, individually and on behalf of all others similarly situated,

Plaintiff,

vs.

KERRY K. KILLINGER *et al.*,

Defendants.

Master File No. C04-1599 JCC

**PLAINTIFFS' REPLY TO DEFENDANTS' JOINT OPENING BRIEF ON REMAND**

NOTE ON MOTION CALENDAR:
June 12, 2009

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627  208th Ave.  SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ..................................................................................................1

II.     ARGUMENT ........................................................................................................3

        A.      Defendants' Primary Argument Attacks this Court's Conclusions as to
                Falsity, Not Scienter.................................................................................4

        B.      Even if this Court Reconsidered Its Falsity Conclusions, Defendants'
                Arguments Are Premised on Factual Determinations Inappropriate for
                Consideration on a Motion to Dismiss.....................................................6

        C.      Defendants' Reliance on Zucco Partners Is Misplaced ............................9

        D.      Plaintiffs' Complaint Satisfies All Three Core-Operations Tests Set Forth
                By the Ninth Circuit and Pleads a Strong Inference of Scienter..........13

                1.      The Complaint and this Court's prior scienter conclusions do not
                        rely exclusively on the barest form of core-operations allegations ..........13

                2.      Defendants' suggestion that *South Ferry* requires allegations of
                        "actual knowledge" is incorrect ................................................16

                3.      It would be absurd to suggest Defendants were without knowledge
                        of WaMu's pervasive technological problems .........................................17

                4.      A holistic reading of Plaintiffs' Complaint supports this Court's
                        prior analysis and findings .....................................................19

III.    CONCLUSION...................................................................................................22

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627  208th Ave.  SE
Sammamish, WA  98074-7033
Tel:  (425) 868-7813  ●  Fax:  (425) 868-7870

# TABLE OF AUTHORITIES

## Federal Cases

Page

*Basic v. Levinson*,
    448 U.S. 224 (1988).................................................................................4

*Berson v. Applied Signal Technology, Inc.*,
    527 F.3d 982 (9th Cir. 2008) ..................................................10, 18

*Cooper v. Pickett*,
    137 F.3d 616 (9th Cir. 1997) ..................................................................7

*In re Daou Systems, Inc.*,
    411 F.3d 1006 (9th Cir. 2005) ..............................................................10

*Ernst & Ernst v. Hochfelder*,
    425 U.S. 185 (1976)...............................................................................4

*Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736 (9th Cir. 2008) ..........................11

*Gompper v. Visx, Inc.*,
    298 F.3d 893 (9th Cir. 2002) ................................................................21

*In re Dura Pharmaceuticals, Inc. Sec. Litig.*,
    548 F. Supp. 2d 1126 (S.D. Cal. 2008)..................................................22

*In re Terayon Communications Sys. Inc.*,
    2002 U.S. Dist. Lexis 5502 (N.D. Cal. 2002).........................................22

*Institutional Investors Group v. Avaya*,
    564 F.3d 242 (3d Cir. 2009)............................................................11, 12

*Makor Issues & Rights, Ltd. v. Tellabs, Inc.*,
    513 F.3d 702 (7th Cir. 2008) ................................................................18

*Metzler Investment GMBH v. Corinthian Colleges, Inc.*,
    540 F.3d 1049 (9th Cir. 2008) .......................................................11, 12

*Miller v. Thane Int'l, Inc.*,
    519 F.3d 879 (9th Cir. 2008) ................................................................22

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.*,
    380 F.3d 1226 (9th Cir. 2004) ..............................................................10

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

*SEC v. Texas Gulf Sulphur Co.*,
    401 F.2d 833 (2d Cir. 1968) ................................................................................ 4, 21

*South Ferry LP, #2 v. Killinger*,
    399 F. Supp. 2d 1121 (W.D. Wash. 2005) ................................................................ *passim*

*South Ferry LP, #2 v. Killinger*,
    542 F.3d 776 (9th Cir. 2008) ................................................................................ *passim*

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) .......................................................................................... *passim*

*TSC Indus., Inc. v. Northway, Inc.*,
    426 U.S. 438 (1976) ................................................................................................ 21

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ........................................................................ 3, 4-5, 10

**Federal Statutes and Regulations**

15 U.S.C. § 78u-4(b)(1) ...................................................................................................... 4

15 U.S.C. § 78u-4(b)(2) ...................................................................................................... 4

28 U.S.C. § 1292(b) ............................................................................................................ 5

17 C.F.R. § 240.10b-5 ......................................................................................................... 1

PLS.' REPLY TO DEFS.' JOINT
OPENING BR. ON REMAND
Master File No. C04-1599 JCC

- iii -

**LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.**
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

# I.    INTRODUCTION

Defendants offer little assistance to this Court in reevaluating its *scienter* conclusions in light of *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) and *South Ferry LP, #2 v. Killinger*, 542 F.3d 776 (9th Cir. 2008). Instead, Defendants ask the Court to readdress its findings as to *falsity* and other matters that the Ninth Circuit left undisturbed. In so doing, Defendants implore the Court to disregard its previous analysis, disregard the narrow question it certified for appeal, and disregard the Ninth Circuit's answer. Defendants' argument distorts *South Ferry* by myopically and inaccurately framing the core-operations test articulated therein. Plaintiffs' allegations are more than sufficient to warrant this Court's reaffirming its denial of Defendants' motion to dismiss.

In *South Ferry*, the Ninth Circuit set forth a multi-part disjunctive test for application of the "core operations inference" under the scienter prong of Rule 10b-5, 17 C.F.R. § 240.10b-5, mindful of the Supreme Court's opinion in *Tellabs*: "[A]llegations regarding management's role in a company" (1) "may be used in any form along with other allegations that, when read together, raise an inference of scienter that is 'cogent and compelling, thus strong in light of other explanations,'" *South Ferry*, 542 F.3d at 785 (quoting *Tellabs*, 551 U.S. at 324); (2) "may independently satisfy the PSLRA where they are particular and suggest that defendants had actual access to the disputed information," *South Ferry*, 542 F.3d at 786; and (3) "may conceivably satisfy the PSLRA standard in a more bare form, without accompanying particularized allegations, in rare circumstances where the nature of the relevant fact is of such prominence that it would be 'absurd' to suggest that management was without knowledge of the matter." *Id.*

Plaintiffs' allegations satisfy each of these tests. *See* Pls.' Opening Suppl. Opp. (Dkt. 173) ("Pls.' Opening Br.) at 19-24 (applying the Ninth Circuit's decision in *South Ferry* to the facts alleged in this case); *see also id.* at 7-8 (explaining the crucial nature of WaMu's risk-management systems to its home mortgage business); *id.* at 10-12 (describing the pervasive deficiencies in WaMu's risk-management systems during the Class Period); *id.* at 11-17

- 1 -

(detailing Defendants' repeated statements, throughout the Class Period, exhibiting a "specific understanding of the underlying systems issues they claimed to have addressed, or to have been addressing").

In the Individual Defs.' Jt. Opening Br. On Remand (Dkt. 171) ("Defs.' Opening Br.") at 16-22, Defendants attempt to transform the briefing into a second motion for reconsideration and implore this Court to forget *South Ferry* and this Court's own previous findings. They do so because they must: The Ninth Circuit agreed with Plaintiffs and this Court that the core-operations inference "can be a relevant part of a complaint that raises a strong inference of scienter" as, *inter alia*, "the federal courts certainly need not close their eyes to circumstances that are probative of scienter viewed with a practical and common-sense perspective." *South Ferry*, 542 F.3d at 784-85.

With the *South Ferry* opinion that Defendants are loathe to cite directly, the Ninth Circuit resolved the limited question that Defendants had presented to this Court for interlocutory review,[1] vacated this Court's Order with regard to scienter, and remanded the case without "disturb[ing] the other conclusions reached by the district court." *Id.* at 786.

Now abandoning their previous position as to the doubtful viability of the core-operations inference – as they must – Defendants spend more than half of their brief rearguing this Court's conclusions as to **falsity**, a separate element from scienter that was not a subject of their appeal. *See, e.g.*, Defs.' Opening Br. at 16-22. But the purpose of the parties' briefing is not, as Defendants appear to believe, to open up a Pandora's box of issues not before this Court on remand.

---

[1]    In certifying the question as to the viability of the core-operations inference, the Court concluded the following based on Defendants' arguments in their motion for certification: "the cases [cited by Defendants] provide substantial grounds for a difference of opinion as to the viability of the core operations inference," "rais[ing] at least the possibility that under the PSLRA, plaintiffs may no longer rely on even the most specific, particularized allegations if their scienter theory requires an inference that 'facts critical to a business's core operations or [an] important transaction are known to a company's key officers.'" Order granting Def's.' Mot. for Certification for Interlocutory Appeal under 28 U.S.C. § 1292(b) (March 6, 2006) (Dkt. 96) (the "1292(b) Order") at 4.

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

In this reply,[2] Plaintiffs first address why this Court need not reconsider its findings as to falsity and how, even if it did, Defendants' falsity arguments would require this Court to make factual determinations inappropriate at this stage in the litigation, prior to discovery. Plaintiffs next discuss Defendants' misplaced reliance on *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981 (9th Cir. 2009). Lastly, Plaintiffs explain how this Court's careful analysis in its order denying Defendants' motion to dismiss, *South Ferry LP, #2 v. Killinger*, 399 F. Supp. 2d 1121, 1148 (W.D. Wash. 2005) (Dkt. 72) (the "MTD Order"), supports this Court's same ultimate scienter conclusion as to Defendants Killinger, Casey and Oppenheimer after *Tellabs* and *South Ferry*. This Court should reject Defendants' misapplication of law to the Complaint's well-pleaded allegations, which give rise to a strong inference of scienter under *Tellabs* and under *South Ferry*'s core-operations analysis.

## II.    ARGUMENT

Plaintiffs' Complaint (Dkt. 54) sets forth well-pleaded allegations leading to a strong inference of scienter, as this Court previously concluded. Plaintiffs' allegations – which are assumed to be true on Defendants' motion to dismiss – have not changed since this Court's MTD Order. The interlocutory appeal of that Order was confined to the continuing validity of the core-operations inference with respect to scienter under Rule 10b-5. The Ninth Circuit in *South Ferry* reaffirmed the validity of the core-operations inference and remanded as to that portion of this Court's prior opinion only.[3]

To the extent that Defendants purport to address scienter as opposed to falsity, Defendants' call for this Court to abandon its previous scienter analysis wholesale should be

---

[2] The purpose of this brief is to reply to arguments that Defendants raised in their opening submission. To the extent Defendants raise any new argument or issue not in their opening papers, the Court should not consider it.

[3] *South Ferry*, 542 F.3d at 786 (emphasis added) ("[W]e VACATE the order of the district court with regard to the PSLRA scienter requirement and REMAND the case to the district court for further proceedings consistent with *Tellabs* and consistent with this opinion. This opinion does ***not disturb*** the other conclusions reached by the district court").

PLS.' REPLY TO DEFS.' JOINT
OPENING BR. ON REMAND
Master File No. C04-1599 JCC

- 3 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

rejected.  The Complaint's allegations give rise to a strong inference of scienter under *Tellabs* and under *South Ferry*'s core-operations analysis.

## A.    Defendants' Primary Argument Attacks this Court's Conclusions as to Falsity, Not Scienter

Falsity and scienter are different elements under Rule 10b-5 and the PSLRA, and the Supreme Court has repeatedly noted the distinction.  With respect to scienter, "[t]o establish liability under § 10(b) and Rule 10b-5, a private plaintiff must prove that the defendant acted with scienter, 'a mental state embracing intent to deceive, manipulate, or defraud.'"  *Tellabs*, 551 U.S. at 319 (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193-94 & n.12 (1976)).  By contrast, as to falsity, "Rule 10b-5 is violated whenever assertions are made . . . in a manner reasonably calculated to influence the investing public . . . if such assertions are false or misleading or are so incomplete as to mislead irrespective of whether the issuance of the [assertions] was motivated by corporate officials for ulterior purposes."  *SEC v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 862 (2d Cir. 1968) (citation omitted) (quoted with approval in *Basic Inc. v. Levinson*, 448 U.S. 224, 235 n.13 (1988)); s*ee also Levinson*, 448 U.S. at 321-32 (noting that, in addressing Section 10(b) and Rule 10b-5, the Court has focused separately upon, *inter alia*, the questions of (1) "manipulative or deceptive" conduct prescribed by Section 10(b) and (2) scienter).

The PSLRA itself sets forth ***distinct*** pleading standards for falsity and scienter.  Under the PSLRA, a plaintiff must plead falsity with particularity, "specify[ing] each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1).  The PSLRA ***separately*** requires a plaintiff to plead scienter with particularity, "stat[ing] with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2).  Indeed, even in *Zucco Partners*, on which Defendants rely extensively, the Ninth Circuit expressly recognized this distinction under the PSLRA.  *See Zucco*

- 4 -

*Partners*, 552 F.3d at 990-91.

This Court previously found, with respect to the element of falsity, that "Plaintiffs have clearly identified the particular statements alleged to be false or misleading by emphasizing the relevant phrases, where necessary, and have adequately and clearly stated the reasons why the accused statements are alleged to be false and misleading." *See* MTD Order, 399 F. Supp. 2d at 1128, 1141 & Appendix A. These conclusions were not a subject of Defendants' motion for reconsideration or certification, in which the only "controlling question of law" Defendants sought to appeal was the "continued viability of the 'core-business operations' inference." Defendants' Mot. to Recons. Denial of Mot. to Dismiss or for Certification (Dkt. 75) at 5.

As this Court explained in its Order granting Defendants' certification request, the legal question qualifying for interlocutory appeal was limited and discrete: "whether the core operations inference may form any part of the basis for a finding of scienter under the PSLRA." 1292(b) Order at 2; *see also* 28 U.S.C. § 1292(b) ("[w]hen a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order").

This Court's Order certifying the question as to the viability of the core-operations inference says nothing about other aspects of this Court's scienter analysis, much less its conclusions supporting its falsity analysis. This is because Defendants' did not challenge these issues in seeking reconsideration of the MTD Order and interlocutory appeal.

Defendants now endeavor to reargue falsity by wrongly conflating the falsity and scienter elements under Rule 10b-5. Defendants' arguments should be rejected. This Court's prior analysis demonstrates that the Court carefully considered and ruled on the falsity element. The MTD Order properly concluded that Plaintiffs "have adequately and clearly stated the reasons why the accused statements are alleged to be false and misleading," MTD Order, 399 F. Supp. 2d at 1128, by finding, *inter alia*:

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

- "WAMU suffered technology problems affecting its ability to timely process and monitor loans after customers had locked in rates," *id.* at 1140;

- "Optis [WAMU's proprietary platform for handling its home-loan operations (Compl. ¶ 44)[4]] was a failure and was never completely rolled out," *id.*;

- "WAMU's failure to integrate its different technology platforms created significant problems, including insufficient and inaccurate reporting of data critical to its hedging operations," *id.*;

- "WAMU needed to reassure the market that it could successfully integrate its many acquisitions and that it was well positioned to perform well in a potentially unstable interest rate environment," and "in order to do both of these, WAMU needed to have certain technological capabilities," *id.* at 1141; and

- "WAMU's assurances on both counts also amounted to an acknowledgment that its technology systems were adequate." *Id.*

The only issue on appeal was whether and to what extent Plaintiffs and this Court could use the core-operations inference to link information demonstrating the challenged statements' falsity to particular Defendants and, thereby, satisfy the PSLRA pleading requirements for scienter post-*Tellabs*.

**B.    Even if this Court Reconsidered Its Falsity Conclusions, Defendants' Arguments Are Premised on Factual Determinations Inappropriate for Consideration on a Motion to Dismiss**

Even if this Court were to reconsider its falsity conclusions, Defendants' arguments depend on the resolution of factual disputes in their favor.  Disputing the Complaint's well-pleaded allegations, Defendants attempt to reargue this Court's falsity conclusions by differentiating WaMu's MSR hedging from its pipeline hedging.  *See, e.g.*, Defs.' Opening Br. at 6 ("Because fluctuating interest rates affected the value of the loan pipeline and MSR asset value differently, WaMu independently hedged the risks associated with each.").

---

[4]    All citations to "¶ __" are to paragraphs in the Consolidated Amended Class Action Complaint (Dkt. 54) (the "Complaint").

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

The Complaint's allegations must be accepted as true at this stage in the litigation, and when so considered, it is apparent that (1) Defendants viewed the two hedging practices as intrinsically related, (2) the two practices were intended to operate in tandem, and (3) the two practices were intimately connected. *See, e.g.* Pls.' Opening Br. at 6-10. Defendants' disputing these allegations is inappropriate at this stage in the litigation because such matters "cannot be resolved on a motion to dismiss." *Cooper v. Pickett*, 137 F.3d 616, 629 (9th Cir. 1997); *see also South Ferry*, 542 F.3d at 782 ("[w]e must accept as true all well-pleaded allegations in the complaint").

Contrary to Defendants' assertions, parsing WaMu's hedging practices is nonsensical in light of the realities in WaMu's home mortgage business during the class period. As Plaintiffs explained thoroughly, while WaMu was swiftly making numerous, major acquisitions to expand its home mortgage business, the Company's ability to conduct that business and effectively manage the business's risks was crippled by (1) the challenge of integrating the acquired companies, and (2) the influx of new and preexisting home mortgage business that came with the acquisitions. *See* Pls.' Opening Br. at 6-10 (detailing the critical yet dysfunctional place WaMu's risk-management systems held within WaMu's home mortgage business); Compl. ¶¶ 36-39 & 45-46.

The Complaint contains multiple well-pleaded allegations demonstrating that Defendants' own statements refute the premise behind their falsity argument – i.e., that MSR and pipeline hedging were distinct and unrelated. For example, Defendant Killinger stated in an April 20, 2004 conference call that "we have *fully integrated our MSR and mortgage pipeline hedging activities* and upgraded the capabilities of our capital markets and treasury activities under Tom Casey." ¶ 106 (emphasis added). On the same call, Defendant Casey explained: "Reflecting the realignment of our business lines and the associated finance function, we have *fully integrated pipeline and MSR hedging activities* with our treasury and capital markets activities." ¶ 107 (emphasis added). Reiterating the point, Defendant Casey soon thereafter stated: "The steps we've taken to *fully integrate our MSR and mortgage pipeline hedging*

PLS.' REPLY TO DEFS.' JOINT
OPENING BR. ON REMAND                        - 7 -
Master File No. C04-1599 JCC

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

*activities* have provided us with more effective and less-expensive hedging execution." *Id.* (emphasis added). Thus, contrary to the explanation offered by Defendants, *see* Defs.' Opening Br. at 6, these two hedging activities did not operate in a vacuum.

Although Defendants do not contend that MSR and pipeline hedging are distinct for purposes of "natural hedging," *id*. at 5-6, they suggest that, because "financial hedging" was carried out by offsetting MSR and pipeline risk via correspondingly different types of financial instruments, MSR and pipeline hedging were unrelated, *id*. at 6. In so doing, Defendants ignore the Complaint's well-pleaded allegations that loan servicing and loan origination were two parts of a *single business*. *See, e.g.,* Pls.' Opening Br. at 7-10.

Regardless of how "financial hedging" was carried out as to each, Defendants ignore the *a priori* question: whether and to what extent hedging was necessary to manage risk in each loan servicing and loan origination. The answer to that question required knowledge of WaMu's positions across the whole of its loan portfolio, or in Defendants Killinger and Casey's words, "integrated" knowledge. Indeed, to effect the appropriate type and degree of "financial hedging" for loan servicing and loan origination, the two business segments required integrated knowledge. Any interest-rate fluctuations would affect loan servicing and loan origination differently, and therefore, to effectively manage risk as to both, WaMu needed to know, at all times, where these complimentary segments of their mortgage business stood.

Plaintiffs' Complaint alleges an integrated relationship and a failure to develop the technological systems necessary to effect this integration and, thus, properly hedge the risk associated with interest-rate fluctuations in WaMu's mortgage business. *See, e.g.*, ¶ 46 ("In order to properly hedge Washington Mutual's interest rate exposure, defendants needed to have complete and precise information concerning the Company's aggregate mortgage loan portfolio and MSR positions at all times.

Absent such information, it would have been impossible to configure proper hedges due to interest rate fluctuations."); *see generally* ¶¶ 46-55. This Court's falsity conclusions are premised on these allegations, *see, e.g.*, MTD Order, 399 F. Supp. 2d at 1137-38 (quoting, *inter*

1  *alia*, ¶¶ 46-47), and for the reasons stated above, these conclusions should not be subject to

2  reconsideration. Defendants will have an appropriate opportunity to dispute the Complaint's

3  factual allegations at a later stage in this proceeding.

4  **C.    Defendants' Reliance on *Zucco Partners* Is Misplaced**

5           In clarifying the continued viability of the core-operations inference in the Ninth Circuit,

6  the *South Ferry* court explained that such "allegations may be used ***in any form*** along with other

7  allegations that, when read together, raise an inference of scienter that is 'cogent and compelling,

8  thus strong in light of other explanations.'" *South Ferry*, 542 F.3d at 785 (quoting *Tellabs*, 551

9  U.S. at 324) (emphasis added). In so doing, the Ninth Circuit answered the question that this

10  Court certified for appeal. This question was, again, "the viability of the core operations

11  inference" in light of the cases relied upon by Defendants, which "raise[d] at least the possibility

12  that under the PSLRA, plaintiffs may no longer rely on even the most specific, particularized

13  allegations if their scienter theory requires an inference that 'facts critical to a business's core

14  operations or [an] important transaction are known to a company's key officers.'" 1292(b) Order

15  at 4. The Ninth Circuit categorically rejected that possibility.

16           Accordingly, this Court can now affirm its prior ruling by clarifying that the MTD Order

17  fully considered core-operations allegations along with other particularized allegations indicating

18  "Defendants' . . . first-hand knowledge of WAMU's technological and operations systems" and

19  giving rise to a strong inference of scienter. *Id*. at 5 (internal quotations omitted).

20           The *South Ferry* court contrasted a holistic use of the core-operations inference – i.e.,

21  along with other allegations that support scienter – with circumstances where core-operations

22  allegations comprise the only basis for scienter.[5] Defendants premise their argument on an

23  ────────────────

24  [5]      As noted previously, the *South Ferry* opinion sets forth multiple uses of the core-operations inference:

25           First, the allegations may be used in any form along with other allegations that, when
26           read together, raise an inference of scienter that is "cogent and compelling, thus strong in
             light of other explanations." This view takes such allegations into account when
27           evaluating all circumstances together. Second, such allegations may independently

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

1  unsupported an unexplained presumption that the instant case is an example of core-operations

2  allegations comprising the only basis for scienter.  Defendants' argument ignores the outcome

3  and subject of their appeal in *South Ferry*.  Defendants underplay *South Ferry* in favor of *Zucco*

4  *Partners*, a case involving different alleged facts and circumstances not before this Court.

5  Defendants' reliance on *Zucco Partners* is misplaced.  *Zucco Partners* focuses on

6  whether core-operations allegations regarding "the mere publication of a restatement" of

7  financial results create a strong inference of scienter.  *Zucco Partners*, 552 F.3d at 1000.  Central

8  to the court's analysis in *Zucco Partners* was the nature and subject of the misrepresentations at

9  issue, which consisted of accounting errors in published financial statements concerning the

10 capitalization of particular costs.  Based on the alleged facts, the *Zucco Partners* court found that

11 the core-operations allegations could not independently support a strong inference of scienter (1)

12 because "management was in [no] position to know that [underlying accounting] data was being

13 manipulated" and (2) "the falsity of the original representations would not be immediately

14 obvious to corporate management[,]" as the "misrepresentations were largely definitional." *Id*.

15 Unlike *Zucco Partners*, the instant case does not involve "the mere publication of a

16 restatement" or "bare allegations of falsely reported information . . ."  Rather, Plaintiffs allege

17 that Defendants made numerous and repeated misleading statements specifically addressing the

18 core business operations in question.[6]  Pls.' Opening Br. at 11-17.  In its MTD Order, this Court

19

20      satisfy the PSLRA where they are particular and suggest that defendants had actual
        access to the disputed information, as in *Daou* and *Oracle*.  Finally, such allegations may
21      conceivably satisfy the PSLRA standard in a more bare form, without accompanying
        particularized allegations, in rare circumstances where the nature of the relevant fact is of
22      such prominence that it would be "absurd" to suggest that management was without
        knowledge of the matter.
23

24 542 F.3d at 785-86 (citing *In re Daou Systems, Inc.*, 411 F.3d 1006, 1022-23 (9th Cir. 2005) and
   *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1231 (9th Cir. 2004)
25 and quoting *Tellabs*, 551 U.S. at 324 and *Berson v. Applied Signal Technology, Inc.*, 527 F.3d
   982, 988 (9th Cir. 2008)) (internal quotation marks omitted)).

26

27 [6]      Defendants' litany of statements claiming ownership of the issues, made throughout the
   Class Period, distinguishes this case not only from *Zucco Partners*, but also from each Ninth

1  found that, because of the special and specific nature and substance of Defendants' repeated oral

2  statements concerning "WAMU's technological systems and the actions it was taking with

3  respect to those systems," "knowledge of WAMU's technological problems may be attributed to

4  Defendants Killinger, Casey, and Oppenheimer" or that "these defendants' reckless

5  misinformation, or failure, if any, to acquire the relevant knowledge before making the accused

6  statements was deliberate or conscious recklessness."  MTD Order, 399 F. Supp. 2d at 1142; *see*

7  *also id.* at 1141 (citation omitted) ("Plaintiffs allege that Defendants' knowledge of this

8  information can be inferred because of the nature of the statements they were making and the

9  nature of these specific alleged operational problems[…, and t]he Court agrees."

10       This Court's analysis is supported by the recent Third Circuit opinion in *Institutional*

11  *Investors Group v. Avaya*, 564 F.3d 242 (3d Cir. 2009), a case with facts far more analogous to

12  the instant case than *Zucco Partners*.  In *Avaya*, the Third Circuit relied on the context (specific

13  analyst inquiries) and the content (consistent and specific denials) of the defendants' statements

14  to differentiate the case from others where "defendants win dismissal on a showing that

15  defendants were most likely simply ignorant of the facts that made their statements false."  *Id.* at

16  270 (citing *Metzler*, 540 F.3d at 1068 as an example where the defendants were most likely

17  simply ignorant of the facts that made their statements false).  Accordingly, like this Court in its

18  MTD Order, the Third Circuit found that the possibility the defendant was ignorant of the

19  

20  Circuit decision post-*South Ferry* that has declined to apply the core-operations inference.  In
    none of these cases was the Ninth Circuit confronted with circumstances where, as here, the
21  defendants repeatedly misled investors, analysts, and the market via their own words with
    statements to the effect of, "I know what I'm talking about."  *See*, in addition to *Zucco Partners*,
22  *Meltzer Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1058-59 (9th Cir. 2008)
    (scienter allegations consisted of (1) "suspicious stock sales[,]" (2) "management and tracking"
23  of purportedly false information, and (3) "post-Class Period statements") and *Glazer Capital*
    *Mgmt., LP v. Magistri*, 549 F.3d 736, 745 (9th Cir. 2008) ("Glazer asks us to infer scienter on the
24  part of Magistri based on a number of factors, including (1) the nature of InVision's business, (2)
    the fact that Magistri signed a Sarbanes-Oxley certification …, (3) the discovery of FCPA
25  violations by GE during the due diligence process, (4) the personal financial incentives for
    Magistri to consummate the merger, and (5) the conclusions contained in the DOJ and SEC
26  settlement documents").
27

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

information contradicting his statements was non-exculpatory because the nature and subject of the defendant's statements raised a strong inference that the defendant's behavior reached the threshold of recklessness.  *Id.*

In reaching this conclusion, the Third Circuit observed that the scienter analysis under *Tellabs* is *per se* a matter of factual degree, and "case specific":

> [The scienter analysis under *Tellabs*] will ultimately rest not on the presence or absence of certain types of allegations but on a practical judgment about whether, accepting the whole factual picture painted by the Complaint, it is at least as likely as not that defendants acted with scienter.  *See South Ferry*, 542 F.3d at 784 ("*Tellabs* counsels us to consider the totality of circumstances, rather than to develop separately rules of thumb for each type of scienter allegation."); *see also In re Cabletron Sys., Inc.*, 311 F.3d 11, 32 (1st Cir. 2002) ("Each securities fraud complaint must be analyzed on its own facts; there is no one-size-fits-all template.").

*Id.* at 269; *see also id.* at 272-73 ("Each case will present a different configuration of factual allegations, and it is the composite picture, not the isolated components, that judges must evaluate in the last instance.  'In assessing the allegations holistically as required by *Tellabs*, the federal courts certainly need not close their eyes to circumstances that are probative of scienter viewed with a practical and common-sense perspective'") (quoting *South Ferry*, 542 F.3d at 784).[7]  As in *Avaya*, the factual context of this case raises a strong inference of scienter as this Court's MTD Order correctly concluded.

As explained above and in greater detail in Plaintiffs' Opening Brief, the factual differences in the instant action are substantial, as are the bases for applying the core-operations

---

[7]    As *Avaya* and indeed *South Ferry* itself make clear, Defendants' reliance on *Metzler*, 540 F.3d at 1069 for the unremarkable proposition that "the *Tellabs* Court's directive" should "cut[] both ways" is uninformative.  *Metzler* was before the Ninth Circuit when it decided *South Ferry* and cited therein.  *See South Ferry*, 542 F.3d at 785 (quoting *Metzler*, 540 F.3d at 1068).  And, in any event, *South Ferry* clearly expands, rather than constrains the scienter analysis of *Metzler* to include "'allegation[s] of specific information conveyed to management and related to the fraud' or other allegations supporting scienter."  *Id.*  (In this case, of course, Defendants' litany of statements reassuring investors, analysts, and the market leave no room for any conclusion other than that, at the barest minimum, information was "conveyed" to them).

PLS.' REPLY TO DEFS.' JOINT
OPENING BR. ON REMAND                           - 12 -
Master File No. C04-1599 JCC

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

inference in this case. *See, e.g.*, Pls.' Opening Br. at 6-17 (detailing (1) the critical place that WaMu's risk-management systems held in its home mortgage business, (2) the severe deficiencies in those technological systems, and (3) Defendants' constant and proactive flow of statements offered to reassure investors and the market and to cover up those deficiencies).

*Zucco Partners* represents the application of *South Ferry* to a fact pattern not before this Court. It does not represent a shift in the law of this Circuit. In this case, the core-operations inference is wholly apropos, and there is no basis on the facts of this case, or in the assertions of Defendants, to upset this Court's prior application of the core-operations inference with respect to Defendants and their knowledge of the problem-ridden, risk-management systems at the heart of WaMu's home mortgage business.

**D. Plaintiffs' Complaint Satisfies All Three Core-Operations Tests Set Forth By the Ninth Circuit and Pleads a Strong Inference of Scienter**

As demonstrated in Plaintiffs' Opening Brief and reinforced directly below, Plaintiffs' Complaint meets all three tests articulated by the Ninth Circuit in *South Ferry* for the proper use of core-operations allegations in pleading a strong inference of scienter. *See* Pls.' Opening Br. at 19-24 (applying *South Ferry* to the facts of this case). Further, *South Ferry* offers substantial support for this Court's previous findings as to scienter on the facts of this case. Defendants have improperly attempted to rewrite *South Ferry* by compartmentalizing the principles set forth therein without basis. Defendants' strained efforts should not be countenanced by this Court.

**1. The Complaint and this Court's prior scienter conclusions do not rely exclusively on the barest form of core-operations allegations**

As demonstrated by this Court's prior scienter analysis, the Complaint does not rely on the barest form of core-operations allegations standing alone. *See, e.g.*, MTD Order, 399 F. Supp. 2d at 1141 (citation omitted) ("Plaintiffs allege that Defendants' knowledge of this information can be inferred because of the nature of the statements they were making and the nature of these specific alleged operational problems[…, and t]he Court agrees." As explained first in the MTD Order and twice more in subsequent orders, this Court's scienter analysis was

PLS.' REPLY TO DEFS.' JOINT
OPENING BR. ON REMAND
Master File No. C04-1599 JCC

- 13 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

informed by, *inter alia*, the specific nature of the Individual Defendants' statements and the specific nature of the alleged operational problems.  For example:

- "Defendants made several statements ***expressly addressing WAMU's technological capabilities***," and therefore, "WAMU's technological systems and the actions it was taking with respect to the systems amounted to an 'important transaction' that would have been known to the officers making statements about them." *Id.* (emphasis added)

- "Thus, the Court finds that Plaintiffs' complaint sufficiently alleges that knowledge of WAMU's various technology problems may be inferred to ***those Defendants making statements about them***."  *Id.* at 1141-42 (emphasis added).

- "[B]ecause of the ***specific nature of the challenged statements***, the Court finds that the complaint alleges with sufficient particularity that making the challenged statements without knowing whether they were accurate was actionably reckless." *Id.* at 1141 (emphasis added).

- In conducting its scienter analysis, this Court "ma[de] several specific findings of sufficient particularity and particularly not[ed] the ***special nature and subject* of Defendants' statements**."  Order dated Dec. 6, 2005 (Dkt. 77) at 2 (the "Recons. Order") (emphasis added).

- The "Defendants' ***specific statements indicat[ed] first-hand knowledge*** of WAMU's technological and operational systems."  1292(b) Order at 5 (emphasis added).

In this case, an important factor in this Court's scienter analysis was the Defendants' own statements, given their significant role and responsibilities in the Company, as shown for example by this Court's explanation of why the Complaint alleges a strong inference of scienter with respect to Defendants Killinger, Casey, and Oppenheimer but not Defendants Chapman, Longbrake, and Vanasek.  *See* MTD Order, 399 F. Supp. 2d at 1142.  This analysis makes clear that as to the latter three Defendants, this Court declined to find a strong inference of scienter because the Complaint relied on the barest core-operations inference as its ***only basis*** for scienter

PLS.' REPLY TO DEFS.' JOINT
OPENING BR. ON REMAND                                    - 14 -
Master File No. C04-1599 JCC

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

in the complaint. *See id.*[8] ("Because Defendants Chapman, Longbrake, and Vanasek did not make statements from which knowledge, actual or constructive, could be imputed, Plaintiffs attempt to impute the requisite knowledge on the basis of the defendants' job titles and responsibilities."). By contrast, this Court found that the specific nature and subject of statements by Defendants Killinger, Casey, and Oppenheimer indicated these Defendants had contradictory first-hand knowledge of the problems with WaMu's technological and operational systems.[9] *See id.* at 1141-42; Recons. Order at 2; 1292(b) Order at 5.

Accordingly, this Court can now affirm that its MTD Order properly considered core-operations allegations, along with other particularized allegations (*see* MTD Order, 399 F. Supp. 2d at 1141-42), indicating "Defendants' . . . first-hand knowledge of WAMU's technological and operations systems[,]" leading to the conclusion that the Complaint's allegations raise a strong inference of scienter. 1292(b) Order at 5 (internal quotations omitted). Further, this Court's same conclusions from the Complaint's well-pleaded allegations support a finding of scienter under the second and third core-operations analyses detailed in *South Ferry* and explained further below.

---

[8]     By making this comparison, Plaintiffs do not waive their rights to reassert claims against Defendants Chapman, Longbrake, and Vanasek at a later date.

[9]     In contrasting its finding a strong inference of scienter as to Defendants Killinger, Casey, and Oppenheimer with its conclusions as to Defendants Chapman, Longbrake, and Vanasek, the Court specifically found as follows:

> Defendants Killinger and Casey stated emphatically that the problems plaguing the loan originations business had been resolved. (*See, e.g.*, [MTD Order, Appendix A], Statements 11, 12, 14, 15, 17.) In addition, Defendant Killinger assured the market that WAMU had sufficient technology for the future. (*See, e.g.*, [*id.*,] Statement 16, 19, 20, 21.) Defendant Oppenheimer's statement, during or shortly after a time period when WAMU was rushing to assure investors that its loan originations problems had been contained, that WAMU was balancing its businesses in a very sophisticated fashion, was an express endorsement of the assurances Defendants Killinger and Casey had been making. . . . For all the above reasons, the Court finds that Plaintiffs' complaint shows with sufficient particularity that knowledge of WAMU's technological problems may be attributed to Defendants Killinger, Casey, and Oppenheimer.

MTD Order, 399 F. Supp. 2d at 1142.

2.    **Defendants' suggestion that *South Ferry* requires allegations of "actual knowledge" is incorrect**

Defendants proffer an unsupported reading of *South Ferry*, arguing that *South Ferry* requires Plaintiffs to allege, in essence, actual knowledge.  *See, e.g.*, Defs.' Opening Br. at 21 ("[t]here are no allegations of specific information conveyed to any defendant inconsistent with the challenged statement"); *id.* at 22 (the Complaint "alleges no facts indicating that any defendant was told about such problems").  This is not what the tests laid down by the Ninth Circuit in *South Ferry* require.  *South Ferry* requires, *e.g.*, allegations that "**suggest** that defendants had actual access to the disputed information" (542 F.3d at 786 (emphasis added)), or allegations where "the nature of the relevant fact is of such prominence that it would be 'absurd' to suggest that management was without knowledge of the matter."  *Id.*  The viability of a core-operations inference of scienter would be rendered virtually moot under Defendants' standard.  Neither *South Ferry*, nor any decision construing the scienter requirement under the PSLRA of which Plaintiffs are aware, requires Plaintiffs to give play-by-play allegations describing how defendants acquired the information that ultimately came straight from their own mouths.

As detailed in Section III.A.3.b of Plaintiffs' Opening Brief (titled "Defendants' Statements Demonstrate Access to and Knowledge of Information Concerning WaMu's Systematic Operational Failures"):

> Investors and analysts learned what they knew – or at least what they were led to believe – regarding WaMu's risk-management systems straight from the proverbial horses' mouths (*i.e.*, from Defendants).  Defendants did not purport to rely on the statements of intermediaries or reports by lower-level management.  Defendants exhibited first-hand knowledge of, and sometimes direct involvement in, WaMu's risk-management operations.  From the perspective of investors, analysts, and others relying on their statements, Defendants spoke with personal knowledge when providing false or misleading assurances regarding WaMu's systems challenges.
>
> Moreover, Defendants spoke in detail regarding WaMu's technical capacities, and in technical terms.  Defendants' statements show Defendants' specific understanding of the underlying systems issues they claimed to have addressed, or to have been addressing.  Defendants took credit for personally overseeing and

PLS.' REPLY TO DEFS.' JOINT
OPENING BR. ON REMAND
Master File No. C04-1599 JCC

- 16 -

LAW OFFICES OF
**CLIFFORD A. CANTOR, P.C.**
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

1  personally involving themselves in tackling problems arising from WaMu's
2  inadequate operational systems.    Taken together, Defendants' statements
   demonstrate access and knowledge.

3  Pls.' Opening Br. at 11-12 (internal citations omitted); *see also id*. 12-17 (setting forth certain of
4  Defendants' Class Period statements and how they demonstrate access and knowledge to
5  disputed information).[10]

6      On these bases, Plaintiffs' allegations, when read together, raise a strong inference of
7  Defendants' scienter that is cogent and *at least* as compelling – indeed more compelling – than
8  any competing inference, and thus satisfies the PSLRA's scienter requirement as laid down by
9  *Tellabs* and *South Ferry*.

10     **3.    It would be absurd to suggest Defendants were without knowledge of
                WaMu's pervasive technological problems**

12     Defendants again attempt to rewrite the Ninth Circuit's pronouncements in *South Ferry*
13  as to the final test laid out therein.  This third test, that bare core-operations allegations can
14  satisfy the PSLRA "where the nature of the relevant fact is of such prominence that it would be
15  'absurd' to suggest management was without knowledge of the matter" (*South Ferry*, 542 F.3d at
16  786) is a means of inferring knowledge, rather than pleading facts directly showing knowledge.
17  Defendants argue that the Complaint fails to allege "that any defendant knew that problems with
18  information flows rendered any of their statements false or misleading when made."  Defs.'
19  Opening Br. at 19.  This type of allegation is not what the test requires.  Rather, the test requires
20  that Plaintiffs allege that the problems experienced by the Company were of such a crucial nature
21  that Defendants must have known about them.

22     Defendants argue that a "perfect storm" caused their problems, implying that these
23  problems were unforeseeable (Defs.' Opening Br. at 19); however, Defendants repeatedly ***touted***
24  their ability to ***thrive*** in a changing interest rate environment.  *See, e.g.*, ¶ 56 (Defendant

---

25  [10]    This Court also found that "[a] reasonable investor reading this statement [*see* ¶ 61]
26  would conclude that at the time the statement was made, WAMU's disclosure controls and
    procedures were providing senior management with timely access to all material information
27  about the business."  MTD Order, 399 F. Supp. 2d at 1133.

Killinger telling investors that the Company would be in a "**stronger position** when the current [interest rate] environment changes" and Defendant Casey stating that: "[a]t this time we are focused on balancing the demands of today while positioning the company for the eventual change in interest rate environment. And our balanced business model will provide the leverage to continue to grow market share in a changing environment" and "[a]s part of the company's ongoing interest rate risk management program and positioning of the balance sheet for future rising rates, we repositioned certain acts and liability hedging during the quarter"); ¶ 67 (Defendant Casey stating that: "[l]ooking ahead, keep in mind that the servicing portfolio can be expected to contribute significant earnings when the interest rates eventually do rise;" "[w]e remain focused on balancing the demands of today while positioning the company for the eventual change in interest rates;" "[w]e are confident that our balanced business model will provide the flexibility to grow market share in changing environment;" and "[w]e continue to *actively monitor* and *collectively manage* our sensitivity to changes in interest rates"); ¶ 86 (Defendant Killinger stating that "we have developed sophisticated risk management tools and processes which have allowed us to perform very well in a highly volatile interest rate environment").

The situation the Company faced was not a perfect storm but rather a foreseeable situation which Defendants repeatedly assured the market that WaMu would not only weather, but thrive under. *See, e.g., Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 704 (7th Cir. 2008) (Posner, J.) ("[w]hen the facts known to a person place him on notice of a risk, he cannot ignore the facts and plead ignorance of the risk"); *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 987 (9th Cir. 2008) ("once defendants chose to tout the company's backlog, they were bound to do so in a manner that wouldn't mislead investors as to what the backlog consisted of").

Nothing in the Defendants' Brief on this point detracts from the well-pleaded allegations in the Complaint or the Court's conclusions that those allegations raise a strong inference of scienter. Accordingly, based on this Court's previous analysis and for the reasons given in

PLS.' REPLY TO DEFS.' JOINT
OPENING BR. ON REMAND                    - 18 -
Master File No. C04-1599 JCC

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

Plaintiffs' Opening Brief, this test is satisfied.  *See* Pls.' Opening Br., Sec. IV.C; MTD Order, 399 F. Supp. 2d at 1142 ("[B]ecause WaMu's technological capabilities were apparently so crucial to its ability to perform as promised, this Court finds that Plaintiffs' complaint sufficiently alleges that these defendants' reckless misinformation, or failure, if any, to acquire the relevant knowledge before making the accused statements was deliberate or conscious recklessness.")

### 4.    A holistic reading of Plaintiffs' Complaint supports this Court's prior analysis and findings

Defendants' bald assertion that "[t]he aggregate of plaintiffs' scienter allegations" are "not as cogent and compelling as the plausible alternative inferences" (Defs.' Opening Br. at 22) is meritless.  Defendants' arguments in support of this assertion delve into issues of the actionability of Defendants' statements, rather than scienter, and are inconsistent with this Court's correct, prior findings.  Defendants once again argue that they (a) promptly addressed and disclosed the problems at issue in this case and (b) made accurate statements throughout the Class Period.  *See id.*  This Court has already addressed in detail, and rejected, each of these contentions.  Accordingly, Defendants cannot now seek refuge in unfounded claims of timeliness and accuracy.

In the MTD Order, this Court found "that all the statements challenged by Plaintiffs meet the PSLRA test."  MTD Order, 399 F. Supp. 2d at 1139.  This finding rested on conclusions by this Court that Defendants cannot square with their present argument.  For instance, this Court observed that Defendants had ***not*** "fully and fairly disclosed" information related to the problems at issue in this case.  *See* MTD Order, 399 F. Supp. 2d at 1138 ("[T]he Court concludes that there is a substantial likelihood that a reasonable investor would have acted different if WAMU had fully and fairly disclosed its progress or lack thereof in developing and/or integrating its technology platforms.").

This Court reached the conclusion on the basis of a "pattern" reflected in numerous false reassurances by Defendants that misled investors.  *See* MTD Order, 399 F. Supp. 2d at 1138

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

("Because the analysts covering WAMU repeatedly and expressly relied on WAMU's reassurances to justify their continued positive outlook, this Court finds that WAMU's statements, or lack thereof, regarding its technology problems were material within the meaning of Rule 10b-5"); *see generally id.* (detailing the relationship between Defendants' inadequate disclosures and their effects on the market).

Moreover, contrary to Defendants' argument, this Court previously found multiple inaccuracies in Defendants' statements. *See, e.g.*, MTD Order, 399 F. Supp. 2d at 1138-39 (finding that "statements that more generally attribute[d] WAMU's historical success to its ability to balance its loan origination and servicing businesses, as well as to its hedging ability" misled investors); *id.* at 1133-34 (concluding that numerous statements by Defendants would have been read by a reasonable investor "to mean that WAMU had recognized the problems and was well on its way to resolving them"); *id.* at 1129 (noting that "numerous statements involving accurately reported historical information" do not "render[] the complaint's securities fraud claims any less cognizable").

Defendants cannot benefit, under *Tellabs* and *South Ferry*, from inferences that are clearly implausible based on this Court's prior findings.

Further, Defendants' attempt, again, to utilize disputed factual assertions regarding the nature of their hedging practices to attack Plaintiffs' scienter allegations. *See* Defs.' Opening Br. at 22-23. In the first instance, Defendants have their facts wrong, and in any event this factual issue cannot be resolved on a motion to dismiss. *See* Sec. II.B., *supra* (explaining the necessarily integrated nature of Defendants' pipeline and MSR hedging). Accordingly, this argument in no way undercuts Plaintiffs' scienter allegations, and it should be disregarded.

Lastly, Defendant Oppenheimer complains that she made only two Class-Period statements, five months apart from each other, which do not suggest that "she understood that there was a link between operational issues and hedging." Defs.' Opening Br. at 23. Defendant Oppenheimer is incorrect. For instance, she stated that "[w]e are looking at our whole balance sheet in a very sophisticated fashion, with a number of various hedges and instruments that we

PLS.' REPLY TO DEFS.' JOINT
OPENING BR. ON REMAND                    - 20 -
Master File No. C04-1599 JCC

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

are using to be able to hedge and be ready for any of those types of environments." ¶ 115. When read with the Complaint's other allegations about the vital role of technology to properly hedge (*see* Pls.' Opening Br. at 8) and Defendant Oppenheimer's responsibilities at the Company with respect to WaMu's home mortgage business (*see id.* at 11), it is clear that she "understood the link between operational issues and hedging."

Indeed, this Court has already concluded that the link was clear to her. *See* MTD Order, 399 F. Supp. 2d at 1130 (finding that Oppenheimer's December 29, 2003 statement regarding WaMu's systems integration, at ¶ 89 of the Complaint, "contain[ed] several very specific representations of fact . . . which highlighted the importance of WAMU's ability to integrate its acquisitions and to hedge its operations"). Finally, any attempt by Defendants' to parse and individually analyze Defendant Oppenheimer's statements and stock sales is plainly contrary to the holistic approach mandated under *Tellabs* and *South Ferry*.

Examining the larger picture, when this Court first addressed Defendants' motion to dismiss, it recognized expressly the need to "consider all inferences in the light most favorable to Plaintiffs, keeping in mind that this deliberate bias may still result in inferences unfavorable to Plaintiffs." MTD Order, 399 F. Supp. 2d at 1139 (citing *Gompper v. VISX, Inc.*, 298 F.3d 893, 897 (9th Cir. 2002) (cited with approval in *Tellabs*, 551 U.S. at 322). In other words, this Court was mindful, even prior to *Tellabs* and *South Ferry*, of the need to weigh competing inferences and approach Plaintiffs' allegations holistically. *See Tellabs*, 551 U.S. at 322-323 (citing *inter alia Gompper*, 298 F.3d at 897) ("[t]he inquiry, as several Courts of Appeals have recognized, is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard") (emphasis in original).

Plaintiffs met the scienter standard applied by this Court in the MTD Order. And, as demonstrated in Plaintiffs' briefing on the narrow question now before this Court, Plaintiffs pleaded a strong inference of scienter that is "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *See Tellabs*, 551 U.S. at 324.

PLS.' REPLY TO DEFS.' JOINT
OPENING BR. ON REMAND
Master File No. C04-1599 JCC

- 21 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

Accordingly, in light of this Court's prior analysis and the subsequent opinions in *Tellabs* and *South Ferry*, this Court should find, as it did previously, that Plaintiffs have met the standard for pleading scienter under the PSLRA.  The Court should reaffirm its prior decision.[11]

### III.    CONCLUSION

For the reasons set forth above, this Court should deny Defendants' motion to dismiss.

Dated:  June 12, 2009                    Respectfully submitted,

                                          LAW OFFICES OF CLIFFORD A. CANTOR, P.C.

                                          By:  _s/  Clifford Cantor (WSBA # 17893)_
                                          627 208th Ave. SE
                                          Sammamish, WA 98074-7033
                                          (425) 868-7813

                                          **Plaintiffs' Counsel**

                                          Lori G. Feldman (WSBA # 29096)
                                          Todd Kammerman
                                          MILBERG LLP

---

[11]    Plaintiffs note that Defendants' "accuracy" assertions do not immunize them with respect to scienter under Rule 10b-5.  Accuracy goes to falsity and materiality, not scienter.  And, even still, the question is not whether a statement was accurate, but whether a statement "conveyed to the public a false impression . . . at the time of its issuance."  *Texas Gulf Sulphur*, 401 F.2d at 862-64 (noting that whether a statement is false or misleading under Rule 10b-5 is assessed from the perspective of "the reasonable investor"); *see also SEC v. Fitzgerald*, 135 F. Supp. 2d 992, 100 (N.D. Cal. 2001) ("[a] misrepresentation or omission is material when there is 'a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available'") (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)); *SEC*, 135 F. Supp. 2d at 101 ("[t]he proper test is not the literal truth or the materiality of each positive statement, but the overall misleading impression that it combines to create") (quotation omitted).  Further, it is well-established in this Circuit that, under the securities laws, "statements literally true on their face may nonetheless be misleading."  *Miller v. Thane Int'l, Inc.*, 519 F.3d 879, 886 (9th Cir. 2008) (citing cases).  *See also In re Dura Pharmaceuticals, Inc. Sec. Litig.*, 548 F. Supp. 2d 1126, 1136 (S.D. Cal. 2008) (under section 10(b), a "statement that is literally true can be misleading and thus actionable under the securities laws"); *In re Terayon Communications Sys. Inc.*, 2002 U.S. Dist. Lexis 5502, at *23 (N.D. Cal. 2002) (under section 10(b), "[e]ven literally true statements are actionable where they create a false impression").

PLS.' REPLY TO DEFS.' JOINT
OPENING BR. ON REMAND                    - 22 -
Master File No. C04-1599 JCC

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel:  (425) 868-7813  •  Fax:  (425) 868-7870

One Pennsylvania Plaza
New York, NY 10119-0165
(212) 594-5300

William H. Narwold
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
(843) 216-9000

**Lead Counsel for Plaintiffs**

Michael A. Swick
LAW OFFICES OF MICHAEL A. SWICK, LLP
One William Street, Suite 900
New York, New York  10005
(212) 584-0770

Peter D. Bull
Joshua M. Lifshitz
BULL & LIFSHITZ, LLP
18 East 41st Street, 11th Floor
New York, New York  10017
(212) 213-6222

**Other Plaintiffs' Counsel**

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Certificate of Service

The undersigned certifies that, on June 12, 2009, he caused the foregoing to be filed with the Clerk of the Court via the CM/ECF system, which will send notification of filing to all counsel of record.

s/ Clifford Cantor, WSBA # 17893

PLS.' REPLY TO DEFS.' JOINT
OPENING BR. ON REMAND                                       - 24 -
Master File No. C04-1599 JCC

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870