The Honorable John C. Coughenour

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SOUTH FERRY LP #2, individually and
on behalf of all others similarly situated,

                              Plaintiff,

    vs.

KERRY K. KILLINGER *et al.*,

                              Defendants.

Master File No. C04-1599 JCC

**LEAD COUNSEL'S MOTION FOR
AWARD OF ATTORNEYS' FEES AND
REIMBURSEMENT OF EXPENSES**

NOTE ON MOTION CALENDAR:
Tuesday, June 5, 2012

ORAL ARGUMENT REQUESTED

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................... 1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ................................ 4

THE COURT SHOULD AWARD ATTORNEYS' FEES AND EXPENSES ............................ 4

    A.    A Reasonable Percentage of the Fund Created Is an Appropriate Method
        of Awarding Attorneys' Fees in Common Fund Cases ........................................... 5

    B.    A Fee of 29% of the Fund Is Reasonable in This Case ........................................ 6

        1.    The Result Achieved ................................................................ 6

        2.    The Risks of Litigation .............................................................. 7

        3.    The Skill Required ................................................................... 9

        4.    The Contingent Nature of the Requested Fee ........................................... 11

        5.    Awards in Similar Cases ............................................................ 12

    C.    A Lodestar Cross-check Justifies the Fee ............................................... 12

    D.    The Reaction ff the Class Supports ApprovaL ...................................... 16

EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED ...................... 17

CONCLUSION ........................................................................................... 19

LEAD COUNSEL'S MOT. FOR FEES & EXPENSES
Master File No. C04-1599 JCC

- i -

**LAW OFFICES OF**
**CLIFFORD A. CANTOR, P.C.**
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*In re BP Prudhoe Bay Royalty Trust Sec. Litig.,*
No. 06-1505 (W.D. Wash. June 30, 2009)..............................................................12

*Boeing Co. v. Van Gemert,*
444 U.S. 472 (1980)........................................................................................4

*Craft v. Cnty. of San Bernardino,*
624 F. Supp. 2d 1113 (C.D. Cal. 2008) ...........................................................5

*In re Equity Funding Corp. of Am. Sec. Litig.,*
438 F. Supp. 1303 (C.D. Cal. 1977) ................................................................11

*Grays Harbor Adventist Christian Sch. v. Carrier Corp.,*
No. 05-05437, 2008 WL 1901988 (W.D. Wash. Apr. 24, 2008) ...........................14

*Hanlon v. Chrysler Corp.,*
150 F. 3d 1011 (9th Cir. 1998) .......................................................................5

*Harris v. Marhoefer,*
24 F.3d 16 (9th Cir. 1994) .............................................................................17

*In re Heritage Bond Litig.,*
No. 02-1475, 2005 U.S. Dist. LEXIS 13627 (C.D. Cal. June 10, 2005) .........................6, 9, 16

*In re Heritage Bond Litig.,*
No. 02-1475, 2005 WL 1594403 (C.D. Cal. June 10, 2005)...........................................11, 12

*In re Informix Corp. Sec. Litig.,*
No. 97-1289, 1999 U.S. Dist. LEXIS 23579 (N.D. Cal. Nov. 23, 1999) ..............................12

*In re JDS Uniphase Corp. Sec. Litig.,*
No. 02-1486, 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) ..........................................12

*In re Mego Fin. Corp. Sec. Litig.,*
213 F.3d 454 (9th Cir. 2000) .........................................................................12

*In re Mercury Interactive Corp. Sec. Litig.,*
618 F.3d 988 (9th Cir. 2010) .........................................................................16

*In Mercury Interactive Corp. Sec. Litig.,*
No. 05-3395, 2011 WL 826797 (N.D. Cal. Mar. 3, 2011) .......................................13

*Missouri v. Jenkins,*
491 U.S. 274 (1989).....................................................................................15

*Paul, Johnson, Alston & Hunt v. Graulty,*
886 F.2d 268 (9th Cir. 1989) .................................................................4, 5, 12

LEAD COUNSEL'S MOT. FOR FEES & EXPENSES
Master File No. C04-1599 JCC

- ii -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

*Pelletz v. Weyerhaeuser Co.*,
　592 F. Supp. 2d 1322 (W.D. Wash. 2009) (Coughenour, J.)....................................14

*In re RJR Nabisco Sec. Litig.*,
　MDL No. 818, 1992 U.S. Dist. LEXIS 12702 (S.D.N.Y. Aug. 24, 1992) ..............10

*City of Roseville Emps.' Ret. Sys. v. Micron Tech., Inc.*,
　No. 06-85, 2011 WL 1882515 (D. Idaho Apr. 28, 2011) ........................................13

*Stop & Shop Supermarket Co. v. Smithkline Beecham Corp.*,
　No. 03-4578, 2005 U.S. Dist. LEXIS 9705 (E.D. Pa. May 19, 2005)....................10

*Vincent v. Hughes Air W., Inc.*,
　557 F.2d 759 (9th Cir. 1977) ..................................................................................4

*Vizcaino v. Microsoft Corp.*,
　142 F. Supp. 2d 1299 (W.D. Wash. 2001) (Coughenour, J.)......................5, 6, 7, 13

*Vizcaino v. Microsoft Corp.*,
　290 F.3d 1043 (9th Cir. 2002) ........................................................... *passim*

*In re Wash. Mut., Inc. Sec. Litig.*,
　No. 08-md-1919 (W.D. Wash. Nov. 4, 2011)....................................................5, 15

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
　19 F.3d 1291 (9th Cir. 1994) ...........................................................5, 6, 7, 11

### STATUTES

Private Securities Litigation Reform Act of 1995 ..............................................2, 6, 9

### OTHER AUTHORITIES

Fed. R. Civ. P. 23(h) ...............................................................................................1, 16

Fed. R. Civ. P. 54(d)(2)...........................................................................................1, 16

LEAD COUNSEL'S MOT. FOR FEES & EXPENSES
Master File No. C04-1599 JCC

- iii -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

# PRELIMINARY STATEMENT

Pursuant to Rule 23(h) and Rule 54(d)(2) of the Federal Rules of Civil Procedure, Court-appointed Lead Counsel firms Milberg LLP and Motley Rice LLC ("Lead Counsel") respectfully submit this motion for an order granting an award of attorneys' fees to Lead Counsel and reimbursement of expenses incurred by Lead Counsel and other Plaintiffs' Counsel in connection with the successful prosecution of this securities class action.  This motion is supported by the Joint Declaration of Lori G. Feldman and William H. Narwold, filed concurrently herewith (the "Joint Declaration" or "Joint Decl.").

On behalf of the Class, lead plaintiff and class representative Walden Management Company Pension Plan ("Walden") and lead plaintiff Metzler Investment GmbH ("Metzler," and together with Walden, the "Lead Plaintiffs"), through Lead Counsel, negotiated an excellent settlement of this action (the "Settlement") with defendants Kerry K. Killinger, Thomas W. Casey, and Deanna W. Oppenheimer (the "Individual Defendants"), and Washington Mutual, Inc. as debtor in possession ("WMI" and, together with the Individual Defendants, the "Defendants").[1]

The substantial recovery — $41.5 million in cash (plus accrued interest) — that Lead Counsel obtained for the benefit of the Class was achieved through the skill, work, dedication, and effective advocacy of Lead Counsel and the other Plaintiffs' Counsel firms.[2]  As payment for services rendered in achieving such an excellent result, Lead Counsel seek an award of attorneys' fees in the amount of 29% of the Settlement Fund, plus reimbursement of expenses reasonably incurred by Plaintiffs' Counsel in the prosecution of the Action in the amount of $879,674.77 plus interest on those expenses at the same rate and for the same period of time as

---

[1]    Unless otherwise defined herein, capitalized terms shall have the same meanings as set forth in the Class Action Settlement Agreement dated October 5, 2011 (the "Settlement Agreement") (dkt. # 261-1).

[2]    The other Plaintiffs' Counsel firms are Law Offices of Clifford A. Cantor, P.C., Bull & Lifshitz, LLP, Kahn Swick & Foti, LLC, and Sturman LLC.

that earned by the Settlement Fund until paid.

The Ninth Circuit has established a benchmark of 25% of the settlement amount for attorneys' fees.  In many common fund cases, the award exceeds that benchmark.  In this case, 29% results in a fair and reasonable fee.  The principal reasons for a higher-than-benchmark award are (i) Lead Counsel have already defended an appeal, requiring considerable time and energy; and (ii) during much of the pendency of this Action, WMI has been in bankruptcy, making the prosecution of this case (*e.g.*, locating documents and obtaining documents through subpoenas to non-parties) unusually protracted and difficult.

Among the signature achievements of Lead Counsel during this Action warranting an award above the 25% benchmark were the successful defense of the Complaint through Defendants' appeal to the Ninth Circuit and in post-remand motion practice; the certification of the Class over vigorous challenges by Defendants concerning the propriety of class certification and the appropriate length of the Class Period; and the negotiation of the production of hundreds of thousands of documents by the Individual Defendants and non-parties, which was made especially difficult in the face of WMI's bankruptcy filing (the largest bank failure in U.S. history), requiring Lead Counsel to confront issues and complications relating to the location of WMI's documents, witness relocation, and sale of WMI assets to JPMorgan Chase & Co. ("JPMC").  Moreover, the amount requested is warranted in light of the substantial recovery obtained for the Class, the extensive efforts of counsel in obtaining this remarkable result, and the significant risks in bringing and prosecuting this Action on a contingency basis over a period of nearly eight years.  This Action was prosecuted under the provisions of the Private Securities Litigation Reform Act of 1995 ("PSLRA") and, therefore, was extremely risky from the outset given the difficulty of bringing and successfully concluding such class actions.

In order to successfully prosecute this Action and bring it to this favorable conclusion, Lead Counsel also (a) thoroughly reviewed and analyzed all publicly available information regarding WMI including, but not limited to, its filings with the Securities and Exchange Commission ("SEC"), financial statements, press releases, conference call transcripts, and

LEAD COUNSEL'S MOT. FOR FEES & EXPENSES
Master File No. C04-1599 JCC                    - 2 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

analysts' reports; (b) thoroughly investigated, with the assistance of in-house investigators, the facts underlying the allegations in the Consolidated Amended Class Action Complaint for Violation of Federal Securities Laws (the "Complaint"), including identifying and interviewing numerous former WMI employees and other witnesses; (c) thoroughly researched the law pertinent to the claims and defenses asserted; (d) analyzed the damages in this Action and consulted with economic experts regarding the calculation of damages, loss causation, materiality, market efficiency and movements in the price of WMI stock; (e) filed the highly particularized Complaint on March 1, 2005; (f) litigated a complex motion to dismiss, defeating Defendants' challenge to the Complaint and their motion for reconsideration; (g) litigated the remand of Defendants' motion to dismiss from the Ninth Circuit resulting in the Court again denying Defendants' motion; (h) assisted Lead Plaintiffs in preparing discovery responses to Individual Defendants' discovery requests and prepared and propounded discovery requests upon Individual Defendants; (i) served subpoenas on 21 non-parties (or former parties) for documents relevant to the Action, and negotiated with those non-parties concerning the scope of their document production; (j) reviewed hundreds of thousands of pages of documents produced by Individual Defendants and non-parties; (k) closely monitored all activity in the WMI Chapter 11 proceeding that could have had an impact on the Class and its claims; (l) filed proofs of claim on behalf of Lead Plaintiffs and the Class with the United States Bankruptcy Court for the District of Delaware; (m) vigorously and successfully opposed confirmation of WMI's proposed plan of reorganization to the extent that it negatively impacted the Class's claims against the Individual Defendants; (n) successfully fought for the preservation of documents by WMI in the Chapter 11 proceeding; (o) prepared for and attended two sessions of mediation of this Action before a private mediator, and successfully negotiated, at arm's length, a favorable settlement for the Class, which included extensive post-mediation negotiations over the specific terms of the Settlement; (p) received approval of the Settlement from the United States Bankruptcy Court that is overseeing WMI's bankruptcy process; and (q) communicated regularly with Lead Plaintiffs regarding all of the issues, facts and circumstances in this Action, and received their approval to

LEAD COUNSEL'S MOT. FOR FEES & EXPENSES
Master File No. C04-1599 JCC

- 3 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

settle this Action.

Plaintiffs' Counsel and their professional support staff expended almost 18,000 hours in the prosecution of this Action, with a resulting lodestar of $8,938,038.50.  The requested fee of 29% of the Settlement Fund results in a modest multiplier of only 1.35.  A multiplier in this range is fair and reasonable considering the risks that Plaintiffs' Counsel took in prosecuting this Action and under the applicable standards in the Ninth Circuit.  Similarly, the expenses requested are reasonable in amount and were necessarily incurred for the successful prosecution of the Action.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

A detailed description of the factual background and procedural history of this Action, as well as the tremendous efforts of Lead Counsel and other Plaintiffs' Counsel on behalf of the Class that resulted in the Settlement of this Action, is set forth in the Joint Declaration.  For the sake of brevity, it is not repeated here, but rather incorporated by reference.

## THE COURT SHOULD AWARD ATTORNEYS' FEES AND EXPENSES

For their efforts in creating a common fund for the benefit of the Class, Lead Counsel seek an award of reasonable attorneys' fees and expenses.  It has long been recognized that "a private plaintiff, or his attorney, whose efforts create, discover, increase, or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees."  *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). The rule allows for the cost of litigation to be spread proportionately among each of the beneficiaries and provides an incentive for attorneys to pursue cases when the prospect of compensation is uncertain and remote in time. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole."); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989) ("it is well settled that the lawyer who creates a common fund is allowed an *extra* reward, beyond that which he has arranged with his client, so that he might share the wealth of those upon whom he has conferred

LEAD COUNSEL'S MOT. FOR FEES & EXPENSES
Master File No. C04-1599 JCC                    - 4 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

a benefit.") (emphasis in original).

**A.   A Reasonable Percentage of the Fund Created Is an Appropriate Method of Awarding Attorneys' Fees in Common Fund Cases**

In the context of class action settlements, district courts traditionally employ one of two methods when determining reasonable attorneys' fees in common fund cases: (1) the percentage method, in which the court awards the attorneys a percentage of the settlement fund sufficient to provide plaintiffs' attorneys with a reasonable fee; and (2) the lodestar method, in which the court calculates the lodestar by multiplying the number of hours expended by a reasonable hourly rate and then adjusts the lodestar by an appropriate multiplier to reflect the time and labor expended, the novelty and difficulty of the issues involved, and the results achieved, among other factors. *See Hanlon v. Chrysler Corp.*, 150 F. 3d 1011, 1029 (9th Cir. 1998); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("*WPPSS*").  The Ninth Circuit has repeatedly approved the use of the percentage method in common fund cases.  *See, e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Hanlon*, 150 F.3d at 1029; *Paul, Johnson*, 886 F.2d at 272.

District courts in the Ninth Circuit, including this one, have employed the percentage method in awarding fees in common fund cases where the value of the fund is readily ascertainable.  *See Vizcaino v. Microsoft Corp.*, 142 F. Supp. 2d 1299 (W.D. Wash. 2001) (Coughenour, J.); Order Awarding Attorneys' Fees and Expenses, *In re Wash. Mut., Inc. Sec. Litig.*, No. 08-md-1919-MJP (W.D. Wash. Nov. 4, 2011), ECF No. 910 (attached hereto as Exhibit 1).

Using the percentage method in common fund cases is appropriate because it closely aligns the lawyers' interest in being paid a fair fee with the interest of the class in achieving the maximum possible recovery in the shortest amount of time.  *See Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113, 1123-24 (C.D. Cal. 2008).

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

### B.      A Fee of 29% of the Fund Is Reasonable in This Case

The guiding principle in the Ninth Circuit is that a fee award be "reasonable under the circumstances." *WPPSS*, 19 F.3d at 1295.  The Ninth Circuit has articulated five factors as pertinent criteria for evaluating the reasonableness of a fee request: (1) the results achieved; (2) the risks of litigation; the (3) skill required and the quality of the work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases.  *See Vizcaino*, 290 F.3d at 1048-50; *Vizcaino*, 142 F. Supp. 2d 1299 (same).  Each of these factors supports approval of the requested attorneys' fees.

### 1.      The Result Achieved

Lead Counsel have achieved a substantial and certain cash payment of $41.5 million plus interest for the benefit of the Class without the substantial risk, delay, expense, and uncertainty of continued litigation and trial.  It has been recognized that the most critical factor to be considered in granting a fee award is the degree of success obtained.  *In re Heritage Bond Litig.*, No. 02-1475, 2005 U.S. Dist. LEXIS 13627, at *27 (C.D. Cal. June 10, 2005) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained")); *see also Vizcaino*, 142 F. Supp. 2d at 1303 ("the size of the recovery constitutes a suitable measure of the attorneys' performance.").

The Settlement creates a $41.5 million Settlement Fund for the benefit of class members.  This is an exceptional result that was achieved as a direct result of the skill and tenacity of Lead Counsel's investigation of the issues, prosecution of this Action, and persistent settlement negotiations on behalf of the Class.  This case was hard fought.  Lead Counsel defeated Defendants' motion to dismiss and subsequently successfully litigated against Defendants' interlocutory appeal to the Court of Appeals for the Ninth Circuit.  This effort resulted in the Ninth Circuit clarifying the scienter requirement under the PSLRA in accordance with Lead Plaintiffs' suggested approach.  Subsequently, after extensive post-remand briefing, Lead Plaintiffs' scienter allegations, along with the remainder of the Complaint, were sustained.  The Settlement was the result of arms'-length negotiations entered only after months of

LEAD COUNSEL'S MOT. FOR FEES & EXPENSES
Master File No. C04-1599 JCC                               - 6 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

complicated discovery, in light of WMI's bankruptcy, and after Lead Plaintiffs obtained class certification.   The settlement negotiations were conducted with the assistance of David L. Geronemus, a well-respected independent mediator.

The Settlement will provide immediate compensation to the Class and will avoid the substantial risks of a smaller recovery or no recovery at all.   While Lead Plaintiffs believe that their claims have substantial merit, throughout the Action, Defendants have consistently maintained that Lead Plaintiffs could not establish liability or damages and have challenged every factual and legal issue in the Action.   The Complaint alleges that Defendants made false and misleading statements regarding WMI's ability to manage risks inherent in interest rate fluctuations in its residential mortgage business and falsely assured investors that its risk management procedures and hedging mechanisms would allow WMI to thrive during a period of interest rate volatility.   In contrast, Defendants have long argued that any losses sustained by the Company with regard to hedging stemmed solely from market conditions, not internal company problems.   Importantly, WMI filed for Chapter 11 bankruptcy during the pendency of the Action. Even if Lead Plaintiffs successfully defeated all of Defendants' arguments, recovery from WMI was uncertain at best.   In light of these circumstances, the amount obtained in the Settlement is a substantial achievement on behalf of the Class and weighs in favor of granting the requested fee.

### 2.   The Risks of Litigation

The risks of the litigation is an important factor in determining a fair fee award.   *See, e.g.*, *WPPSS*, 19 F.3d at 1299.   Uncertainty that an ultimate recovery would be obtained is highly relevant in determining risk.   *Id.* at 1300.   Importantly, courts, including this one, have recognized that a high risk factor is a reason to increase class counsel's attorney fee award above the benchmark of 25%.   *See Vizcaino*, 142 F. Supp. 2d at 1303 (awarding 28%) (citing *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995)) (awarding 33% of the common fund on account of the complexity of issues and risks).

As discussed in the Joint Declaration, substantial risks and uncertainties in this type of litigation, and in this case in particular, made it far from certain that any recovery, let alone $41.5

LEAD COUNSEL'S MOT. FOR FEES & EXPENSES
Master File No. C04-1599 JCC                          - 7 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

million, would be obtained.  From the outset, this post-PSLRA action was an especially difficult and highly uncertain securities case, with no assurance that the Action would survive Defendants' attacks on the pleadings, motion for summary judgment, trial, and further appeals.  Lead Counsel successfully navigated through those considerable risks and obtained a favorable settlement for the Class.

The history of the litigation, as described in the Joint Declaration, sets forth the significant risks that Lead Counsel were able to overcome in order to achieve the Settlement. Lead Counsel faced significant risk at the outset of the case, with Defendants mounting substantial challenges to the sufficiency of the allegations of the Complaint.  In their motion to dismiss the Complaint, Defendants made strong challenges to every aspect of Lead Plaintiffs' claims, particularly with regard to the allegations of Defendants' scienter, which is inherently difficult to establish in any securities fraud lawsuit.  However, Defendants did not abandon their opposition after their motion was denied by this Court, and despite the fact that the Ninth Circuit granted Defendants' petition for permission to appeal the denial of their motion to dismiss (indicating that the Ninth Circuit gave at least some credence to Defendants' arguments), Lead Counsel overcame the risk posed by Defendants' appeal and were able to prevail over Defendants' arguments.  Further, even though the Ninth Circuit largely rejected Defendants' arguments on appeal, the appellate court remanded the case back to this Court for further proceedings consistent with its decision, and Lead Counsel were able to overcome the risks posed by Defendants' arguments in favor of dismissal after remand.  *See* Joint Decl. ¶¶ 25-38, 40-53, 58-63.

Lead Counsel also overcame substantial risks to class certification.  The potential denial of class certification posed an enormous risk because it would have effectively denied relief to all members of the proposed class except for the named plaintiffs.  Here, Defendants opposed class certification on multiple grounds, arguing, *inter alia*, that the class period should be shortened to end on September 9, 2003, and that Lead Counsel had not adequately established that common issues predominated over individualized issues because WMI's alleged pipeline

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

1  hedging problems and MSR hedging problems were two unrelated events.  However, Lead

2  Counsel were able to overcome these arguments and achieve class certification.  *See* Joint Decl.

3  ¶¶ 69-73, 75.

4       As described above and in the Joint Declaration, Lead Counsel also overcame other risks

5  posed by this litigation, including considerable risks posed by WMI's bankruptcy filing and the

6  transfer of its relevant documents to JPMC.

7       In sum, this highly complex case has been extensively litigated and vigorously contested

8  over an extended period of time.  Despite the difficulty of the issues raised, counsel secured an

9  excellent result for the Class.  As a result, this factor weighs in favor of the requested award.

10                    **3.      The Skill Required**

11       The "'prosecution and management of a complex national class action requires unique

12  legal skills and abilities.'"  *Heritage Bond*, 2005 U.S. Dist. LEXIS 13627, at *39 (*quoting*

13  *Edmonds v. U.S.*, 658 F. Supp. 1126, 1137 (D.S.C. 1987)).  This is especially so in securities

14  cases because "the [PSLRA] makes it much more difficult for securities plaintiffs to get past a

15  motion to dismiss."  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2007).

16  Lead Counsel are experienced and skilled practitioners in the fields of securities class actions and

17  complex litigation.  *See* Firm Résumés attached as Exhibits C-H to the Joint Declaration.  From

18  the outset, Lead Counsel engaged in a concerted effort to obtain the maximum recovery for the

19  Class and as result of these efforts Lead Counsel were able to negotiate a very favorable

20  settlement.

21       As detailed in the Joint Declaration, Lead Counsel conducted an extensive pre-filing

22  investigation that included witness interviews and a thorough review of publicly available

23  information. As a result of their efforts, Lead Counsel were able to plead detailed allegations and

24  defeat Defendants' motions to dismiss and interlocutory appeal to the Ninth Circuit.  Lead

25  Counsel also demonstrated the quality of their work in successfully obtaining certification of the

26  Class and, ultimately, in achieving the Settlement totaling $41.5 million on behalf of the Class.

27       The scope and quality of the work performed by Lead Counsel are also reflected in the

1   substantial and difficult discovery conducted.  By the time discovery commenced in this Action,

2   WMI had already filed for bankruptcy and many of the relevant documents were no longer in the

3   possession of any of the Defendants.  Shortly after discovery commenced, Lead Counsel served a

4   subpoena on third-party JPMC, as that entity acquired most of WMI's banking operations from

5   the receivership of the FDIC and was in possession of WMI's documents relevant to this Action.

6   Lead Counsel engaged in extensive negotiations with counsel for JPMC and were able to

7   develop a discovery plan, which was no easy feat given the age of the litigation and location of

8   relevant documents.  Plaintiffs also issued and served subpoenas on more than twenty other non-

9   parties.  Despite the discovery disagreements between Lead Plaintiffs and both the Individual

10  Defendants and other non-parties, Lead Counsel was adept in working with opposing counsel

11  and counsel for the non-parties in order to work through these disagreements.  Importantly, no

12  discovery dispute was ever brought to the Court for judicial review.   At the time of the

13  Settlement, Lead Counsel had obtained nearly 700,000 documents in discovery.  Lead Counsel

14  were in the process of analyzing those documents and preparing for depositions and were always

15  willing, as was made clear to Defendants and their counsel, to take the Action to trial if

16  necessary.  *See* Joint Decl. ¶¶ 64-67.

17         Moreover, Lead Counsel undertook this effort without the benefit (as exists in many

18  securities litigations) of any governmental investigation or express admission or restatement by

19  Defendants.[3]   The outstanding result achieved by Lead Counsel in the absence of any such

20  assistance from governmental investigations or Company admissions is a further testament to the

21

22  [3]     *See, e.g., Stop & Shop Supermarket Co. v. Smithkline Beecham Corp.*, No. 03-4578, 2005
    U.S. Dist. LEXIS 9705, at *39 (E.D. Pa. May 19, 2005) (awarding the requested amount of
23  attorneys' fees where "this action was riskier than many other antitrust class actions because
    there was no prior government investigation, or prior finding of civil or criminal liability based
24  on antitrust violations, in this case."); *In re RJR Nabisco Sec. Litig.*, MDL No. 818, 1992 U.S.
    Dist. LEXIS 12702, at *18 (S.D.N.Y. Aug. 24, 1992) (awarding attorneys' fees and expenses of
25  25% of the common fund because "the requested percentage lies well within the limits awarded
    in similar cases [and] plaintiffs' counsel have not taken a free ride on the efforts of a government
26  agency").

27

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

skill and tenacity of counsel.

The quality and vigor of opposing counsel is also important in evaluating the quality of the work done by Lead Counsel.  *See, e.g.*, *In re Heritage Bond Litig.*, No. 02-1475, 2005 WL 1594403, at *20 (C.D. Cal. June 10, 2005); *In re Equity Funding Corp. of Am. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977).  Defendants here were vigorously represented by some of the country's leading defense firms, including Wilson Sonsini Goodrich & Rosati; Davis Wright Tremaine LLP; Simpson Thacher & Bartlett LLP; Morvillo, Abramowitz, Grand, Iason, Anello & Bohrer, P.C.; and Skadden, Arps, Slate, Meagher & Flom LLP.  The ability of Lead Counsel to obtain such a favorable settlement for the Class in face of such formidable legal opposition further reflects the high quality of Lead Counsel's work and weighs in favor of the requested percentage fee.

### 4.        The Contingent Nature of the Requested Fee

Lead Counsel undertook this Action on a contingent fee basis, assuming a significant risk that the Action would yield no recovery and leave them entirely uncompensated for their efforts. Unlike counsel for Defendants, who are paid an hourly rate and reimbursed for their expenses on a regular basis, Lead Counsel have not been compensated for any time or expense since this case began in 2004, expending almost 18,000 hours, equating to over $8.9 million in lodestar, in obtaining this result for the Class, knowing that if their efforts were not successful, no fee would be obtained.

The Ninth Circuit has recognized that a determination of a fair and reasonable fee must include consideration of the contingent nature of the fee and the obstacles surmounted in obtaining the settlement.  *See WPPSS*, 19 F.3d at 1299 ("[i]t is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases."); *see also Vizcaino*, 290 F.3d at 1051 (noting that courts "routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases.").  The significant outlay of case and personnel resources by Lead Counsel has been completely at risk and wholly dependent upon a substantial recovery for

LEAD COUNSEL'S MOT. FOR FEES & EXPENSES
Master File No. C04-1599 JCC

- 11 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

1    the Class in the face of highly skilled defense lawyers and the hurdles presented by the PSLRA's

2    pleading requirements.

3        Lead Counsel are aware of many hard-fought litigations where, because of the discovery

4    of facts unknown when the case was commenced, because of changes in the law during the

5    pendency of the case, or because of a decision by a judge or jury following a trial on the merits,

6    excellent professional efforts of members of the plaintiffs' bar produced no fee for counsel.  *See,*

7    *e.g.*, *In re JDS Uniphase Corp. Sec. Litig.*, No. 02-1486, 2007 WL 4788556 (N.D. Cal. Nov. 27,

8    2007).  In light of the significant risks to establishing liability and damages that were present in

9    this case as discussed above, and Lead Counsel's significant commitment of time and resources,

10   the contingent nature of counsel's representation strongly favors approval of the requested fee.

11           **5.    Awards in Similar Cases**

12       The Ninth Circuit has established 25% of the settlement amount as a benchmark for fee

13   awards.  *See Vizcaino*, 290 F.3d at 1047-48, *Paul, Johnson*, 886 F.2d at 272.  However, in many

14   common fund cases in the Ninth Circuit, courts have awarded fees in excess of 25%.  *See, e.g.,*

15   *Vizcaino* (awarding 28% of $96.9 million fund);  Order Granting Award of Attorneys' Fees And

16   Reimbursement of Expenses at 2, *In re BP Prudhoe Bay Royalty Trust Sec. Litig.,* No. 06-1505,

17   (W.D. Wash. June 30, 2009), ECF No. 127 (attached hereto as Exhibit 2); *Omnivision*, 559 F.

18   Supp. 2d at 1047 (awarding 28% of the common fund); *Heritage Bond*, 2005 WL 1594403, at

19   *19 n.4 (awarding 33 1/3% of the common fund); *In re Informix Corp. Sec. Litig.*, No. 97-1289,

20   1999 U.S. Dist. LEXIS 23579, at *6 (N.D. Cal. Nov. 23, 1999) (awarding 30% of the settlement

21   fund); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (upheld fee award of

22   33.3% of settlement).

23       An analysis of all the relevant case-specific factors bolsters the reasonableness of the

24   requested fee percentage.

25       **C.    A Lodestar Cross-check Justifies the Fee**

26       When courts in the Ninth Circuit base a fee award on a percentage of the recovery, they

27   cross-check the reasonableness of the award by examining counsel's lodestar.  "Calculation of

---

LEAD COUNSEL'S MOT. FOR FEES & EXPENSES
Master File No. C04-1599 JCC                     - 12 -

the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award." *Vizcaino*, 290 F.3d at 1050.  Regardless of whether the Court employs the percentage method or the lodestar method for determining fees, *see id.* at 1047, Lead Plaintiffs respectfully submit that the requested fees are reasonable and should be awarded in full.

Under the lodestar method, courts often award fees that are a multiple higher than counsel's lodestar in order to recognize and compensate counsel's having assumed the representation without an assured payment of any fees.  For example, in *Vizcaino*, the Ninth Circuit noted that "courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases. . . .  This mirrors the established practice in the private legal market of rewarding attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases." *Id.* at 1051.

Courts in the Ninth Circuit, including this one, have found that multipliers ranging up to four are frequently awarded in common fund cases.  *See Vizcaino*, 142 F. Supp. 2d at 1306 (granting a 28% award resulting in a 3.65 multiplier, which was affirmed by the Ninth Circuit); *City of Roseville Emps.' Ret. Sys. v. Micron Tech., Inc.*, No. 06-85, 2011 WL 1882515, at *7 (D. Idaho Apr. 28, 2011) (a "multiplier of 2.72 . . . is relatively standard."); *In Mercury Interactive Corp. Sec. Litig.*, No. 05-3395, 2011 WL 826797, at *2 (N.D. Cal. Mar. 3, 2011) (awarding a fee resulting in a multiplier of 3.08, which the court said was "within the acceptable range.").

In total, Plaintiffs' Counsel spent 17,994.95 hours in the prosecution of this Action of behalf of Lead Plaintiffs and the Class.  Joint Decl. ¶ 118; *see also* Declarations of Plaintiffs' Counsel, submitted as Exhibits C-H to the Joint Decl.  The number of hours expended by Plaintiffs' Counsel is reasonable in light of the length of the Action, the hard-fought nature of the litigation, and the complexity of the issues involved.  Lead Counsel sought throughout this litigation to avoid duplication of effort by counsel.  *See* Joint Decl. ¶ 117.  Moreover, Plaintiffs'

LEAD COUNSEL'S MOT. FOR FEES & EXPENSES
Master File No. C04-1599 JCC

- 13 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

Counsel have reviewed their time records and eliminated certain entries in the exercise of billing judgment. *Id.*[4]

Here, the total lodestar of Plaintiffs' Counsel, derived by multiplying the hours worked by each firm's attorneys and support staff by their current hourly rate, equals $8,938,038.50. *See* Joint Decl. ¶ 139. The requested fee amount, 29% of the total recovery, would result in a multiplier of approximately 1.35 times Plaintiffs' Counsel's lodestar. *Id.* A multiplier of 1.35 is on the low end of multipliers typically awarded in contingent cases like this and is well within the range of multipliers approved in this Circuit.

The hourly rates of Plaintiffs' Counsel that were used to generate the lodestar are reasonable and appropriate. The lodestar calculation includes time expended by attorneys and professional support staff. See *Grays Harbor Adventist Christian Sch. v. Carrier Corp.*, No. 05-05437, 2008 WL 1901988, at *5 (W.D. Wash. Apr. 24, 2008) ("The Ninth Circuit and Washington courts recognize that substantive case-related work performed by paralegals and other non-attorney staff may be included in the calculation of recoverable lodestar."). Reasonable hourly rates are determined by reference to the prevailing market rates charged by attorneys of comparable skill and experience in the community. *See Pelletz v. Weyerhaeuser Co.*, 592 F. Supp. 2d 1322, 1326-27 (W.D. Wash. 2009) (Coughenour, J.) (approving hourly rates of firms from New York, Illinois, Ohio, Washington, D.C. and Seattle as reasonable based on the work performed in each of the respective relevant communities by attorneys of similar skill, experience and reputation); *see also Grays Harbor*, 2008 WL 1901988, at *3 (approving hourly rates of New York, California and Seattle firms and a lodestar of 1.24). The relevant legal community is the national market for securities class-action firms with the skill and resources to undertake litigation of this magnitude. A nationwide market is appropriate given that Defendants retained firms of national scope, including the Seattle and Palo Alto offices of

---

[4] In addition, Lead Counsel anticipate that they will spend substantial additional time in connection with the Settlement Fairness Hearing before this Court and in connection with the administration of the Settlement.

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

Wilson, Sonsini Goodrich & Rosati, the New York and Los Angeles offices of Simpson Thacher & Bartlett LLP, the New York office of Morvillo, Abramowitz, Grand, Iason, Anello & Bohrer, P.C, and the New York and Los Angeles offices of Skadden, Arps, Slate, Meagher & Flom LLP.

Even if one were to use Seattle-based billing rates for all Plaintiffs' counsel, the requested fee is still reasonable.  Recently, Judge Pechman considered a motion for attorneys' fees and expenses in the settlement of another case in this District involving WMI.  *See* Order Awarding Attorneys' Fees and Expenses, *In re Wash. Mut., Inc. Sec. Litig.*, No. 08-md-1919 (W.D. Wash. Nov. 4, 2011), attached as Exhibit 1.  In her order granting attorneys' fees to plaintiffs' counsel, Judge Pechman assessed the propriety of the fee request by examining billing rates charged by qualified and experienced counsel in the Seattle area, and applying billing rates based on the rates charged by the local counsel in that case (Byrnes Keller Cromwell LLP) to the hours expended by all counsel.  Specifically, Judge Pechman applied the following "Seattle" billing rates to counsel's fee request:  $525 per hour for partners, $261 per hour for other attorneys, and $145 per hour for support staff.

Even if this Court were to apply the billing rates for the Seattle community deemed suitable by Judge Pechman to the hours billed by partners ($525 x 7,019.25 hours = $3,685,106.25), other attorneys ($261 x 7,241.50 hours = $1,890,031.50), and support staff ($145 x 3,734.20 hours = $541,459.00), the requested fee would result in a lodestar of $6,116,596.75.  *See* Joint Decl. ¶ 141.  The resulting multiplier using these Seattle rates is still a modest 1.97 and well within the range typically awarded in contingency fee cases.

It is appropriate to calculate Plaintiffs' Counsel's lodestar at current billing rates, as the use of current rates offsets the delay between counsel's expenditure of time and a court's award of attorneys' fees.  The Supreme Court has recognized that in cases such as this, where counsel's entitlement to attorney's fees must await the conclusion of the case several years after the services are rendered, courts typically offset the delay in payment by either basing the award on current, instead of historical, billing rates, or by adjusting historical fees to account for their present value (*i.e.*, by awarding prejudgment interest on the fee award).  *See Missouri v. Jenkins*,

LEAD COUNSEL'S MOT. FOR FEES & EXPENSES
Master File No. C04-1599 JCC                    - 15 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

1  491 U.S. 274, 282-84 (1989).

2      In sum, the requested attorneys' fees are well within the range of what courts in this

3  Circuit commonly award in complex class actions such as this one, and the requested 29% fee is

4  reasonable and fair under both the percentage and lodestar methodologies.

5          **D.        The Reaction of the Class Supports Approval**

6      Although not specifically articulated by *Vizcaino*, district courts in the Ninth Circuit may

7  consider the reaction of the class when deciding whether to award the requested fee. *See*

8  *Heritage Bond*, 2005 U.S. Dist. LEXIS 13627, at *48 ("The presence or absence of objections

9  . . . is also a factor in determining the proper fee award.").  Pursuant to Rules 23(h) and 54(d),

10  Lead Plaintiffs are making this motion before the objection deadline so that Class members have

11  a chance to read it on the settlement website and comment on it. *See In re Mercury Interactive*

12  *Corp. Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010) ("Allowing class members an opportunity

13  thoroughly to examine counsel's fee motion, inquire into the bases for various charges and ensure

14  that they are adequately documented and supported is essential for the protection of the rights of

15  class members.").

16      To date, the Settlement Notice has been sent to over 446,000 potential Class members

17  and the Publication Notice was published in the global edition of *The Wall Street Journal* and

18  transmitted over the Global Media Circuit of *Business Wire*. *See* Joint Decl. ¶ 83.  Class

19  members were informed in the Settlement Notice that Plaintiffs' Lead Counsel were moving for

20  attorneys' fees in an amount not to exceed one-third of the Settlement Fund and for

21  reimbursement of their expenses in the approximate amount of approximately $1 million, plus

22  interest on such expenses at the same rate as earned by the Settlement Fund.  Class members

23  were also advised of their right to object to the fee and expense request, and that any such

24  objections were required to be filed with the Court and served on counsel no later than May 4,

25  2012.  As of the date of this motion, Lead Counsel have received <u>no</u> objections to their fee and

26  expense request. *Id.* ¶ 86.  The absence of objections from Class members weighs heavily in

27  favor of Lead Counsel's fee and expense request.

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

1      **EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED**

2            Lead Counsel also request reimbursement of expenses incurred by themselves and other

3      Plaintiffs' Counsel in connection with the prosecution of this Action, plus interest on such

4      expenses from the date the Settlement Fund was funded to the date of payment at the same net

5      rate as earned by the Settlement Fund.   In total, Plaintiffs' Counsel have incurred expenses

6      totaling approximately $879,674.77.   These expenses are discussed further in the declarations of

7      counsel submitted as exhibits to the Joint Declaration.

8            Here, Plaintiffs' Counsel's incurred expenses include: (1) fees charged by experts and

9      consultants; (2) costs of legal and factual research; (3) costs for court reporters, transcripts and

10     videos; (4) costs for the mediation services provided in this case; (5) filing and witness fees; (6)

11     hotel and transportation charges; (7) costs associated with photocopies, reproduction, printing

12     and scanning of documents; (8) postage and notice costs; (9) telephone and facsimile charges;

13     (10) costs of messengers and express services; and (11) costs of meals.   These expenses were

14     reasonably incurred in light of the work performed, the legal and factual issues presented, the

15     vigorous defense mounted by Defendants, and the significant results obtained.

16           The appropriate analysis to apply in deciding which expenses are compensable in a

17     common fund case of this type is whether the particular costs are of the type typically billed by

18     attorneys to paying clients in the marketplace.   *See, e.g., Harris v. Marhoefer*, 24 F.3d 16, 19

19     (9th Cir. 1994) (class counsel "may recover as part of the award of attorneys' fees those out-of-

20     pocket expenses that 'would normally be charged to a fee paying client'") (citations omitted).

21           The expenses for which Plaintiffs' Counsel seek reimbursement are the type of expenses

22     routinely charged to hourly paying clients.   For example, a large portion of the litigation

23     expenses for which reimbursement is sought were incurred in payment for work performed by

24     Lead Plaintiffs' testifying and consulting experts in the areas of loss causation, damages,

25     mortgage loan portfolio hedging and computer IT systems.   A significant portion of these

26     expenses were incurred in payment for work performed by Lead Plaintiffs' bankruptcy counsel

27     (Lowenstein Sandler PC), who performed substantial work in connection with WMI's

LEAD COUNSEL'S MOT. FOR FEES & EXPENSES
Master File No. C04-1599 JCC                        - 17 -

LAW OFFICES OF
**CLIFFORD A. CANTOR, P.C.**
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

bankruptcy filing to protect the interests of the Class.  *See* Joint Decl. ¶ 148.

Another significant expense related to the costs of  processing, uploading, and hosting of hundreds of thousands of pages of documents.  Many of the documents obtained in discovery were produced in hard-copy format, and counsel incurred substantial expenses in order to convert those hard-copy documents into electronic format, which was necessary to facilitate counsel's review and analysis of those discovery documents.  *Id.* ¶ 149.

Another large component of counsel's litigation expenses was for online legal research services such as LexisNexis and Westlaw.  These legal research costs were necessary in light of the substantial motion practice that occurred in this litigation.  *Id.* ¶ 150.

In addition, certain counsel were required to travel in connection with this case and thus incurred the related costs of meals, lodging and transportations.  Counsel in this case traveled to attend court hearings and client meetings, to review documents, and to defend depositions, all of which were necessary for the diligent prosecution of this Action.  *Id.* ¶ 151.

Just as they did with their time records, Lead Counsel carefully reviewed their expense records and, in an abundance of caution, Lead Counsel are not seeking reimbursement for all of their incurred expenses.  *Id.* ¶ 148.

The Court-approved notice provided to potential Class members informed them that Lead Counsel intended to apply for the reimbursement of litigation expenses of approximately $1 million.  The amount of expenses sought, $879,674.77, is lower than the amount stated in the Notice.  In light of the expenses Plaintiffs' Counsel incurred to bring this case to its current settlement posture, Plaintiffs' Counsel's request for reimbursement of expenses is reasonable and should be approved.

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

**CONCLUSION**

Lead Counsel respectfully request that the Court award attorneys' fees in the amount of 29% of the Settlement Fund, plus expenses in the amount of $879,674.77 along with interest earned on those expenses at the same rate and for the same period as that earned by the Settlement Fund until paid.

Dated: April 13, 2012                    Respectfully submitted,

By:  /s/ Cliff Cantor
Cliff Cantor, WSBA #17893
**LAW OFFICES OF**
    **CLIFFORD A. CANTOR, P.C.**
627 208th Ave. SE
Sammamish, WA 98704-7033
Tel.: (425) 868-7813
Fax: (425) 732-3752
cliff.cantor@comcast.net

*Liaison Counsel for Lead Plaintiffs*

/s/ Lori G. Feldman, WSBA # 29096
Joshua H. Vinik
Matthew A. Kupillas
Todd Kammerman
Jennifer J. Sosa
**MILBERG LLP**
One Pennsylvania Plaza
New York, NY 10119
Tel: (212) 594-5300
Fax: (212) 868-1229
lfeldman@milberg.com
jvinik@milberg.com
mkupillas@milberg.com
tkammerman@milberg.com
jsosa@milberg.com

William H. Narwold
**MOTLEY RICE LLC**
One Corporate Center
20 Church St., 17th Floor
Hartford, CT 06103
Tel: (860) 882-1676
Fax: (860) 882-1682

LEAD COUNSEL'S MOT. FOR FEES & EXPENSES
Master File No. C04-1599 JCC                    - 19 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

bnarwold@motleyrice.com

*-and-*

Frederick C. Baker

Badge Humphries

Meghan Shea Blaszak Oliver

**MOTLEY RICE LLC**

28 Bridgeside Blvd.

Mount Pleasant, SC 29464

Tel: (843) 216-9184

Fax: (843) 216- 9450

bhumphries@motleyrice.com

***Lead Counsel for Lead Plaintiffs***

**Certificate of Service**

I certify that, on April 13, 2012, I caused the foregoing, along with its two exhibits and proposed final judgment, to be filed with the clerk of the court via the CM/ECF system, which will send notification of filing to all counsel of record.

/s/ Cliff Cantor, WSBA # 17893

DOCS\621238v2

LEAD COUNSEL'S MOT. FOR FEES & EXPENSES
Master File No. C04-1599 JCC

- 20 -