The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SOUTH FERRY LP #2, individually and
on behalf of all others similarly situated,

                       Plaintiff,

    vs.

KERRY K. KILLINGER *et al.*,

                       Defendants.

Master File No. C04-1599 JCC

**JOINT DECLARATION OF LORI G.
FELDMAN AND WILLIAM H.
NARWOLD IN SUPPORT OF LEAD
PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF SETTLEMENT AND
PLAN OF ALLOCATION OF
SETTLEMENT PROCEEDS, AND LEAD
COUNSEL'S MOTION FOR AN AWARD
OF ATTORNEYS' FEES AND
REIMBURSEMENT OF EXPENSES**

NOTE ON MOTION CALENDAR:
June 5, 2012

LORI G. FELDMAN and WILLIAM H. NARWOLD declare as follows:

1.     Lori G. Feldman and William H. Narwold are, respectively, members of Milberg LLP ("Milberg") and Motley Rice LLC ("Motley Rice"), Lead Counsel for Walden Management Company Pension Plan ("Walden"), lead plaintiff and class representative, and lead plaintiff Metzler Investment GmbH ("Metzler" and, together with Walden, the "Lead Plaintiffs"), in the above-captioned litigation (the "Action").

2.     Attorney Feldman has been actively involved in the prosecution of this Action, is

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

familiar with its proceedings, and has personal knowledge of the matters set forth herein based upon her active supervision and participation in all material aspects of the Action.

3.     Attorney Narwold has been actively involved in the prosecution of this Action, is familiar with its proceedings, and has personal knowledge of the matters set forth herein for events that occurred after Motley Rice was appointed co-lead counsel on December 18, 2006, based upon his active supervision and participation in all material aspects of the Action from that time forward.  Unless otherwise indicated, the statements in this declaration are based on the personal knowledge of Attorneys Feldman and Narwold, and if called to do so, we could and would testify competently thereto.

4.     As Lead Counsel, we submit this declaration in support of Lead Plaintiffs' motion, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for this Court's final approval of the settlement of this Action (the "Settlement") and the Plan of Allocation of settlement proceeds (the "Settlement Motion"), and in support of Lead Counsel's motion for an award of attorneys' fees and reimbursement of expenses (the "Fee and Expense Motion").

5.     The Class Action Settlement Agreement dated October 5, 2011 (the "Settlement Agreement") provides for a payment of $41,500,000 in cash, which has been deposited in escrow and is earning interest for the benefit of the Class (the "Settlement Fund").[1]

6.     The Settlement resolves all claims asserted by Lead Plaintiffs and the Class in this litigation against all defendants: Kerry K. Killinger, Thomas W. Casey and Deanna W. Oppenheimer (collectively, the "Individual Defendants") and Washington Mutual, Inc., as debtor in possession ("WMI" or the "Company" and, together with the Individual Defendants, the "Defendants"), through their respective counsel.

7.     This declaration describes the claims asserted, the principal proceedings to date, the legal services provided by Lead Counsel and other Plaintiffs' counsel, and the Settlement.

---

[1]     All capitalized terms not defined herein shall have the same meanings as set forth in the Settlement Agreement.

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

1  This declaration also demonstrates why the Settlement and Plan of Allocation are fair,

2  reasonable, and adequate, and in the best interests of the Class, and why the application for

3  award of attorneys' fees and reimbursement of expenses is reasonable and should be approved by

4  the Court.

5  **I.      PRELIMINARY STATEMENT**

6          8.      This Action was carefully investigated before it was filed and has been vigorously

7  litigated since its commencement on July 21, 2004, a period of over seven years.  Lead Counsel

8  prosecuted this Action through briefing of Defendants' motion to dismiss, Defendants'

9  interlocutory appeal to the United States Court of Appeals for the Ninth Circuit, further briefing

10 on Defendants' motion to dismiss on remand from the Ninth Circuit, and Plaintiffs' motion for

11 class certification.  Lead Counsel also engaged in discovery which included review and analysis

12 of hundreds of thousands of pages of documents.  These documents were secured only after

13 time-intensive negotiations with the parties and non-parties that produced these documents over

14 the scope of the discovery sought and the methods and search terms used to identify responsive

15 documents.  Counsel for Defendants aggressively defended this case at all times, yet Lead

16 Counsel were successful in obtaining an excellent result for the Class.

17         9.      The Settlement is the result of the skill and tenacity of Lead Counsel.  Among the

18 signature achievements of Lead Counsel during this Action were the successful defense of the

19 Complaint through Defendants' appeal to the Ninth Circuit and in post-remand motion practice;

20 the certification of the Class over vigorous challenges by Defendants concerning the propriety of

21 class certification and the appropriate length of the Class Period; and the negotiation of the

22 production of hundred of thousands of documents by the Individual Defendants and non-parties,

23 which was made especially difficult in the face of WMI's bankruptcy filing (the largest bank

24 failure in U.S. history), requiring Lead Counsel to confront issues and complications relating to

25 the location of WMI's documents, witness relocation, and sale of WMI assets to JPMorgan

26 Chase & Co.  In order to successfully prosecute this Action and bring it to this favorable

27 conclusion, Lead Counsel also (a) thoroughly reviewed and analyzed all publicly available

JOINT DECL. OF FELDMAN AND NARWOLD
Master File No. C04-1599 JCC                         - 3 -

LAW OFFICES OF
**CLIFFORD A. CANTOR, P.C.**
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

information regarding WMI including, but not limited to, its filings with the Securities and Exchange Commission ("SEC"), financial statements, press releases, conference call transcripts, and analysts' reports; (b) thoroughly investigated, with the assistance of in-house investigators, the facts underlying the allegations in the Consolidated Amended Class Action Complaint for Violation of Federal Securities Laws (the "Complaint"), including identifying and interviewing numerous former WMI employees and other witnesses; (c) thoroughly researched the law pertinent to the claims and defenses asserted; (d) analyzed the damages in this Action and consulted with economic experts regarding the calculation of damages, loss causation, materiality, market efficiency and movements in the price of WMI stock; (e) filed the highly particularized Complaint on March 1, 2005; (f) litigated a complex motion to dismiss, defeating Defendants' challenge to the Complaint and their motion for reconsideration; (g) litigated the remand of Defendants' motion to dismiss from the Ninth Circuit resulting in the Court again denying Defendants' motion; (h) assisted Lead Plaintiffs in preparing discovery responses to Individual Defendants' discovery requests and prepared and propounded discovery requests upon Individual Defendants; (i) served subpoenas on 21 non-parties (or former parties) for documents relevant to the Action, and negotiated with those non-parties concerning the scope of their document production; (j) reviewed hundreds of thousands of pages of documents produced by Individual Defendants and non-parties; (k) closely monitored all activity in the WMI Chapter 11 proceeding that could have had an impact on the Class and its claims; (l) filed proofs of claim on behalf of Lead Plaintiffs and the Class with the United States Bankruptcy Court for the District of Delaware; (m) vigorously and successfully opposed confirmation of WMI's proposed plan of reorganization to the extent that it negatively impacted the Class's claims against the Individual Defendants; (n) successfully fought for the preservation of documents by WMI in the Chapter 11 proceeding; (o) prepared for and attended two sessions of mediation of this Action before a private mediator, and successfully negotiated, at arm's length, a favorable settlement for the Class, which included extensive post-mediation negotiations over the specific terms of the Settlement; (p) received approval of the Settlement from the United States Bankruptcy Court that

JOINT DECL. OF FELDMAN AND NARWOLD
Master File No. C04-1599 JCC

- 4 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

1   is overseeing WMI's bankruptcy process; and (q) communicated regularly with Lead Plaintiffs

2   regarding all of the issues, facts and circumstances in this Action, and received their approval to

3   settle this Action.

4         10.   The Settlement represents an excellent result for the Class.  It is the product of

5   seven years of extensive investigation, aggressive litigation and negotiation, and takes into

6   account the significant risks specific to this case.  The Settlement was also the result of a

7   mediation process conducted with the assistance of David Geronemus, Esq., an experienced

8   mediator.  It was negotiated by experienced counsel for Lead Plaintiffs and Defendants with a

9   firm understanding of both the strengths and weaknesses of their clients' respective claims and

10   defenses.

11         11.   The Settlement confers an immediate and substantial benefit on the Class and

12   eliminates the significant risk of continued litigation under circumstances where a favorable

13   outcome was uncertain.  Lead Counsel respectfully submits that under these circumstances the

14   Settlement is an outstanding result, is in the best interest of the Class, and should be approved as

15   fair, reasonable, and adequate.  Lead Counsel also respectfully ask the Court to approve the Plan

16   of Allocation of settlement proceeds.

17         12.   We also ask the Court to award attorneys' fees in the amount of 29% of the

18   Settlement Fund and reimbursement of expenses of $879,674.77, which were reasonably and

19   necessarily incurred by Plaintiffs' Counsel in prosecuting this Action on a contingency basis for

20   many years and creating this substantial benefit on behalf of the Class.  The percentage fee

21   request is within the range of percentages frequently awarded in these types of actions and is

22   justified in light of the substantial benefits conferred on the Class, the substantial risks

23   undertaken, the quality of representation, and the nature and extent of legal services performed.

24         13.   To date, the members of the Class support the Settlement and Lead Counsel's fee

25   and expense request.  Pursuant to the Court's December 2, 2011 preliminary approval order, the

26   Notice of Pendency of Class Action and Proposed Settlement, Motion For Attorneys' Fees, and

27   Settlement Fairness Hearing (the "Settlement Notice") and Proof of Claim form were sent to

JOINT DECL. OF FELDMAN AND NARWOLD
Master File No. C04-1599 JCC

- 5 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

1  more than 446,000 potential Class members. *See* Affidavit of Eric J. Miller of Rust Consulting,

2  attached as Exhibit A hereto, ¶ 10.  Additionally, on February 24, 2012, the Summary Notice of

3  Pendency of Class Action, Proposed Settlement, and Fairness Hearing (the "Publication Notice")

4  was published in the global edition of *The Wall Street Journal* and transmitted over the Global

5  Media Circuit of the *Business Wire*.  *See* Affidavit of Paul J. Andrejkovics Re: Publication of the

6  Summary Notice of Proposed Settlement of Class Action and Settlement Hearing, attached as

7  Exhibit B hereto.  The Settlement Notice, Publication Notice and Proof of Claim Form were also

8  placed on the Claims Administrator's website, on or before February 17, 2012.  *See* Miller

9  Affidavit ¶ 12.  The Settlement Notice apprised Class members of the terms of the Settlement,

10  and of their right to object to the Settlement, to the Plan of Allocation of settlement proceeds, or

11  to Lead Counsel's application for attorneys' fees and expenses.  Although the deadline to file

12  objections to the proposed Settlement, May 4, 2012, has yet to pass, to date not a single objection

13  has been received to any aspect of the Settlement, the Plan of Allocation of settlement proceeds,

14  or Lead Counsel's request for an award of attorneys' fees and expenses.

15      14.    The United States Bankruptcy Court for the District of Delaware, where WMI's

16  Chapter 11 bankruptcy proceeding is pending, has also provided its approval of WMI's entry

17  into the Settlement.  On January 4, 2012, the Bankruptcy Court issued an order that found, *inter*

18  *alia*, that the Settlement is fair and reasonable, and authorized WMI and WMI Investment Corp.

19  as debtors and debtors in possession to take all steps necessary to consummate the Settlement.

20      15.    The following is a summary of the nature of Lead Plaintiffs' claims, the principal

21  events that occurred during the course of this Action, and the legal services provided by Lead

22  Counsel and other Plaintiffs' counsel.

23  **II.    SUMMARY OF LEAD PLAINTIFFS' ALLEGATIONS**

24      16.    This is a securities fraud action brought by Lead Plaintiffs on behalf of

25  themselves and all persons who purchased the common stock of WMI between April 15, 2003

JOINT DECL. OF FELDMAN AND NARWOLD
Master File No. C04-1599 JCC

- 6 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

and June 28, 2004, inclusive (the "Class Period"), and who were damaged thereby.[2]  The Action involves claims against the Individual Defendants under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder.  The Action also involves claims against WMI under Section 10(b) of the Exchange Act.  The allegations are set forth in the Complaint.

17.    The core of Lead Plaintiffs' allegations, all of which Defendants continue to deny, is that WMI and the Individual Defendants knowingly and affirmatively misrepresented that WMI had successfully integrated various technology platforms from certain acquisitions and that Company's mortgage operations were well-positioned to withstand market changes in interest rates because of its hedging operations and the natural counterbalance of its risk.  Lead Plaintiffs further alleged that these statements were false and misleading because WMI had not successfully integrated its recent acquisitions or the technology platforms used by those companies, which made it impossible for the Company to manage the risk to its mortgage business associated with changing interest rates.

18.    Lead Plaintiffs alleged that after the Company could no longer conceal these major technological and operational problems due to their financial impact, Defendants admitted their existence.   According to the Complaint, however, Defendants continued to mislead investors regarding whether the problems had been resolved in order to convince investors that the Company was prepared to withstand major increases in interest rates.  Many of Defendants' alleged false and misleading statements were made in direct response to specific questions posed to them regarding the Company's technological capability to perform its hedging operations.

19.    Early in the second quarter of 2004, interest rates began increasing, as widely

---

[2]    Expressly excluded from the Class are WMI and the Individual Defendants; former defendants William W. Longbrake, Craig J. Chapman, James G. Vanasek; any other officers and directors of WMI during the Class Period; members of their immediate families and their legal representatives, heirs, successors or assigns; and any entity in which any of the Defendants or former defendants have or had a controlling interest.

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

1  expected.   The Complaint alleges that contrary to Defendants' public statements, WMI's

2  undisclosed continuing technological and operational problems were crippling its ability to

3  perform its "natural, pure business hedge" of its mortgage portfolio and exposing the Company

4  to major financial losses.  Lead Plaintiffs alleged that the extent of WMI's problems finally

5  became known to investors only when the Company disclosed during the second quarter of 2004

6  that its inability to hedge against increasing interest rates resulted in zero income from its

7  mortgage banking operations (a $531 million decline from the prior quarter) and a massive

8  $2.112 billion loss in the value of its mortgage servicing rights assets.  As a result, according to

9  the Complaint, WMI's stock price fell significantly, thereby damaging Lead Plaintiffs and the

10  Class members they represent.

11         20.    Defendants have consistently denied, and continue to deny, the allegations of

12  Lead Plaintiffs' Complaint as described above.

13  **III.    LEAD PLAINTIFFS' PROSECUTION OF THE CASE**

14         **A.    The Filing of the Initial Complaints**

15         21.    On July 21, 2004, *South Ferry LP #2 v. Killinger, et al.*, No. C04-1599C, was

16  filed in the United States District Court for the Western District of Washington, Seattle Division,

17  as securities class actions on behalf of persons who purchased the publicly traded securities of

18  WMI between April 15, 2003 and June 28, 2004.  Following the filing of this action, five

19  additional related actions were filed in this Court.

20         22.    By order dated November 15, 2004, the Court consolidated all six cases under the

21  caption *South Ferry LP #2 v. Killinger, et al.*, Master File No. C04-1599.

22         **B.    Appointment of Lead Plaintiff**

23         23.    By Order dated November 30, 2004, the Court appointed The Walden

24  Management Co. Pension Plan, Metzler Investment GmbH, and South Ferry LP #2 as Lead

25  Plaintiffs pursuant to § 21D(a)(3)(B) of the Exchange Act and approved Lead Plaintiffs'

26  selection of Milberg Weiss Bershad & Schulman LLP (now Milberg LLP) as Lead Counsel

27  pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v) of the Exchange Act.

**C.     The Consolidated Complaint**

24.     After its appointment to manage the Action on behalf of the Lead Plaintiffs and the putative class, Milberg continued its investigation of the allegations against Defendants.  This investigation included, *inter alia*, a detailed analysis of WMI's relevant Class Period SEC filings and press releases, as well as locating and interviewing numerous former WMI employees with first-hand knowledge of the facts and events at issue in this litigation.  This overarching investigation was critical to the success of the case.  The information gleaned from many of these former employees regarding WMI's operational problems was critical to establishing the falsity of Defendants' statements.  The investigation allowed Lead Counsel to draft and file the Complaint, which contains 183 paragraphs of detailed allegations that plead violations of Sections 10(b) and 20(a) of the Exchange Act by Defendants, as discussed above in ¶¶ 16-20.

**D.     Defendants' Motion to Dismiss**

25.     Defendants filed a motion to dismiss the Complaint on May 17, 2005.  In this motion, Defendants argued that (1) the Complaint failed to allege actionable false and misleading statements; (2) the Complaint failed to satisfy the heightened pleading requirements for scienter under the PSLRA and Rule 9(b); (3) Lead Plaintiffs lacked standing to pursue claims on behalf of anyone other than common stock purchasers; and (4) because Lead Plaintiffs failed to plead a primary violation of the Exchange Act, they could not bring a claim for control person liability under Section 20(a).  Defendants characterized the Complaint as containing allegations of mismanagement rather than fraud.  With regard to scienter, Defendants first advanced their theory that Lead Plaintiffs' allegations about "pipeline hedging" and "MSR hedging" were unrelated.[3]  Defendants also attacked Lead Plaintiffs' allegations concerning confidential

---

[3]     WMI's mortgage business derived revenue through loan origination (*i.e.*, new loans "in the pipeline") and through mortgage servicing rights ("MSR") on pre-existing loans.  Complaint ¶ 34.  Both activities—loan origination and loan servicing—inherently are subject to substantial risk from fluctuations in interest rates.  Loan origination business falls off when interest rates rise and consumer borrowing decreases.  Complaint ¶ 35.  MSR business falls off when interest rates decline and give consumers an incentive to refinance, often with other lenders.  *Id*.  WMI hedged

(continued...)

JOINT DECL. OF FELDMAN AND NARWOLD
Master File No. C04-1599 JCC
- 9 -
LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

witnesses and argued that Lead Plaintiffs had not alleged any contemporaneous facts known by Defendants while making their Class Period statements that would render those statements false.

26.     Lead Plaintiffs filed their opposition to Defendants' Motion to Dismiss on July 18, 2005, addressing in detail each of the issues raised by Defendants.  This opposition supported Lead Plaintiffs' theory that Defendants had misled the market concerning WMI's "balanced business model," that WMI had integrated its acquisitions and that WMI was well-prepared to withstand a change in the interest rate environment.  Lead Plaintiffs also argued, *inter alia*, that Defendants' Class Period statements, alleged in the Complaint to be materially false and misleading, were actionable and that they had adequately pled that Defendants acted with a strong inference of scienter.

27.     On August 16, 2005, Defendants filed their reply.  Defendants repeated many of their arguments made in their opening brief and also argued that Lead Plaintiffs could not rely on the Individual Defendants' positions at WMI to establish scienter.

28.     On November 17, 2005, this Court granted in part and denied in part the motion to dismiss, dismissing the claims against Longbrake, Chapman and Vanasek, but holding as to the remaining Defendants that Lead Plaintiffs had adequately pleaded their claims.  *South Ferry LP #2 v. Killinger*, 399 F. Supp. 2d 1121 (W.D. Wash. 2005).  This Court found that Lead Plaintiffs had pleaded particularized allegations describing:

> (1) how WAMU's ability to effectively integrate the various information technology systems of its recent acquisitions would impact its ability to withstand changes in the interest-rate environment; (2) the availability of contemporaneous information indicating that WAMU had *not* effectively integrated those technologies, and thus had exposed itself to significant interest-rate risks; (3) the Defendants' job responsibilities and potential exposure to this information; and (4) the specificity with which Defendants' public statements referred to these technologies yet denied the apparent scope and effect of the problems.

---

(...continued from previous page)

risk associated with exposure to changing interest rates: with respect to loan origination, this may be referred to as "pipeline hedging," and with respect to loan servicing as "MSR hedging."

LAW OFFICES OF
**CLIFFORD A. CANTOR, P.C.**
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

1   Order Granting Defendant's Motion for Certification for Interlocutory Appeal under 28 U.S.C.

2   § 1292(b) dated March 6, 2006 (the "1292(b) Order") at 3.

3         29.     In its decision, the Court also stated that:

4       Plaintiffs allege that Defendants' knowledge of this information can be inferred

5   because of the nature of the statements they were making and the nature of these

6   specific alleged operational problems.  The Court agrees.  In addition, as

discussed below, because of the specific nature of the challenged statements, the

7   Court finds that the complaint alleges with sufficient particularity that making the

8   challenged statements without knowing whether they were accurate was

actionably reckless.

9   399 F. Supp. 2d at 1141 (citation omitted).

10         30.     Finally, the Court dismissed claims on behalf of those who sold put options

11   during the Class Period because it found that Lead Plaintiffs failed to allege how individuals who

12   bought or sold securities other than common stock may have suffered losses as a result of

13   Defendants' alleged conduct.  South Ferry's claims were based on the sale of put options;

14   accordingly, South Ferry eventually withdrew as a lead plaintiff on March 15, 2010 and was

15   terminated from the Action on March 17, 2010.

16       **E.**    **Defendants' Motion for Reconsideration and Motion for Interlocutory**

17            **Appeal**

18         31.     On December 2, 2005, Defendants filed a motion for reconsideration of the denial

19   of the motion to dismiss, or, in the alternative, for a certificate of appealability under 28 U.S.C. §

20   1292(b).  In this motion, Defendants argued that the Court's finding that Lead Plaintiffs had met

21   their burden of pleading facts that give rise to a strong inference of scienter by inferring that

22   "facts critical to a business's core operations… are known to a company's key officers" (399 F.

23   Supp. 2d at 1139, 1141) conflicted with the Ninth Circuit's holding in *In re Read-Rite Corp.*

24   *Securities Litigation*, 335 F.3d 843 (9th Cir. 2003).

25         32.     On December 6, 2005, the Court denied Defendants' motion for reconsideration.

26   The Court wrote that it did not interpret *Read-Rite* to "categorically reject the 'core operations'

27

JOINT DECL. OF FELDMAN AND NARWOLD      - 11 -
Master File No. C04-1599 JCC

1    inference as a way of alleging scienter." (Dkt. #77 at 2).  The Court, in the 1292(b) Order, also

2    directed Lead Plaintiffs to respond to Defendants' motion for certification of appealability.

3         33.    On December 19, 2005, Lead Plaintiffs responded to Defendants' motion for

4    certification of appealability.  Lead Plaintiffs argued, *inter alia*, that the Court did not rely on

5    their core operations allegations alone, but rather properly considered all of Lead Plaintiffs'

6    allegations and correctly considered all proper inferences, and that there were no substantial

7    grounds for a difference of opinion that would warrant review by the Ninth Circuit.  Defendants

8    filed their reply in support of their motion on December 23, 2005.

9         34.    On February 3, 2006, Defendants filed an answer to the Complaint (the

10   "Answer").  Defendants denied, and continue to deny, all charges of wrongdoing or liability

11   against them arising out of the conduct, statements, acts, or omissions alleged or that could have

12   been alleged in the Complaint.  In their Answer, Defendants also asserted a number of

13   affirmative defenses, including that the Complaint failed to state a claim against them; that the

14   statements or omissions attributed to Defendants were not actionable under the federal securities

15   laws and did not cause injury to the plaintiffs; and that the Defendants acted in good faith.

16        35.    On March 6, 2006, the Court issued an order certifying its November 17, 2005

17   order for immediate interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  The Court found that

18   some courts had interpreted *Read-Rite* as restricting the core operations inference, and that if that

19   inference was restricted in this case, Defendants' statements indicating first-hand knowledge of

20   WMI's mortgage hedging operations may be insufficient to establish scienter.  All lower court

21   proceedings were stayed by the Court during the pendency of the appeal.

22        36.    On March 20, 2006, Defendants filed a Petition for Permission to Immediately

23   Appeal an Interlocutory Order with the United States Court of Appeals for the Ninth Circuit.

24   The question certified for appeal, as stated by Defendants in their petition, was:

25        Whether, under the "strong inference of scienter" pleading standard established
          by the PSLRA and elucidated by this Court in *Silicon Graphics*, plaintiffs may
26        rely on a "scienter theory [that] requires an inference that "facts critical to a

27

business's core operations or [an] important transaction are known to a company's key officers."

Defendants argued that (1) the validity of the "core operations inference" presented a controlling issue of law; (2) that there was substantial ground for difference of opinion as to the Court's application of this inference; and (3) that an appeal would materially advance the ultimate termination of the litigation, and the controlling issue was likely to present itself only in an interlocutory appeal.

37.     On April 3, 2006, Lead Plaintiffs filed their Opposition to Defendants' Petition for Permission to Immediately Appeal an Interlocutory Order.  Lead Plaintiffs argued that the question certified for appeal was:

> [I]n light of the totality of plaintiffs' allegations, "whether the core operations may form *any* part of the basis for a finding of scienter."

Lead Plaintiffs argued that: (1) no controlling issue of law was involved; (2) there were no substantial grounds for a difference of opinion; and (3) that an appeal would not advance the termination of the litigation.  Lead Plaintiffs asked the Ninth Circuit to decline to accept the appeal.

38.     The Ninth Circuit granted Defendants' petition for permission to appeal on June 9, 2006.

**F.      Motley Rice Joins Milberg as Lead Counsel**

39.     Lead Plaintiff Metzler filed an unopposed motion seeking appointment of Motley Rice as plaintiffs' co-lead counsel on September 12, 2006.  On December 18, 2006, this Court issued an order granting such motion and appointed Motley Rice as plaintiffs' co-lead counsel.

**G.      The Interlocutory Appeal before the Ninth Circuit**

40.     On September 25, 2006, Defendants filed their opening appeal brief with the Ninth Circuit.  In that brief, Defendants argued that the Ninth Circuit had rejected the core operations inference as "inconsistent" with the PSLRA's stringent pleading requirements. Specifically, Defendants argued that *Silicon Graphics* set a very high bar to satisfy the PSLRA

JOINT DECL. OF FELDMAN AND NARWOLD
Master File No. C04-1599 JCC

- 13 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

1    and that *Read-Rite* "unambiguously rejected the 'core operations' inference applied" by the

2    Court.  Defendants also argued that the Court relied upon case law that did not justify use of the

3    core operations presumption, and that without this presumption, Lead Plaintiffs failed to allege

4    facts sufficient to satisfy the PSLRA's requirements for pleading scienter.  Defendants also

5    advanced their theory that the risks from pipeline hedging and from MSR hedging are unrelated,

6    a theory they would continue to assert throughout the rest of the case.

7        41.    On January 10, 2007, Lead Plaintiffs filed their brief in opposition to Defendants'

8    appeal.  In that brief, Lead Plaintiffs demonstrated that they had adequately pleaded scienter,

9    arguing, *inter alia*, that Defendants' own detailed statements supported a strong inference of

10    scienter and that the Complaint's allegations about confidential witnesses further supported a

11    strong inference of scienter.  Lead Plaintiffs also argued that *Read-Rite* did not create a bright-

12    line rule rejecting any inferences from defendants' involvement in a company's core operations.

13    Finally, Lead Plaintiffs also replied to and rebutted Defendants' argument that pipeline hedging

14    and MSR hedging were unrelated.

15        42.    On March 12, 2007, Defendants filed their reply brief in support of their appeal.

16    In this brief, Defendants again argued that (1) the Court improperly relied on the core operations

17    inference and that the Ninth Circuit had rejected this inference in *Read-Rite*; and (2) the Court

18    had refused to find that any of Lead Plaintiffs' other allegations supported a strong inference of

19    scienter.  In discussing the core operations inference, Defendants discussed the fact that the

20    United States Supreme Court had just granted certiorari in *Makor Issues & Rights, Ltd. v.*

21    *Tellabs, Inc.*, 437 F.3d 588 (7th Cir. 2006), *cert. granted*, 549 U.S. 1105 (2007), to consider

22    "[w]hether, and to what extent, a court must consider or weigh competing inferences in

23    determining whether a complaint asserting a claim of securities fraud has alleged facts sufficient

24    to establish a 'strong inference' that the defendants acted with scienter, as required under the

25    [PSLRA]."  Defendants also cited from the United States Solicitor General's *amicus curie* brief

26    in the *Tellabs* Supreme Court appeal arguing that a plaintiff would need to plead with

27    particularity facts that give rise to a "high likelihood" that a defendant acted with scienter.

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

43.     On June 21, 2007, the United States Supreme Court issued a ruling in *Tellabs*, holding that:

> To determine whether the plaintiff has alleged facts that give rise to the requisite "strong inference" of scienter, a court must consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff.   The inference that the defendant acted with scienter need not be irrefutable, *i.e.*, of the "smoking-gun" genre, or even the "most plausible of competing inferences[]".   Recall in this regard that § 21D(b)'s pleading requirements are but one constraint among many the PSLRA installed to screen out frivolous suits, while allowing meritorious actions to move forward. … Yet the inference of scienter must be more than merely "reasonable" or "permissible"—it must be cogent and compelling, thus strong in light of other explanations.   A complaint will survive, we hold, only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.

*Tellabs v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323-24 (2007) (internal citations omitted).[4]

44.     On July 12, 2007, Defendants sent a letter to the Ninth Circuit pursuant to Fed. R. App. P. 28(j) and Circuit Court Rule 28-6 advising it of the Supreme Court's decision in *Tellabs*. Defendants cited the holding in *Tellabs* that an inference of scienter must be cogent and compelling and that a court must "take into account plausible opposing inferences."   Defendants argued that *Tellabs* bolstered their argument and supported the Ninth Circuit's holding in *Read-Rite*.

45.     On April 7, 2008, Lead Plaintiffs sent a letter to the Ninth Circuit pursuant to Fed. R. App. P. 28(j) and Circuit Court Rule 28-6 advising it of the Seventh Circuit's opinion on remand from the Supreme Court, *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 513 F.3d 702 (7th Cir. 2008).   Lead Plaintiffs informed the Ninth Circuit that the Seventh Circuit had found a strong inference of scienter based upon the importance of the products at issue, the senior

---

[4]     In *Tellabs*, the plaintiff was represented by Milberg LLP, one of the Lead Counsel in this Action.   Professor Arthur R. Miller, who argued for Lead Plaintiffs before the Ninth Circuit in this Action, argued for the plaintiff in *Tellabs* before the Supreme Court.

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

1   position of the individual defendant, and the multiple statements he made regarding those

2   products, and analogized the Seventh Circuit's analysis to this Court's analysis in its opinion

3   denying the motion to dismiss.

4        46.    On April 8, 2008, the Ninth Circuit heard oral argument on the appeal from the

5   Court's denial of the motion to dismiss.  The argument primarily focused on how the adequacy

6   of Lead Plaintiffs' core operations allegations, in conjunction with their other allegations, were

7   effected by the Supreme Court's *Tellabs* decision.  Professor Arthur R. Miller argued for Lead

8   Plaintiffs.

9        47.    On June 10, 2008, Defendants sent a letter to the Ninth Circuit pursuant to Fed. R.

10   App. P. 28(j) and Circuit Court Rule 28-6 to advise it of a recent decision by that court in *Berson*

11   *v. Applied Signal Technology*, 527 F.3d 982 (9th Cir. 2008).  Defendants wrote, *inter alia*, that

12   the decision in *Applied Signal* supported their position because it held that a plaintiff "may not

13   argue, based only on defendants' prominent positions in the company, that they ought to have

14   known better." *Id.* at 989.  Defendants also argued that *Applied Signal* reaffirmed *Read Rite*.

15        48.    On June 23, 2008, Lead Plaintiffs responded to Defendants' letter, arguing that

16   *Applied Signal* provided "compelling support for Plaintiffs' argument that they have properly

17   pled scienter in their Complaint."  Specifically, Lead Plaintiffs pointed out that, in holding that

18   scienter was properly pled, the Ninth Circuit found that "it was hard to believe" that the

19   defendant company's CEO and CFO did not know of certain vital company events because "they

20   were directly responsible for [the company's] day-to-day operations." *Id.* at 988.

21        49.    On June 30, 2008, Defendants sent a letter to the Ninth Circuit pursuant to Fed. R.

22   App. P. 28(j) and Circuit Court Rule 28-6 to advise it of a recent decision by the Second Circuit

23   in *Teamsters Local 445 Freight Division Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190 (2d

24   Cir. 2008).  Defendants argued that the court in *Dynex* "reiterated the need for plaintiffs to allege

25   the existence of contemporaneous documents or reports that were contrary to the public

26   statements at issue" in order to properly plead scienter under the PSLRA.  Defendants further

27   argued that the decision was consistent with the Ninth Circuit's decision in *Applied Signal*,

JOINT DECL. OF FELDMAN AND NARWOLD
Master File No. C04-1599 JCC

- 16 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

which contained allegations about the existence of specific documents, and that Lead Plaintiffs in the instant case had failed to allege the existence of any specific contemporaneous information that rendered Defendants' statements misleading when made, let alone allege any specific reports or documents known to WMI's management.

50.    On July 18, 2008, Lead Plaintiffs responded to Defendants' letter, arguing that Defendants misconstrued the Second Circuit's opinion in *Dynex*.  Lead Plaintiffs argued that the holding in *Dynex* stood for the proposition that *one* way to plead scienter is to allege that defendants had access to information suggesting their statements were inaccurate, and that when those allegations are based on the existence of confidential documents, the plaintiff must make particularized allegations about those documents.  However, the existence of contemporaneous documents or reports that are contrary to defendants' public statements is not a requirement for pleading scienter.  Lead Plaintiffs argued that such a requirement would allow wrongdoers to escape liability for securities fraud as long as they were careful never to document facts contrary to their public statements.

51.    On July 29, 2008, Defendants sent a letter to the Ninth Circuit pursuant to Fed. R. App. P. 28(j) and Circuit Court Rule 28-6 to advise it of a recent decision by that court in *Metzler Investment GMBH v. Corinthian Colleges, Inc.*, No. 06-55826, 2008 WL 2853402, 2008 U.S. App. LEXIS 15935 (9th Cir. July 25, 2008).  Defendants argued that this decision supported their position because it held that "corporate management's general awareness of the day-to-day workings of the company's business does not establish scienter."  2008 WL 2853402, at *13.

52.    On August 29, 2008, Lead Plaintiffs responded to Defendants' letter, arguing that Defendants continually misrepresented their allegations as asking the Court to draw a strong inference of scienter based solely on Defendants' management roles and the importance of hedging to WMI.  Moreover, Lead Plaintiffs argued that the facts of *Corinthian* were distinguishable from this case and that *Applied Signal* supported their scienter theory.

53.    On September 9, 2008, the Ninth Circuit issued a decision on the appeal, vacating the lower court's order "with regard to the PSLRA scienter requirement" and remanded back to

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

this Court for further proceedings consistent with *Tellabs* and its decision regarding this Action. *South Ferry LP #2 v. Killinger*, 542 F.3d 776 (9th Cir. 2008).  This ruling had a tremendous impact on pleading scienter in PSLRA cases in the Ninth Circuit.  For example, the Ninth Circuit stated that the *Tellabs* decision suggests that *Silicon Graphics*, *Vantive*, and *Read-Rite* (*id.* at 784) were too demanding, and held that core-inference allegations can be considered in a *Tellabs* analysis:

> [A]llegations regarding management's role in a company may be relevant and help to satisfy the PSLRA scienter requirement in three circumstances. First, the allegations may be used in any form along with other allegations that, when read together, raise an inference of scienter that is "cogent and compelling, thus strong in light of other explanations." *Tellabs*, 127 S.Ct. at 2510.  This view takes such allegations into account when evaluating all circumstances together. Second, such allegations may independently satisfy the PSLRA where they are particular and suggest that defendants had actual access to the disputed information, as in *Daou* and *Oracle*.  Finally, such allegations may conceivably satisfy the PSLRA standard in a more bare form, without accompanying particularized allegations, in rare circumstances where the nature of the relevant fact is of such prominence that it would be "absurd" to suggest that management was without knowledge of the matter. *See Applied Signal*, 527 F.3d at 988 (internal quotation marks omitted).

*Id.* at 785-86.  This decision's impact is clear as it has been cited over 80 times by the courts in the Ninth Circuit in the less than four years since it was issued.  The work on this appeal by Lead Plaintiffs and Lead Counsel helped to clarify pleading standards in these complex cases.

## H.    WMI Files For Bankruptcy

54.    On September 26, 2008, WMI filed a voluntary petition seeking bankruptcy protection under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware (the "WMI Bankruptcy Proceeding").   An immediate effect of WMI's bankruptcy filing was to stay all proceedings in this action as to WMI pursuant to 11 U.S.C. § 362(a)(1).  WMI filed a Notice of Bankruptcy with this Court on October 14, 2008.

55.    The WMI Bankruptcy Proceeding, aside from the impact of the automatic stay,

JOINT DECL. OF FELDMAN AND NARWOLD
Master File No. C04-1599 JCC

- 18 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

1   was another watershed event in the history of this case.  Lead Plaintiffs, through Lead Counsel,

2   engaged the services of bankruptcy counsel expert in the rights of investors and class action

3   claimants in a Chapter 11 context.  Lead Counsel monitored all aspects of the WMI Bankruptcy

4   Proceeding with a particular focus on issues that could have had an impact on the Class,

5   including issues relating to document availability and preservation, the availability and use of

6   directors' and officers' liability insurance, and the treatment of equity holders generally.  Myriad

7   pleadings were reviewed and relevant hearings attended in Wilmington, Delaware.

8        56.     On March 30, 2009, South Ferry, Metzler and Walden filed individual proofs of

9   claim against WMI in the Chapter 11 Cases (the "South Ferry Claim," the "Metzler Claim" and

10  the "Walden Claim").  Lead Plaintiffs also filed an additional claim on behalf of the putative

11  class (the "Class Claim" and, together with the Metzler Claim and the Walden Claim, the

12  "Bankruptcy Claims").  On March 19, 2010, the Debtors filed the Debtors' Thirtieth Omnibus

13  (Substantive) Objection to the Bankruptcy Claims (the "Thirtieth Omnibus Objection"), and

14  asserted that (i) the Class Claim should be disallowed because Lead Plaintiffs failed to seek

15  certification on behalf of the putative class pursuant to Rule 9014 of the Federal Rules of

16  Bankruptcy Procedure (the "Bankruptcy Rules"), and (ii) the South Ferry Claim and the

17  Bankruptcy Claims are subject to mandatory subordination pursuant to section 510(b) of the

18  Bankruptcy Code.  On May 17, 2010, Lead Plaintiffs, on their own behalf and on behalf of the

19  Class, and South Ferry on its own behalf, and the Debtors, agreed to a consensual resolution of

20  the Thirtieth Omnibus Objection (the "Claim Stipulation").  Pursuant to the Claim Stipulation,

21  the Lead Plaintiffs and South Ferry agreed to the subordination of the South Ferry Claim and the

22  Bankruptcy Claims consistent with section 510(b) of the Bankruptcy Code, and the Debtors

23  agreed to withdraw, without prejudice, the Thirtieth Omnibus Objection pursuant to the terms of

24  the Claim Stipulation.  By order dated May 19, 2010, the Bankruptcy Court approved the Claim

25  Stipulation and granted the Thirtieth Omnibus Objection, to the extent set forth in the Claim

26  Stipulation, thereby subordinating the South Ferry Claim and the Bankruptcy Claims, to the

27  extent allowed, consistent with section 510(b) of the Bankruptcy Code.

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

57.     Lead Counsel and bankruptcy counsel were also significantly involved in reviewing WMI's initial plan of reorganization (the "Plan") in the WMI Bankruptcy Proceeding. The most significant issue created by the proposed Plan was the effort by WMI to impose non-debtor releases on all creditors and interest holders, which would have effectively cut off the Class's claims against the Individual Defendants in the Action. Lead Plaintiffs filed extensive objections to confirmation of the Plan and ultimately negotiated specific language in the Plan carving out the claims in the Action from any releases or injunctions, and preserving the claims of Class members based on their status as holders of WMI securities. The ultimate confirmation of WMI's Plan by the Bankruptcy Court therefore had no impact on the Class's claims against the Individual Defendants.

I.      **Remand Proceedings Following the Ninth Circuit's Ruling**

58.     Following the remand of the case back to this Court and WMI's bankruptcy filing, the parties filed a stipulation on December 1, 2008, stating that in light of the bankruptcy filing and the appearance of new counsel for Defendant Killinger, and the necessity of the counsel for the Defendants Casey and Oppenheimer to make arrangements with WMI and its insurers for the defense of this Action, Individual Defendants requested that the Action be stayed and held in abeyance until January 15, 2009, when the parties would file a joint status report providing the parties' recommendations concerning further proceedings as a result of the Ninth Circuit's opinion. The Court entered an Order reflecting this stipulation on December 5, 2008. This Order also required Individual Defendants to file a report on January 5, 2009 describing the status of the WMI bankruptcy insofar as it impacted the representation of the parties in this Action.

59.     On January 5, 2009, Individual Defendants filed a report stating that "[o]n December 16, 2008, the bankruptcy court issued an order allowing the payment and/or advancement of covered defense costs by Individual Defendants' third party insurance companies." The Report also stated that "[a]s a result, the Individual Defendants presently believe that this litigation can proceed as this Court directs with respect to defendants other than

JOINT DECL. OF FELDMAN AND NARWOLD
Master File No. C04-1599 JCC

- 20 -

LAW OFFICES OF
**CLIFFORD A. CANTOR, P.C.**
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

1   Washington Mutual, Inc., notwithstanding the pendency of the Washington Mutual, Inc.

2   bankruptcy."

3       60.    On January 15, 2009, the parties submitted a Joint Status Report requesting the

4   opportunity to submit briefs addressing the Ninth Circuit's opinion, as well as several additional

5   relevant decisions recently issued by the Ninth Circuit and the United States Supreme Court.

6   The parties proposed that they submit simultaneous opening briefs 60 days after entry of an order

7   approving the filing of the proposed briefs, and simultaneous responsive briefs 45 days after the

8   opening briefs were filed.  On March 5, 2009, the Court entered an order reflecting the parties'

9   proposal for simultaneous opening and responsive briefs.

10      61.    On May 1, 2009, the parties submitted their simultaneous opening briefs on

11  remand.  Lead Plaintiffs argued that their scienter allegations were particularized, cogent and

12  compelling and that the Complaint satisfied all three ways that the Ninth Circuit held that core

13  operations allegations could be used to properly plead scienter.  Individual Defendants argued

14  that Lead Plaintiffs could not rely on the core operations theory to establish scienter based on the

15  facts pled in the Complaint.  Individual Defendants repeated their argument that pipeline hedging

16  and MSR hedging were unrelated and argued that Defendants' class period statements were not

17  false or misleading.

18      62.    On June 12, 2009, the parties submitted their simultaneous responsive briefs.

19  Lead Plaintiffs argued that Individual Defendants' primary argument attacked the Court's

20  previous conclusions concerning falsity, not scienter.   Lead Plaintiffs further argued that

21  Individual Defendants' arguments are premised on factual determinations inappropriate for

22  consideration on a motion to dismiss and that Individual Defendants' reliance on *Zucco Partners,*

23  *LLC v. Digimarc Corp.*, 552 F.3d 981 (9th Cir. 2009), was misplaced.  Finally, Lead Plaintiffs

24  again argued that they met all three core-operations tests set forth by the Ninth Circuit and that

25  Individual Defendants' arguments to the contrary must fail.  The Individual Defendants argued

26  that after *Tellabs*, core operations allegations will give rise to a strong inference of scienter only

27  in an "exceedingly rare category of cases."  The Individual Defendants again argued that the

JOINT DECL. OF FELDMAN AND NARWOLD
Master File No. C04-1599 JCC                              - 21 -                        LAW OFFICES OF
                                                                          CLIFFORD A. CANTOR, P.C.
                                                                               627 208th Ave. SE
                                                                           Sammamish, WA 98074-7033
                                                                    Tel: (425) 868-7813 ● Fax: (425) 732-3752

1   Complaint did not allege any false statements.  Finally, the Individual Defendants argued that the

2   Complaint did not meet any of the three ways that the Ninth Circuit held that core operations

3   allegations could be used to properly plead scienter.

4       63.   On October 1, 2009, the Court issued its order on Defendants' Motion to Dismiss

5   after considering the parties' supplemental briefing on remand.  The Court declined to revisit its

6   previous conclusions on falsity and again found that Lead Plaintiffs had adequately pled scienter

7   against Defendants Killinger, Casey, and Oppenheimer.  The Court again dismissed claims

8   against Longbrake, Vanasek, and Chapman.

9       **J.   Discovery Commences**

10      64.   On December 17, 2009, the parties filed a Joint Status Report which discussed

11  issues such as the nature and complexities of the case, class certification, ADR method,

12  discovery topics and recommendations for discovery efficiencies.  This report also set forth a

13  proposed schedule for the remainder of the Action, including fact discovery, expert discovery,

14  motion practice, and trial.  On December 22, 2009, the Court entered an order that (1) found the

15  parties' recommendations reasonable; and (2) adopted the schedule proposed by the parties.

16      65.   On January 20, 2010, the parties exchanged their Rule 26(a)(1) initial disclosures.

17  Following this exchange, Lead Plaintiffs began their effort to obtain meaningful discovery from

18  the Individual Defendants and non-parties.  Lead Plaintiffs served document requests on all three

19  Individual Defendants.  Lead Plaintiffs were faced with the challenge of obtaining documents

20  relevant to the litigation from the corporate defendant, WMI, against whom all proceedings were

21  stayed as a result of their bankruptcy filing.  However, JPMorgan Chase & Co. ("JPMC")

22  acquired WMI's banking operations in September 2008, in an acquisition that was facilitated by

23  the Federal Deposit Insurance Corporation (the "FDIC").  Through this acquisition, JPMC came

24  into possession of WMI's documents that were relevant to this case.  As a result, Lead Plaintiffs

25  served a subpoena on JPMC requesting numerous categories of documents.  Lead Counsel held

26  numerous discussions with counsel for JMPC to (1) negotiate disagreements over the scope of

27  these requests; (2) negotiate the search terms JMPC would use to search for responsive electronic

JOINT DECL. OF FELDMAN AND NARWOLD
Master File No. C04-1599 JCC    - 22 -    LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

1    documents; and (3) negotiate the parameters for searching for responsive hard-copy documents.

2          66.     Lead Plaintiffs also served subpoenas on numerous other non-parties, including

3    Accenture, Bank of America, Fidelity National Services, Inc., BlackRock, Inc., Quantitative Risk

4    Management, Inc., Mellon Investor Services, Deloitte LLP, the FDIC, Fitch, Inc., Macquarie

5    Group, Citigroup, Inc., Jeffries Group, Inc., Zacks Investment Research, AllianceBernstein LP,

6    Prudential Financial, Inc., U.S. Bancorp, Moors & Cabot, Inc., Government of Singapore

7    Investment Corporation Pte Ltd., Barclays Capital Inc, and former defendants Longbrake and

8    Chapman.   In response to Lead Plaintiffs' document requests and subpoenas, approximately

9    700,000 documents were produced.   The production of these documents was the result of a

10   tremendous amount of work on the part of Lead Counsel.   Lead Counsel held numerous meet

11   and confer discussions with the Individual Defendants and non-parties, especially JPMC (as

12   discussed above), to negotiate the requests and the responses and objections of the Individual

13   Defendants and non-parties.   Despite the discovery disagreements between Lead Plaintiffs and

14   both the Individual Defendants and other non-parties, Lead Counsel was adept in working with

15   opposing counsel and counsel for the non-parties in order to work through these disagreements.

16   Importantly, no discovery dispute was ever brought to the Court for judicial review.

17         67.     Lead Counsel reviewed hundreds of boxes of hard-copy documents that were

18   made available for inspection by JPMC in order to identify documents that were relevant to the

19   parties' claims.   Lead Counsel also continued to negotiate with JPMC for the production of

20   documents that were maintained in electronic format, and at the time the Settlement was reached,

21   Lead Plaintiffs expected to receive significant additional document production from JPMC.

22   Lead Counsel were in the process of analyzing the hundreds of thousands of documents that

23   were obtained from JPMC, as well as other documents produced in discovery by Individual

24   Defendants and non-parties, when the parties agreed to settle the Action.

25         68.     Individual Defendants served their own discovery requests as well.   On February

26   26, 2010, Defendant Killinger served his first request for production of documents and first set of

27   interrogatories on Lead Plaintiffs.   Defendant Killinger served his second set of interrogatories

JOINT DECL. OF FELDMAN AND NARWOLD
Master File No. C04-1599 JCC

- 23 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

1    on October 18, 2010.  The Individual Defendants also served Rule 30(b)(6) deposition notices on

2    both Lead Plaintiffs.  Lead Counsel and counsel for the Individual Defendants engaged in

3    extensive negotiations over these discovery requests.  These issues included, *inter alia*, (1) the

4    applicable time period for requests dealing with Lead Plaintiffs' trading history in WMI

5    securities and litigation history; (2) the production of Lead Plaintiffs' non-WMI trading records;

6    (3) the identification of the confidential witnesses in the Complaint; (4) the production of Lead

7    Plaintiffs' investment policies and procedures; (5) Lead Plaintiffs providing the Individual

8    Defendants with the aggregate value of their holdings; (6) production of a complete and full list

9    of Lead Plaintiffs' investment advisors and (7) the designated topics for examination in the Rule

10   30(b)(6) deposition notices.

11             **K.**     **Lead Plaintiffs' Motion for Class Certification**

12             69.     On March 22, 2010, Lead Plaintiffs filed a motion for class certification under

13   Rule 23.  Lead Plaintiffs argued that all of the requirements of Rules 23(a) and 23(b)(3) were

14   met.  With respect to meeting the requirement in Rule 23(b)(3) that common questions of law

15   and fact predominate over any individualized issues, Lead Plaintiffs submitted and relied upon

16   an expert report by Professor Steven P. Feinstein on market efficiency, which supported Lead

17   Plaintiffs' assertion that because the market for WMI common stock was efficient during the

18   Class Period, all Class members were entitled to a presumption of reliance on Defendants'

19   allegedly false and misleading statements.

20             70.     Following the filing of the motion for class certification, counsel for Individual

21   Defendants deposed representatives of both Lead Plaintiffs as part of their effort to oppose that

22   motion.  Lead Counsel prepared both witnesses and defended them at the depositions.

23             71.     On June 22, 2010, Individual Defendants filed their opposition to Lead Plaintiffs'

24   motion for class certification.  Individual Defendants argued that the Class Period should be

25   shortened to September 9, 2003 because problems that impacted pipeline hedging were disclosed

26   on that date, and any problems related to MSR hedging were unrelated to the pipeline hedging

27   problems.  Along those lines, Individual Defendants also argued that Lead Plaintiffs did not

JOINT DECL. OF FELDMAN AND NARWOLD
Master File No. C04-1599 JCC                              - 24 -

LAW OFFICES OF
**CLIFFORD A. CANTOR, P.C.**
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

1   demonstrate that common issues predominated because the pipeline hedging problems and MSR

2   hedging problems were two distinct, unrelated events.  The Individual Defendants finally argued

3   that (1) Metzler could not satisfy the typicality and adequacy requirements of Rule 23(a) because

4   it lacked Article III standing; and (2) Walden could not satisfy the adequacy requirement of Rule

5   23(a) because it was not a member of the Class (if the Court accepted the Individual Defendants'

6   proposed shorter class period), had failed to perform the tasks required of a lead plaintiff, and

7   lacked the character of a fiduciary.

8           72.     On August 23, 2010, Lead Plaintiffs filed their Reply in Support of Their Motion

9   for Class Certification.  Lead Plaintiffs' brief advanced their theory that the Complaint alleged

10  one overarching course of conduct.  In that regard, Lead Plaintiffs argued that the Class Period

11  should be sustained by the Court, and that Individual Defendants' predominance and reliance

12  arguments had failed.  Lead Plaintiffs also argued that Metzler and Walden were adequate and

13  typical class representatives.

14          73.     On August 27, 2010, Individual Defendants filed a notice of intent to file a

15  surreply seeking to strike certain documents that Lead Plaintiffs filed in support of Metzler's

16  adequacy and typicality.  On September 1, 2010, the Court ordered Lead Plaintiffs to file a

17  response to the surreply.  Lead Plaintiffs filed their response on September 7, 2010.

18      **L.      The Parties Enter Into Mediation**

19          74.     While the parties were briefing Lead Plaintiffs' class certification motion, they

20  explored mediation in an effort to resolve the case.  The parties retained David Geronemus, Esq.

21  of JAMS to act as the mediator.  Prior to the mediation, the parties sent mediation briefs to Mr.

22  Geronemus.  The first mediation session took place on November 16, 2010.  Although this

23  mediation session did not conclude with a settlement agreement, it created great progress

24  towards that goal and set the stage for a later second mediation session.

25          75.     On January 6, 2011, the Court granted Lead Plaintiffs' motion for class

26  certification.  *See South Ferry LP #2 v. Killinger*, 271 F.R.D. 653 (W.D. Wash. 2011).  The

27  Court appointed Walden as class representative, but denied certification of Metzler as a class

JOINT DECL. OF FELDMAN AND NARWOLD
Master File No. C04-1599 JCC

LAW OFFICES OF
**CLIFFORD A. CANTOR, P.C.**
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

1   representative, because the Court held that it was unclear whether the assignments made to

2   Metzler, as an investment advisor, were valid, therefore making Metzler's standing uncertain,

3   rendering it atypical of the Class.  The Court refused to shorten the Class Period and was not

4   persuaded by Individual Defendants' "late attempt to bifurcate the complaint into two separate

5   causes of action."

6         76.      Just six days later, on January 12, 2011, the parties met for a second mediation

7   session with Mr. Geronemus.  At the conclusion of this session, the parties in principle agreed to

8   settle the Action for $41.5 million.

9         77.      On February 8, 2011, the Debtors filed the Modified Sixth Amended Joint Plan of

10  Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code (as it has been

11  and as it may be furthered modified, the "Modified Plan").

12        78.      On May 13, 2011, Lead Plaintiffs, on behalf of themselves and the Class, filed an

13  objection to confirmation of the Modified Plan (the "Lead Plaintiffs' Objection").

14        **M.      Preliminary Approval of the Settlement and Mailing and Publication of the**

15        **Notice**

16        79.      After reaching an agreement-in-principle to settle the Action for $41.5 million,

17  Lead Counsel prepared an initial draft of the Settlement Agreement and its exhibits, including a

18  proposed preliminary approval order, notice of pendency to the Class, summary notice for

19  publication, a Proof of Claim form, and a proposed final judgment.  Extensive negotiation

20  between and among the parties and Defendants' insurance carriers resulted in many changes and

21  re-drafts of these documents.  This process took nearly nine months due to complicated issues

22  that arose from WMI's bankruptcy, and also due to the fact that counsel for the Individual

23  Defendants, WMI, Lead Plaintiffs (including counsel advising Lead Plaintiffs on bankruptcy

24  issues), and insurance carriers had the opportunity to comment on each draft.  The issues that

25  arose from WMI's bankruptcy that the parties had to negotiate included the treatment of certain

26  bankruptcy claims filed in connection with this action, language concerning released claims, and

27  the ability of the Lead Plaintiffs, Individual Defendants and contributing carriers to approve the

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

1 eventual motion to the Bankruptcy Court to approve the Settlement.  Following the resolution of

2 all of these issues, the Settlement Agreement was finalized and signed by the parties on October

3 5, 2011.

4    80.  That same day, Lead Plaintiffs filed their Unopposed Motion for Preliminary

5 Approval of Class Action Settlement and Approval of the Settlement Notice seeking entry of an

6 Order: (1) preliminarily approving the settlement of the Action, as memorialized in the

7 Settlement Agreement, which was attached as an exhibit; (2) approving the form of the Notice of

8 Pendency of Class Action and Proposed Settlement, Motion For Attorneys' Fees, and Settlement

9 Fairness Hearing (the "Settlement Notice") and the Proof of Claim form, which were attached to

10 the Settlement Agreement; (3) approving the form of the Summary Notice of Pendency of Class

11 Action, Proposed Settlement, and Settlement Hearing (the "Publication Notice"), which was

12 attached to the Settlement Agreement; and (4) scheduling a hearing to determine whether the

13 Settlement should be given final approval and to establish dates for submission of proofs of

14 claim, dissemination of the Notices, and other relevant deadlines.

15    81.  On December 2, 2011, the Court entered the Preliminary Order for Notice and

16 Hearing in Connection with Settlement Proceedings (the "Preliminary Approval Order") and

17 directed Lead Counsel to cause the mailing of the Settlement Notice and the Proof of Claim form

18 to all potential Class members who could be identified with reasonable effort.  The Preliminary

19 Approval Order appointed the firm of Rust Consulting, Inc. as the Claims Administrator, with

20 responsibility for supervising and administering the notice and claim procedure.    The

21 Preliminary Approval Order also directed Lead Counsel to cause the Publication Notice to be

22 published in the global edition of *The Wall Street Journal* and to be transmitted over the Global

23 Media Circuit of *Business Wire*.

24    82.  Submitted as Exhibits A and B hereto, respectively, are (a) the Affidavit of Eric J.

25 Miller of Rust Consulting, which attests to the mailing of the Settlement Notice and Proof of

26 Claim form; and (b) the Affidavit of Paul J. Andrejkovics Re: Publication of the Summary

27 Notice of Proposed Settlement of Class Action and Settlement Hearing, which attests that the

JOINT DECL. OF FELDMAN AND NARWOLD
Master File No. C04-1599 JCC

- 27 -

LAW OFFICES OF
**CLIFFORD A. CANTOR, P.C.**
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

1 Publication Notice was published in the global edition of *The Wall Street Journal* and

2 transmitted over the Global Media Circuit of *Business Wire* on February 24, 2012.

3       83.    The Settlement Notice and Proof of Claim form (together, the "Claim Packet")

4 were sent to more than 446,000 potential Class members, beginning with an initial mailing on

5 February 17, 2012. *See* Miller Affidavit ¶ 10. On February 24, 2012, the Publication Notice was

6 published in the global edition of *The Wall Street Journal* and transmitted over the Global Media

7 Circuit of the *Business Wire* on February 24, 2012. *See* Andrejkovics Affidavit ¶ 1. The

8 Settlement Notice, Publication Notice and Proof of Claim Form were also placed on the Claims

9 Administrator's website on or before February 17, 2012. *See* Miller Affidavit ¶ 12.

10       84.    Subsequent to the mailing of the Claim Packet on February 17, 2012, the Claims

11 Administrator identified a typographical error in the Proof of Claim form. Specifically, in

12 Section C, page 2 of 4 of the Proof of Claim, the relevant sales period for WMI common stock

13 was misstated as starting on April 15, 3003, not April 15, 2003. The Claims Administrator has

14 re-mailed all Claim Packets with the correct 2003 starting date for the sales period. The re-

15 mailing of the corrected Claim Packets was done solely at the Claims Administrator's expense

16 and the Settlement Fund was not charged for this re-mailing. All remaining Claim Packets with

17 the typographical error have been destroyed. *See* Miller Affidavit ¶ 7.

18       85.    The Settlement Notice, which was in the form approved by the Court, notified

19 Class members of the terms of the Settlement, the Plan of Allocation of the Settlement proceeds,

20 and that Lead Counsel would apply for an award of attorneys' fees not to exceed one-third

21 (33⅓%) of the Gross Settlement Fund and for reimbursement of their expenses in the

22 approximate amount of $1,000,000.

23       86.    The Settlement Notice also informed Class members of their right to object to the

24 Settlement, the Plan of Allocation, or the application for attorneys' fees and expenses, and

25 provided that any objection to the Settlement, the Plan of Allocation or the application for

26 attorneys' fees and expenses has to be filed by May 4, 2012. Although that date has not yet

27 passed, as of the date of this Declaration, no objections have been filed (or otherwise received by

JOINT DECL. OF FELDMAN AND NARWOLD
Master File No. C04-1599 JCC
- 28 -
LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

1  Lead Counsel) to the Settlement, the Plan of Allocation, or to Lead Counsel's application for

2  attorneys' fees and expenses.

3      87.    On March 8, 2012, the Clerk of the Court filed a letter from Patrick Daly and

4  Jeannie Daly, dated March 2, 2012, which states (in full):  "Any monies due from settlements

5  should be given to all stockholders except those on the board of directors of Dime or Washington

6  Mutual Bank who helped put the company into bankruptcy."  Dkt. No. 264.  The letter does not

7  state that it is an objection to the Settlement, the Plan of Allocation, or counsel's fee and expense

8  request, and the purpose of the letter itself is unclear.  Lead Counsel note that the Individual

9  Defendants, as well as all other officers and directors of WMI during the Class Period, are

10  already specifically excluded from the certified Class in this Action, and as a result, will not

11  receive any distributions from the Settlement funds.

12      88.    On March 19, 2012,  the Clerk of the Court filed a letter from Ray V. Martinson

13  and Karyl J. Martinson, dated March 15, 2012, which states (in relevant part):  "We respectfully

14  ask that the Judge consider stockholders who held shares prior to April of 2003 and held those

15  same shares after June 2004.  As you can see by the copy of the claim we attached to this

16  request, we originally purchased shares in 1996.  There were stock splits just prior to the window

17  indicated in this action, and then for years we had 'dividend re-invest' rather than taking cash

18  dividends which accumulated more shares."  Dkt. No. 265.  The letter does not state that it is an

19  objection to the Settlement, the Plan of Allocation, or counsel's fee and expense request.  To the

20  extent that this letter seeks modification of the proposed Plan of Allocation to provide

21  compensation for purchases of WMI common stock that occurred before the start of the Class

22  Period, Lead Counsel note that such a plan of allocation would be improper because it would

23  provide compensation for purchases of WMI that were made when the market price of WMI

24  common stock was not artificially inflated by the allegedly false and misleading statements

25  which form the basis of this lawsuit.  Lead Counsel further note that to the extent that the

26  Martinsons purchased WMI common stock during the Class Period through a dividend

27  reinvestment program, they may be entitled to receive a distribution under the proposed Plan of

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

1   Allocation for those purchases (depending on the date those shares were sold).

2   89.     In addition, the Settlement Notice informed Class members of their right to

3   request to be excluded from the Class, and provided that any requests for exclusion must be

4   mailed to the Claims Administrator and postmarked no later than May 4, 2012.  To date, the

5   Claims Administrator has received 26 requests for exclusion.  *See* Miller Affidavit ¶ 13.

6   **N.     Bankruptcy Court Approval of the Settlement**

7   90.     In light of the pendency of the WMI Bankruptcy Proceeding, WMI's status as a

8   party to the Settlement Agreement, the filing of certain proofs of claim by Lead Plaintiffs in the

9   Chapter 11 Cases, and the fact that insurance proceeds are being used to fund the Settlement, the

10  parties agreed that if this Court entered the Order for Preliminary Approval, within ten (10)

11  business days after such entry, WMI would file a motion with the Bankruptcy Court for an order

12  authorizing, *inter alia*, WMI to enter into the Settlement and, to the extent necessary, the

13  payment of the Cash Settlement Amount from the Policies.

14  91.     WMI filed this motion on December 5, 2011.  There were no challenges thereto.

15  The Bankruptcy Court granted the motion on January 4, 2012 and issued an order that, *inter alia*,

16  (1) found that the Settlement and Settlement Agreement are fair and reasonable as to WMI; (2)

17  authorized WMI and WMI Investment Corp. as debtors and debtors in possession to take all

18  steps necessary to consummate the Settlement; (3) deemed the Bankruptcy Claims, upon the

19  effective date of the Settlement Agreement, withdrawn, in their entirety; and (4) modified the

20  automatic stay, extant pursuant to section 362(a) of the Bankruptcy Code, to the extent

21  applicable, to permit, and the Contributing Carriers are authorized, to the extent necessary, to pay

22  the Cash Settlement Amount from the Policies.

23  **IV.     THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE**

24  92.     In deciding whether to approve a proposed settlement of a class action under Rule

25  23(e), a court must first assess whether the proposed settlement is "fair, adequate, and

26  reasonable."  Settlement Motion at 4.  In the Ninth Circuit, when evaluating the fairness of a

27  class action settlement, courts are instructed to consider the following factors:

[T]he strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; . . . and the reaction of the class members to the proposed settlement.

*See* Settlement Motion at 5.

A.     **The Strength of Lead Plaintiffs' Case, When Balanced Against the Risk, Expense, Complexity, and Likely Duration of Further Litigation, Supports Approval of the Settlement**

(1)     **Complexity of Proof of Liability and Damages**

93.     Based on the evidence adduced to date, Lead Plaintiffs believe that it would be possible to prove that, during the Class Period, Defendants made material misstatements and omissions about WMI's ability to hedge the Company's financial and market risk of its mortgage operations and that those misrepresentations caused the price of WMI securities to be artificially inflated.  Defendants, however, have adamantly denied any liability and have asserted from the outset of the Action that they possess defenses to Lead Plaintiffs' claims.

94.     Lead Plaintiffs' claims survived two motions to dismiss and an interlocutory appeal on the issues of scienter, loss causation, and the appropriate PSLRA pleading standards. However, there were months remaining in discovery at the time the Settlement was reached, as well as the risks associated with expert discovery and dispositive motions.  If the case went to trial, there is no guarantee of a verdict in favor of the Lead Plaintiffs and the Class and, even if a jury verdict were won, there would be no guarantee that the judgment would survive an appeal or that the verdict would be for a greater amount than the proposed settlement.  A significant risk unique to the Action was that Individual Defendants would be unable to afford to pay a material judgment at the conclusion of the litigation.  This risk materialized several years into the Action when WMI declared bankruptcy in September 2008, leaving Individual Defendants and the insurance policies as the sole sources for payment of a Settlement.  Moreover, both of these assets continuously depleted as a result of this litigation as well as other litigations and

JOINT DECL. OF FELDMAN AND NARWOLD
Master File No. C04-1599 JCC

- 31 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

1    government investigations.

2          95.    Lead Plaintiffs faced considerable risks in establishing the essential elements of

3    their claims, both at the summary judgment stage and at trial.  One of the primary elements of a

4    claim under Section 10(b) that a plaintiff must prove is the falsity of the alleged misstatements.

5    However, in this case, Defendants have consistently argued that their public statements with

6    regard to WMI's hedging capabilities were not false or misleading when they were made, and

7    have consistently argued that WMI's losses on its mortgage loan portfolio during the Class

8    Period were the result of market forces outside their control.  Further, the hedging of mortgage

9    loan portfolios is a highly technical and complex subject, and there is a risk that a jury would not

10   understand Lead Plaintiffs' arguments concerning the falsity of Defendants' public statements

11   about WMI's hedging operations.  Although Lead Plaintiffs believe that they would be able to

12   establish the element of falsity at summary judgment and at trial, there remained a substantial

13   risk that a jury would find favor with Defendants' arguments.

14         96.    Lead Plaintiffs also faced considerable risk in proving that Defendants acted with

15   scienter, which is an essential element of a claim under Section 10(b).  The element of scienter is

16   inherently difficult to prove because it often turns, in large part, on the subjective beliefs and

17   internal thought processes of the defendants, which are difficult to ascertain through direct

18   evidence.  Defendants have argued throughout this litigation that the Complaint sets forth

19   allegations of mere mismanagement (at most), rather than intentional or knowing fraud.

20   Although Lead Plaintiffs believe that they would ultimately be able to establish Defendants'

21   scienter, there remained a considerable risk that a jury would accept Defendants' arguments that

22   they honestly believed that their public statements concerning WMI's hedging capabilities were

23   true and correct at the time they made those statements.  Moreover, because hedging is a highly

24   subjective process which involves the exercise of judgment on the part of management, there

25   was a large risk that a jury would accept that any hedging errors made by WMI were the result of

26   judgment calls that were made by Defendants in good faith and without any fraudulent intent.

27         97.    Further, Lead Plaintiffs faced significant risks in establishing the elements of loss

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

1   causation and damages.  The determination of loss causation and damages is a complicated

2   process and expert testimony is almost always necessary to establish the existence and amount of

3   actual damages.  The damage assessments of the parties' respective experts would no doubt be

4   polar opposites.  To the extent Defendants could prevail on issues relating to liability or show

5   that any assumption made by Lead Plaintiffs' experts were inappropriate or show that any

6   portion of the market drop resulted from factors other than those alleged in the Complaint, Lead

7   Plaintiffs' claimed damages could be significantly reduced or none at all.  Proving loss causation

8   was made even more difficult because during the pendency of this Action the Supreme Court

9   ruled that a plaintiff asserting a claim of securities fraud must prove that the defendant's

10  misrepresentation or other fraudulent conduct proximately caused the plaintiff's economic loss.

11  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005).  In that decision, the Supreme Court

12  expressly overturned the Ninth Circuit's prior interpretation of the loss causation requirement,

13  holding that the Ninth Circuit's prior interpretation improperly failed to require plaintiffs to

14  demonstrate a proximate causal connection between the allegedly false statements and the

15  plaintiffs' economic loss.  Thus, proof of loss causation under *Dura* became a novel and

16  extremely difficult issue, and posed considerable risks to Lead Plaintiffs' claims.

17          98.     Proof of damages also would have posed significant risks to Lead Plaintiffs at

18  trial.  Lead Plaintiffs would have likely faced a motion *in limine* by Defendants to exclude Lead

19  Plaintiffs' damage experts' testimony under the *Daubert* test and risked a decision that its

20  valuation model might not be admissible.  Even if such evidence were admitted, the reaction of a

21  jury to battling expert testimony is unpredictable and could have resulted in no damages or only

22  a fraction of the amount of damages Lead Plaintiffs sought.

23          99.     The Settlement is a good result when weighed against these risks of continuing to

24  litigate.  Very difficult issues concerning both liability and damages remained unresolved in the

25  Action.  As discussed above, Defendants continued to argue, among other things, that:  Lead

26  Plaintiffs would not be able to establish that Defendants made false statements with respect to

27  pipeline and MSR hedging, Lead Plaintiffs would not be able to connect the MSR hedging loss

JOINT DECL. OF FELDMAN AND NARWOLD
Master File No. C04-1599 JCC

- 33 -

LAW OFFICES OF
**CLIFFORD A. CANTOR, P.C.**
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

1    to any prior statements, Lead Plaintiffs would not be able to prove scienter, and the appropriate

2    class period should be shorter than the one certified, which would ultimately result in decreased

3    damages if any were found.  A jury might find favor with such arguments.  Moreover, in order to

4    prove their allegations, Lead Plaintiffs would have to rely on testimony from former WMI

5    employees and customers about matters that occurred more than seven years ago.  The duration

6    of this litigation posed a major risk that witnesses' memories would fade.  Additionally, none of

7    the confidential witnesses were able to speak about the personal knowledge of any of the

8    Individual Defendants about WMI's hedging problems.  In sum, Lead Plaintiffs would have

9    faced considerable risks in proving their claims had the Settlement not been reached.

10                    **(2)    Expense and Duration of Further Litigation**

11          100.    Here, Individual Defendants have demonstrated a commitment to defend this case

12   through and beyond trial, if necessary, and are represented by well-respected and highly capable

13   counsel.  If not for this Settlement, the case would have continued to be fiercely contested by all

14   parties, and the expense and time of continuing litigation would have been substantial.  Indeed,

15   as set forth herein, the WMI Bankruptcy Proceeding and the claims asserted therein added a

16   significant additional complication to the litigation.

17          101.    Lead Plaintiffs' claims would require additional document discovery and review,

18   numerous depositions, and extensive expert discovery and testimony.  Although Lead Counsel

19   had already read and analyzed a substantial portion of the documents they had obtained in

20   discovery at the time the Settlement was reached, Lead Counsel continued to press for and

21   expected to receive additional document productions from JPMC and other non-parties; the

22   Settlement, if approved, avoids the time and expense that would be necessary in order to process

23   and analyze those additional document productions.  Further, because mortgage loan hedging is a

24   complex subject, Lead Plaintiffs would likely have retained a number of experts to provide

25   testimony on various aspects of the hedging process, which would have resulted in considerable

26   expense to the Class.

27          102.    After completion of fact and expert discovery, Individual Defendants' expected

JOINT DECL. OF FELDMAN AND NARWOLD
Master File No. C04-1599 JCC

- 34 -

1    motion for summary judgment would have to be briefed and argued, a pre-trial order would have

2    to be prepared, proposed jury instructions would have to be submitted, and motions *in limine*,

3    including *Daubert* motions, would have to be filed and argued.  Substantial time and expense

4    would be expended in preparing the case for trial.  The trial itself would be long, expensive, and

5    uncertain, and no matter the outcome, further appeals would be virtually assured.

6        103.    Even if Lead Plaintiffs prevailed and obtained a substantial judgment after trial,

7    there is little doubt that Individual Defendants would appeal.  The appeals process would likely

8    span several years, during which the Class would receive no distribution from any damage

9    award.  In addition, an appeal from any verdict would carry the risk of reversal, in which case the

10   Class would receive no recovery even after having prevailed on the claims at trial.  Finally, even

11   with a judgment in hand, collectability might be a significant problem due to the ongoing

12   bankruptcy proceedings.  This would add considerably to the expense and duration of the Action.

13       104.    At this juncture, the $41,500,000 Settlement results in an immediate and

14   substantial tangible recovery, without the considerable risk, expense and delay of continued

15   discovery, summary judgment motions, and trial and post-trial litigation.

16   **B.    Lead Plaintiffs Have Engaged in Sufficient Formal and Informal Discovery
17          and Have Conducted a Thorough Investigation to Identify the Strengths and
18          Weaknesses of Their Case and the Propriety of Settlement**

19       105.    As detailed herein, Lead Plaintiffs engaged in a large amount of formal and

20   informal discovery.  While preparing the Complaint, Lead Counsel reviewed and analyzed

21   publicly available information regarding WMI, including the Company's SEC filings, financial

22   statements, press releases, conference call transcripts, analysts' reports, notes prepared by

23   securities firms, and public notices concerning WMI.  Lead Counsel also interviewed numerous

24   former employees of WMI with first-hand knowledge of the events that led to this Action.

25       106.    With regard to the Complaint, Defendants' motion to dismiss, the appeal to the

26   Ninth Circuit, and Lead Plaintiffs' motion for class certification, Lead Counsel conducted in-

27   depth research into the law pertinent to the claims and defenses asserted.  Lead Counsel also

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

1  analyzed the damages in this Action and consulted with economic experts regarding the

2  calculation of damages, loss causation, materiality, and movements in the price of WMI stock.

3       107.   As discussed above, approximately 700,000 documents were produced in

4  response to Lead Plaintiffs' document requests and subpoenas.   Lead Counsel were in the

5  process of analyzing those documents when the parties reached their agreement to settle the

6  Action.   Moreover, the parties prepared for and participated in extensive settlement negotiations,

7  including mediation, where the strengths and weaknesses of the parties' respective claims and

8  defenses were fully explored.

9       108.   Thus, at the time of Settlement, Lead Counsel had a full understanding of the

10  strengths and weaknesses of the Lead Plaintiffs' claims, as well as the difficulties they would

11  have faced in obtaining a more favorable result after continued litigation.   This factor supports

12  approval of the Settlement.

13      **C.   The Recommendations of Experienced Counsel after Extensive Litigation

14         and Arm's-Length Settlement Negotiations Favor Approval of the Settlement**

15       109.   Lead Counsel, having carefully considered and evaluated, *inter alia*, the relevant

16  legal authorities and evidence to support the claims asserted against Individual Defendants; the

17  likelihood of prevailing on these claims; the risk, expense, and duration of continued litigation;

18  and the likely appeals and subsequent proceedings necessary if Lead Plaintiffs did prevail against

19  Individual Defendants at trial, have concluded that the Settlement is a highly favorable result for

20  the Class.   Moreover, the Settlement is the product of serious, informed, non-collusive

21  negotiations after some seven years of litigation.   Therefore, significant weight should be

22  attributed to the belief of experienced counsel that the Settlement is in the best interest of the

23  Class.

24      **D.   The Risks of Maintaining the Class Action Through Trial Do Not Weigh For

25         Or Against the Settlement**

26       110.   The Court conducted a thorough and reasoned analysis and certified the Class on

27  January 6, 2011.   Under Rule 23, a court may exercise its discretion to re-evaluate the

JOINT DECL. OF FELDMAN AND NARWOLD
Master File No. C04-1599 JCC

- 36 -

LAW OFFICES OF
**CLIFFORD A. CANTOR, P.C.**
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

1    appropriateness of class certification at any time.  However, nothing has changed since the

2    Court's certification that would undermine its decision to certify the Class.  Accordingly, the risk

3    of failing to maintain a class through trial is, at best, neutral, and weighs neither in favor nor

4    against the Settlement.

5    **E.      The Reaction of the Class Members to the Proposed Settlement Supports the
         Settlement**

6

7         111.    The small number of requests for exclusion from the Class, and the complete

8    absence of objections to the Settlement, strongly support final approval.  The deadline for

9    objecting is May 4, 2012, and despite the fact that that the Settlement Notice was sent to over

10   446,000 potential Class members (*see supra* ¶ 83), to date not a single Class Member has

11   objected to any aspect of the Settlement or the Plan of Allocation.

12        112.    Similarly, the deadline for requesting exclusion from the Class is May 4, 2012,

13   and only 26 potential Class members have requested exclusion from the Class.  *See supra* ¶ 89.

14        113.    The reaction of the Class is overwhelmingly favorable and supports final

15   approval.

16   **V.     THE PLAN OF ALLOCATION IS FAIR AND REASONABLE**

17        114.    The Plan of Allocation here reflects the allegations in the Complaint that the price

18   of WMI stock was artificially inflated throughout the Class Period because of certain fraudulent

19   misrepresentations and that the artificial inflation was eliminated by a series of corrective

20   disclosures.  The Plan of Allocation was developed by Lead Counsel based on the analysis of

21   their damages experts, and calculates each Class member's total recognized losses and allocates

22   recovery based on the timing of each Class member's purchases and sales relative to the alleged

23   corrective disclosures.  Each Class member who submits a valid Proof of Claim form will

24   receive his or her *pro rata* share of the funds based on the calculation of recognized losses.  This

25   type of allocation plan is a reasonable approach.

26

27

JOINT DECL. OF FELDMAN AND NARWOLD
Master File No. C04-1599 JCC

- 37 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

## VI.    PLAINTIFFS' COUNSEL'S REQUESTED FEE AND EXPENSE AWARD IS FAIR AND REASONABLE

115.    The substantial recovery, $41.5 million in cash (plus accrued interest), obtained for the benefit of the Class, was achieved through the skill, work, dedication and effective advocacy of Lead Counsel and other Plaintiffs' counsel.  As payment for services rendered in achieving such a great result, Lead Counsel seek an award of attorneys' fees of 29% of the Settlement Fund, plus expenses incurred in the prosecution of the Action in the amount of $879,674.77, plus interest on such expenses at the same rate and for the same period of time as that earned by the Settlement Fund until paid.  Lead Counsel's efforts over the last seven years have been without compensation of any kind and the their fee has been wholly contingent upon the result achieved.

116.    The amount requested is warranted in light of the substantial recovery obtained for the Class, the extensive efforts of counsel in obtaining this highly remarkable result, and the significant risks in bringing and prosecuting this Action over a period of over seven years.  As described at length above, this Action was prosecuted under the provisions of the PSLRA and, therefore, was extremely risky from the outset given the difficulty of bring and successfully concluding such class actions.  In addition to the substantial risks in prosecuting this Action, the skill, effort, and time required to achieve the Settlement was substantial.  Lead Counsel organized considerable resources and committed significant amounts of time and expense in the research, investigation, and prosecution of the Action, as well as the significant efforts in protecting the Class's interests in the WMI Bankruptcy Proceeding.

117.    Lead Counsel's application seeks an award of fees and reimbursement of expenses for themselves and the following other firms that assisted in the prosecution of the Action on the Class's behalf: Law Offices of Clifford A. Cantor, P.C.; Bull & Lifshitz, LLP; Kahn Swick & Foti, LLC; and Sturman LLC.  Attached hereto as Exhibits C-H are declarations submitted by Lead Counsel and other Plaintiffs' counsel firms that assisted in the prosecution of this Action.  These declarations discuss the work performed by each firm on the litigation, the

JOINT DECL. OF FELDMAN AND NARWOLD
Master File No. C04-1599 JCC

- 38 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

1  number of hours worked on the litigation by each firm through March 31, 2012, and the expenses

2  reasonably incurred by each firm in connection with the litigation.   Lead Counsel sought

3  throughout this litigation to avoid duplication of effort by counsel.   Moreover, Plaintiffs'

4  Counsel have reviewed their time records and eliminated certain entries in the exercise of billing

5  judgment.

6       118.   Plaintiffs' Counsel and their staff combined expended 17,994.95 hours in the

7  prosecution of this Action with a resulting lodestar of $8,938,038.50.  The requested fee of 29%

8  of the Settlement Fund results in a reasonable multiplier of 1.35.  Lead Counsel undertook the

9  representation of the Class on a contingent fee basis and no payment has been made to date for

10  their services or for the litigation expenses they have incurred on behalf of the Class over the last

11  seven plus years.  Lead Counsel believe that the Settlement is the result of their innovative and

12  tireless efforts, as well as their reputations as attorneys who are dedicated to the interests of the

13  Class and willing to passionately prosecute through trial and subsequent appeals.   In a case

14  asserting claims based on complex legal and factual issues, which were enthusiastically opposed

15  by highly skilled and experienced defense counsel, Lead Counsel succeeded in securing an

16  excellent result for the Class.

17       119.   As discussed herein, as well as in the Fee and Expense Motion, the requested fee

18  is fair and reasonable when considered under the applicable standards in the Ninth Circuit and is

19  within the range of awards in class action in this Circuit and courts nationwide.  Moreover, the

20  expenses for which Lead Counsel seek reimbursement are reasonable in amount and were

21  necessarily incurred for the successful prosecution of the Action.

22  **A.    Plaintiffs' Counsel Are Entitled to an Award of Attorneys' Fees Under the**
23  **      Percentage Method**

24       120.   In the context of class action settlements, district courts traditionally employ one

25  of two methods when determining reasonable attorneys' fees in common fund cases: (1) the

26  percentage method, in which the court awards the attorneys a percentage of the fund sufficient to

27  provide plaintiffs' attorneys with a reasonable fee; or (2) the lodestar method, in which the court

JOINT DECL. OF FELDMAN AND NARWOLD          - 39 -
Master File No. C04-1599 JCC

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

1  calculates the lodestar by multiplying the number of hours expended by a reasonable hourly rate

2  and then adjusts the lodestar by an appropriate multiplier to reflect the time and labor expended,

3  the novelty and difficulty of the issues involved, and the results achieved, among other factors.

4  Fee and Expense Motion at 5.

5       121.    District courts in the Ninth Circuit, including this one, have employed the

6  percentage method in awarding fees in common fund cases where the value of the fund is readily

7  ascertainable. *Id.* Using the percentage method in common fund cases is appropriate because it

8  closely aligns the lawyers' interest in being paid a fair fee with the interest of the class in

9  achieving the maximum possible recovery in the shortest amount of time. *Id.*

10         **B.**     **A Percentage Fee of 29% of the Fund is Reasonable in This Case**

11       122.    The guiding principle in the Ninth Circuit is that a fee award be "reasonable under

12  the circumstances." *Id.* at 6. The Ninth Circuit has articulated five factors as pertinent criteria

13  for evaluating the reasonableness of a fee request: (1) the results achieved; (2) the risks of

14  litigation; the (3) skill required and the quality of the work; (4) the contingent nature of the fee

15  and the financial burden carried by the plaintiffs; and (5) awards made in similar cases. *Id.* Each

16  of these factors supports approval of the requested attorneys' fees.

17         **(1)**     **The Result Achieved**

18       123.    The Settlement here creates a $41.5 million Settlement Fund to compensate Class

19  members. This is an exceptional result that was achieved as a direct result of the skill and

20  tenacity of Lead Counsel's investigation of the issues, prosecution of this Action, and persistent

21  settlement negotiations on behalf of the Class. This case was hard fought. Lead Plaintiffs

22  defeated Defendants' motion to dismiss and subsequently successfully litigated against

23  Defendants' interlocutory appeal to the Court of Appeals for the Ninth Circuit. This litigation

24  effort resulted in the Ninth Circuit clarifying the scienter requirement under the PSLRA in

25  accordance with Lead Plaintiffs' suggested approach. Subsequently, after extensive post-remand

26  briefing, Lead Plaintiffs' scienter allegations, along with the remainder of the Complaint, were

27

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

1   sustained.  The Settlement was the result of arm's length negotiations entered only after months

2   of complicated discovery, in light of WMI's bankruptcy and after Lead Plaintiffs obtained class

3   certification.   The settlement negotiations were conducted with the assistance of David L.

4   Geronemus, a well-respected independent mediator.

5          124.    The Settlement will provide immediate compensation to the Class and will avoid

6   the substantial risks of less or no recovery.  While Lead Plaintiffs believe that their claims have

7   substantial merit, throughout the Action, Defendants have consistently maintained that Lead

8   Plaintiffs could not establish liability of damages and have challenged every factual and legal

9   issue in the Action.   The Complaint alleged that Defendants made false and misleading

10  statements regarding WMI's ability to manage risks inherent in interest rate fluctuations in its

11  residential mortgage business and falsely assured investors that its risk management procedures

12  and hedging mechanisms would allow WMI to thrive during a period of interest rate volatility.

13  In contrast, Defendants have long argued that any losses sustained by the Company with regard

14  to hedging stemmed solely from market conditions, not internal company problems.

15  Importantly, WMI filed for Chapter 11 bankruptcy during the pendency of the Action.  Even if

16  Lead Plaintiffs successfully defeated all of Defendants' arguments recovery from WMI was

17  uncertain at best.  In light of these circumstances, the amount obtained in the Settlement is a

18  substantial achievement on behalf of the Class and weighs in favor of granting the requested fee.

19                 **(2)    Risks of Litigation**

20         125.    As discussed herein, substantial risks and uncertainties in this type of litigation,

21  and in this case in particular, made it far from certain that a recovery, let alone $41.5 million,

22  would be obtained.  From the outset, this post-PSLRA action was an especially difficult and

23  highly uncertain case, with no assurance that the Action would survive Defendants' attacks on

24  the pleadings, motion for summary judgment, trial and appeal.   Lead Counsel successfully

25  navigated through those considerable risks and obtained a favorable settlement for the Class.

26         126.    The history of the litigation, as described above, describes the significant risks

27  that Lead Counsel were able to overcome in order to achieve the Settlement.   Lead Counsel

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

faced significant risk at the outset of the case, with Defendants mounting substantial challenges to the sufficiency of the allegations of the Complaint.  In their motion to dismiss the Complaint, Defendants made strong challenges to every aspect of Lead Plaintiffs' claims, particularly with regard to the allegations of Defendants' scienter, which is inherently difficult to establish in any securities fraud lawsuit.  However, Defendants did not abandon their opposition after their motion was denied by this Court, and despite the fact that the Ninth Circuit granted Defendants' petition for permission to appeal the denial of their motion to dismiss (indicating that the Ninth Circuit gave some credence to Defendants' arguments), Lead Counsel overcame the risk posed by Defendants' appeal and were able to prevail over Defendants' arguments.  Further, even though the Ninth Circuit largely rejected Defendants' arguments on appeal, the appellate court remanded the case back to this Court for further proceedings consistent with its decision, and Lead Counsel were able to overcome the risks posed by Defendants' arguments in favor of dismissal after remand.

127.    Lead Counsel also overcame substantial risks to class certification.  The potential denial of class certification posed an enormous risk because it would have effectively denied relief to all members of the proposed class except for the named plaintiffs.  Here, Defendants opposed class certification on multiple grounds, arguing, *inter alia*, that the class period should be shortened to end on September 9, 2003, and that Lead Counsel had not adequately established that common issues predominated over individualized issues because WMI's alleged pipeline hedging problems and MSR hedging problems were two unrelated events.  However, Lead Counsel were able to overcome these arguments and achieve class certification.

128.    As described above, Lead Counsel also overcame other risks posed by this litigation, including considerable risks posed by WMI's bankruptcy filing and the transfer of its relevant documents to JPMC.

129.    In sum, this highly complex case has been extensively litigated and vigorously contested over an extended period of time.  Despite the difficulty of the issues raised, counsel secured an excellent result for the Class.  As a result, this factor weighs in favor of the requested

JOINT DECL. OF FELDMAN AND NARWOLD
Master File No. C04-1599 JCC

- 42 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

1 award.

2     **(3) Skill Required**

3   130. Lead Counsel are experienced and skilled practitioners in the fields of securities

4 class actions and complex litigation.  *See* Firm Résumés attached to Exhibits C-H.  From the

5 outset, Lead Counsel engaged in a concerted effort to obtain the maximum recovery for the Class

6 and as result of these efforts Lead Counsel were able to negotiate a very favorable settlement.

7   131. As a result of their efforts, Lead Counsel were able to plead detailed allegations

8 and defeat Defendants' motions to dismiss and interlocutory appeal to the Ninth Circuit.  Lead

9 Counsel also demonstrated the quality of their work in successfully obtaining certification of the

10 Class and, ultimately in achieving the Settlement totaling $41.5 million on behalf of the Class.

11   132. The scope and quality of the work performed by Lead Counsel are also reflected

12 in the substantial and difficult discovery conducted.  By the time discovery commenced in this

13 Action, WMI had already filed for bankruptcy and many of the relevant documents were no

14 longer in the possession of any of the Defendants.  Shortly after discovery commenced, Lead

15 Counsel served a subpoena on non-party JPMC, as that entity acquired most of WMI's banking

16 operations from the receivership of the FDIC and was in possession of WMI's documents.  Lead

17 Counsel engaged in extensive negotiations with counsel for JPMC and were able to develop a

18 discovery plan, which was no easy feat given the age of the litigation and location of documents.

19 Lead Plaintiffs also issued and served subpoenas on more than twenty other non-parties.  At the

20 time of the Settlement, Lead Counsel had received approximately 700,000 documents.  Lead

21 Counsel were in the process of analyzing those documents and preparing for depositions and

22 were always willing, as was made clear to Defendants and their counsel, to take the Action to

23 trial if necessary.

24   133. Defendants here were vigorously represented by some of the country's leading

25 defense firms, including, Wilson Sonsini Goodrich & Rosati; Davis Wright Tremaine LLP;

26 Simpson Thacher & Bartlett LLP; Morvillo, Abramowitz, Grand, Iason, Anello & Bohrer; and

27 Skadden, Arps, Slate, Meagher & Flom LLP.  The ability of Lead Counsel to obtain such a

LAW OFFICES OF
**CLIFFORD A. CANTOR, P.C.**
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

1    favorable settlement for the Class in the face of such formidable legal opposition further reflects

2    the high quality of Lead Counsel's work and weighs in favor of the requested percentage fee.

3    **(4)    Contingent Nature of Fee**

4    134.    Lead Counsel undertook this Action on a contingent fee basis, assuming a

5    significant risk that the Action would yield no recovery and leave them uncompensated.  Unlike

6    counsel for Defendants, who are paid an hourly rate and paid for their expenses on a regular

7    basis, Lead Counsel have not been compensated for any time or expense since this case began in

8    2004, expending almost 18,000 hours equating to over $8.9 million in lodestar in obtaining this

9    result for the Class, knowing that if their efforts were not successful, no fee would be generated.

10   135.    The significant outlay of case and personnel resources by Lead Counsel has been

11   completely at risk and wholly dependent upon a substantial recovery for the Class in the face of

12   highly skilled defense lawyers and the hurdles presented by the PSLRA's pleading requirements.

13   Lead Counsel are aware of many hard-fought litigations, where because of the discovery of facts

14   unknown when the case was commenced, changes in the law during the pendency of the case, or

15   a decision of a judge or jury following a trial on the merits, excellent professional efforts of

16   members of the plaintiffs' bar produced no fee for counsel.  *See* Fee and Expense Motion at 11-

17   12.  In light of the significant risks to establishing liability and damages that were present in this

18   case as discussed above, and Lead Counsel's significant commitment of time and resources, the

19   contingent nature of counsel's representation strongly favors approval of the requested fee.

20   **(5)    Awards in Similar Cases**

21   136.    The Ninth Circuit has recognized that attorneys' fees awarded under the

22   percentage method ordinarily range from 20% to 30% of the fund, and has established 25% of

23   the settlement amount as the appropriate benchmark for such awards.  *See* Fee and Expense

24   Motion at 12.  However, district courts in this Circuit have awarded fees in excess of 25% on

25   many occasions.  *Id.*

26   137.    Therefore, an analysis of all the relevant case-specific factors bolsters the

27   reasonableness of the requested fee percentage.

JOINT DECL. OF FELDMAN AND NARWOLD
Master File No. C04-1599 JCC

- 44 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

C.      **Counsel's Lodestar Also Justifies the Fee**

138.    Although Lead Counsel seeks approval of a fee that is a percentage of the Class recovery, even if the Court employs the lodestar method (or examines the lodestar method as a cross-check for the percentage method), Lead Counsel respectfully submit that their requested fees are reasonable and should be awarded in full.  Under the lodestar method, court often award fees that are a multiple higher than counsel's lodestar to recognize and compensate counsel's having assumed the representation without an assured payment of their lodestar.

139.    Courts in the Ninth Circuit, including this one, have found that multiplier ranging up to four are frequently awarded in common fund cases.  *See* Fee and Expense Motion at 13. Here, the total lodestar of Plaintiffs' Counsel, derived by multiplying the hours worked by each firm's attorneys and support staff by their current hourly rates, equals $8,938,038.50.   The requested fee amount, 29% of the total recovery, would result in a multiplier of approximately 1.35 times Plaintiffs' Counsel's lodestar.  A multiplier of 1.35 is on the low end of multipliers typically awarded in cases like this and is well within the range of multipliers approved in this Circuit.

140.    The hourly rates of Plaintiffs' Counsel that were used to generate the lodestar are reasonable and appropriate.   Reasonable hourly rates are determined by reference to the prevailing market rates charged by attorneys of comparable skill and experience in the community.  *See* Fee and Expense Motion at 14.  Considering the relevant legal community to be the national market for securities class action firms with the skill and resources to undertake litigation of this magnitude is appropriate given that Defendants retained firms of national scope, including the Seattle and Palo Alto offices of Wilson, Sonsini Goodrich J. Rosati, the New York and Los Angeles offices of Simpson Thacher J. Bartlett LLP, the New York office of Morvillo Abramowitz Grand Iason Anello J. Bohrer, P.C., and the New York and Los Angeles offices of Skadden, Arps, Slate, Meagher & Flom LLP.

141.    Moreover, even if one were to use Seattle-based billing rates for all Plaintiffs' counsel, the requested fee is still reasonable.   Recently, Judge Pechman considered lead

JOINT DECL. OF FELDMAN AND NARWOLD
Master File No. C04-1599 JCC

- 45 -

1   counsel's motion for attorneys' fees and expenses in the settlement of another case in this

2   District involving Washington Mutual.  See *In re Wash. Mut., Inc. Sec. Litig.*, No. 08-md-1919

3   (W.D. Wash. Nov. 4, 2011) (attached as Exhibit 1 to the Fee and Expense Motion).  In her order

4   granting attorneys' fees to plaintiffs' counsel, Judge Pechman assessed the propriety of counsel's

5   fee request by examining billing rates charged by qualified and experienced counsel in the

6   Seattle area, and applying billing rates based on the rates charged by the local counsel in that

7   case (Byrnes Keller Cromwell LLP) to the hours expended by counsel.  Specifically, Judge

8   Pechman applied the following "Seattle" billing rates to counsel's fee request:  $525 per hour for

9   partners, $261 per hour for other attorneys, and $145 per hour for support staff.

10      142.   Application of the billing rates for the Seattle community deemed suitable by

11   Judge Pechman to the hours billed by partners ($525 x 7,019.25 hours = $3,685,106.25), other

12   attorneys ($261 x 7,241.50 hours = $1,890,031.50), and support staff  ($145 x 3,734.20 hours =

13   $541,459.00) in this case would result in a lodestar of $6,116,596.75.   The resulting multiplier

14   using these Seattle rates is still a modest 1.97 and well within the range typically awarded in

15   contingency fee cases.

16      143.   In sum, the requested attorneys' fees are well within the range of what courts in

17   this Circuit and throughout the country commonly award in complex Class actions such as this

18   one and the requested 29% fee is reasonable and fair under both the percentage and lodestar

19   methodologies.

20      **D.      The Reaction of the Class Supports Approval**

21      144.   To date, the Settlement Notice had been sent to over 446,000 potential Class

22   members and the Publication Notice was published in the global edition of *The Wall Street*

23   *Journal* and transmitted over the Global Media Circuit of *Business Wire*.  *See supra* ¶ 83.  Class

24   members were informed in the Settlement Notice that Lead Counsel were moving the Court for

25   attorneys' fees in an amount not to exceed one-third of the Settlement and for reimbursement of

26   their expenses in the approximate amount of approximately $1 million, plus interest on such

27   expenses at the same rate as earned by the Settlement Fund.  Class Members were also advised

- 46 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

1    of their right to object to the fee and expense request, and that such objection were required to be

2    filed with the Court and served on counsel no later than May 4, 2012.

3            145.    As of the date of this brief, Lead Counsel have received no objections to their fee

4    and expense request.  The absence of objections from Class members weighs heavily in favor of

5    Lead Counsel's fee and expense request.

6            E.      **Expenses Are Reasonable and Were Necessarily Incurred**

7            146.    Lead Counsel also request reimbursement of expenses incurred by Plaintiffs'

8    Counsel in connection with the prosecution of this Action, plus interest on such expenses from

9    the date the Settlement Fund was funded to the date of payment at the same net rate as earned by

10   the Settlement Fund.  In total, Plaintiffs' Counsel have incurred expenses totaling $879,674.77.

11   These expenses are set forth in the declarations of counsel submitted as Exhibits C-H herewith.

12           147.    Here, Plaintiffs' Counsel's incurred expenses include: (1) fees charged by experts

13   and consultants; (2) costs of legal and factual research; (3) costs for court reporters, transcripts

14   and videos; (4) costs for the mediation services provided in this case; (5) filing and witness fees;

15   (6) hotel and transportation charges; (7) costs associated with photocopies, reproduction, printing

16   and scanning of documents; (8) postage and notice costs; (9) telephone and facsimile charges;

17   (10) costs of messengers and express services; and (11) costs of meals.  These expenses were

18   reasonably incurred in light of the work performed, the legal and factual issues presented, the

19   vigorous defense mounted by Defendants, and the significant results obtained.

20           148.    In an abundance of caution, Lead Counsel are not seeking reimbursement for all

21   of their incurred expenses.  However, the expenses for which Plaintiffs' Counsel seek

22   reimbursement are the type of expenses routinely charged to hourly paying clients.  For example,

23   a large portion of the litigation expenses for which reimbursement is sought were incurred in

24   payment for work performed by Plaintiffs' testifying and consulting experts in the areas of loss

25   causation, damages, mortgage loan portfolio hedging and computer IT systems.  A significant

26   portion of these expenses were incurred in payment for work performed by Plaintiffs'

27   bankruptcy counsel (Lowenstein Sandler PC), who performed substantial work in connection

JOINT DECL. OF FELDMAN AND NARWOLD
Master File No. C04-1599 JCC                          - 47 -

LAW OFFICES OF
**CLIFFORD A. CANTOR, P.C.**
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

1 | with WMI's bankruptcy filing to protect the interests of the Class.

2 | 149.   Another significant expense related to the costs of processing, uploading, and

3 | hosting of hundreds of thousands of pages of documents.  Many of the documents obtained in

4 | discovery were produced in hard-copy format, and counsel incurred substantial expenses in order

5 | to convert those hard-copy documents into electronic format, which was necessary to facilitate

6 | counsel's review and analysis of those discovery documents.

7 | 150.   Another large component of counsel's litigation expenses was for online legal

8 | research services such as LexisNexis and Westlaw.  These legal research costs were necessary in

9 | light of the substantial motion practice that occurred in this litigation.

10 | 151.   In addition, certain counsel were required to travel in connection with this case

11 | and thus incurred the related costs of meals, lodging and transportations.  Counsel in this case

12 | traveled to attend court hearings and client meetings, to review documents, and to defend

13 | depositions, all of which were necessary for the diligent prosecution of this Action.

14 | **VII.   CONCLUSION**

15 | 152.   Based on the foregoing, we respectfully request that the Court (a) grant final

16 | approval of the Settlement of this Action and the Plan of Allocation of settlement proceeds; and

17 | (b) grant Lead Counsel's motion for an award of attorneys' fees and reimbursement of expenses.

18 |

19 | Dated:  April 13, 2012

20 |

21 | *s/ William H. Narwold*                        *s/ Lori G. Feldman*
   | William H. Narwold                            Lori G. Feldman, WSBA # 29096

22 |

23 |

24 |

25 |

26 |

27 |

JOINT DECL. OF FELDMAN AND NARWOLD
Master File No. C04-1599 JCC

- 48 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

1

2

**Certificate of Service**

3     I certify that, on April 13, 2012 I caused this declaration to be filed with the clerk of the

court via the CM/ECF system, which will send notification of filing to all counsel of record.

4

5                                     /s/ Cliff Cantor, WSBA # 17893

6    621235v2

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752