**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| SOUTH FERRY LP #2, individually and on behalf of all others similarly situated, | ) ) ) Case No. C04-1599-JCC |
| Plaintiff, | ) ) |
| vs. | ) ) |
| KERRY K. KILLINGER, *et al.*, | ) ) |
| Defendants. | ) ) |
| | ) |

**AFFIDAVIT OF ERIC J. MILLER REGARDING**
**(A) MAILING OF THE NOTICE AND PROOF OF CLAIM; AND**
**(B) REPORT ON RECEIPT OF REQUESTS FOR EXCLUSION**

STATE OF FLORIDA          )
                                    ) ss:
COUNTY OF PALM BEACH   )

I, Eric J. Miller, being duly sworn, deposes and states that:

1.      I declare under penalty of perjury under the laws of the United States of America that the following is true and correct.

2.      I am a Client Services Director for Rust Consulting, Inc. ("Rust").  Pursuant to paragraph 6 of the Preliminary Order for Notice and Hearing in Connection with Settlement Proceedings (the "Order"), dated December 2, 2011, Rust was appointed Claims Administrator to supervise and administer the notice procedure as well as the processing of claims in connection with the above-captioned action (the "Action").  I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

3.      Rust was responsible for disseminating the Notice of Pendency of Class Action and Proposed Settlement, Motion for Attorneys' Fees, and Settlement Fairness Hearing (the "Notice") and the Proof of Claim and Release (the "Proof of Claim") (together with the Notice,

the "Claim Packet") to potential Class Members.  True and correct copies of the Notice and the Proof of Claim are attached hereto as Exhibits A and B respectively.  The Notice and the Proof of Claim mailed were substantially in the forms approved by the Court.

**A.      MAILING OF THE NOTICE AND THE PROOF OF CLAIM**

4.      On November 2, 2011, Rust received from Bank of New York Mellon, the transfer agent for Washington Mutual, Inc. ("WMI"), a list containing 15,521 names and addresses of persons who held and/or purchased WMI common stock during the time period April 15, 2003 through and including June 28, 2004.  Rust entered the data into a segregated database to be used for mailing the Claim Packet to potential members of the Class.  The data was electronically scrubbed to ensure adequate address formatting and the elimination of duplicate names and addresses and resulted in 15,471 distinct records for mailing.

5.      In addition, Rust maintains a database of 4,861 brokerage firms, banks, other financial institutions as published by Securities Dealers of North America, Depository Trust Company ("DTC"), and various foreign stock exchanges and registrar participant members to be used in notifying record holders of settlements.

6.      On February 17, 2012, pursuant to paragraph 6 of the Order, Rust mailed a total of 20,332 Claim Packets via the United States Postal Service ("USPS").

7.      Subsequent to the mailing on February 17, 2012, Rust identified a typographical error in the Proof of Claim.  In Section C, page 2 of 4 of the Proof of Claim, the relevant sales period for WMI common stock was misstated as starting on April 15, 3003, not April 15, 2003.  Rust has re-mailed all 20,332 Claim Packets with the correct 2003 starting date for the sales period.  The re-mailing of the corrected Claim Packets was done solely at Rust's expense and the Settlement Fund will not be charged for this re-mailing.  All remaining Claim Packets with the incorrect 3003 starting date for the sales period have been destroyed.

8.      As the Court-appointed Claims Administrator, Rust has handled nominee and shareholder inquiries and communications relating to the settlement of this Action.  Rust has received requests from brokers, nominees (institutions filing on behalf of their customers), and individuals to either send the Claim Packet to them for distribution to those customers with relevant holdings, or to send the Claim Packet to such customers whose identifying information was sent to Rust.  Through April 12, 2012, as a result of requests from brokers and other nominees, Rust has sent an additional 411,009 Claim Packets to potential Class Members, directly or indirectly.  All such requests have been complied with in a timely manner.

9.      As of April 12, 2012, the USPS returned 23,439 Claim Packets as undeliverable without forwarding addresses.  Of these 23,439 undeliverable Claim Packets, Rust located 13,262 new addresses through Lexis Nexis, an information supplier to which Rust subscribes. Rust promptly mailed Claim Packets to those 13,262 potential Class Members at the updated addresses.  Additionally, the USPS returned 1,435 Claim Packets with forwarding addresses, and Rust promptly re-mailed Claim Packets to these potential Class Members at their forwarding addresses.

10.      As of April 12, 2012, as a result of the efforts outlined above, Rust has mailed a total of 446,038 Claim Packets (including 14,697 Claim Packets that were re-mailed to new or updated addresses) to potential Class Members and nominees.  This number does NOT include re-mail of the 20,332 Claim Packets described in paragraph 7 above.

11.      Rust has established a toll-free hotline (1-877-310-0495) to accommodate potential Class Members.  The toll-free hotline became operational on February 17, 2012.

12.      In addition, Rust established a website for the proposed settlement (*http://www.WaMu2004CommonStockLitigation.com*) on February 17, 2012.   Among the documents available on the website for viewing as downloadable Adobe® Acrobat® Reader®

PDF files are:  the Lead Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and Approval of the Settlement Notice dated October 5, 2011, the Class Action Settlement Agreement dated December 2, 2011, the Notice, the Proof of Claim, and the Order. As of April 12, 2012 there have been 2,850 visitors to the website.

## B.    REPORT ON RECEIPT OF REQUESTS FOR EXCLUSION

13.    The answer to question 14 of the Notice informed Class Members that written requests for exclusion from the Class were to be mailed, postmarked no later than May 4, 2012 and addressed to WaMu 2004 Common Stock Litigation EXCLUSIONS, c/o Rust Consulting, Inc., Claims Administrator, Post Office Box 2493, Faribault, MN  55021-9193.   Rust has monitored all mail that has been delivered to this Post Office Box.  To date, Rust has received 26 requests for exclusion from the Class.  A report listing the requests for exclusion from the Class received to date is attached hereto as Exhibit C.  Rust will continue to be the repository for exclusion requests up to and beyond the postmark deadline and will report any additional exclusion requests that are received.

Eric J. Miller

Sworn to before me on
this 13th day of April, 2012.

Notary Public

FEDERICO J QUIJADA
MY COMMISSION # EE026766
EXPIRES September 16, 2014
(407) 398-0153        FloridaNotaryService.com

# EXHIBIT A

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SOUTH FERRY LP #2, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>KERRY K. KILLINGER, *et al.*,<br><br>Defendants. | Case No. C04-1599-JCC<br><br>**NOTICE OF PENDENCY OF CLASS ACTION AND PROPOSED SETTLEMENT, MOTION FOR ATTORNEYS' FEES, AND SETTLEMENT FAIRNESS HEARING** |

**If you purchased the common stock of Washington Mutual, Inc. between April 15, 2003 and June 28, 2004, inclusive, and were damaged thereby, then you could get a payment from a class action settlement.**

*A federal court authorized this notice.  This is not a solicitation from a lawyer.*

- The proposed Settlement[1] will provide a $41.5 million cash settlement fund for the benefit of investors who bought Washington Mutual, Inc. ("WMI") common stock between April 15, 2003 and June 28, 2004, inclusive, and were damaged thereby.

- The Settlement resolves a lawsuit over whether Defendants misled investors about WMI's ability to manage risks inherent in interest-rate fluctuations in its residential mortgage business and thrive during a period of interest rate volatility.

- Your legal rights are affected whether you act or do not act.  Read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **SUBMIT A CLAIM FORM BY JULY 2, 2012** | The only way to get a payment. |
| **EXCLUDE YOURSELF BY MAY 4, 2012** | Get no payment.  This is the only option that allows you to ever be part of any other lawsuit against Defendants and the other Released Parties about the Released Claims. |
| **OBJECT BY MAY 4, 2012** | Write to the Court about why you do not like the settlement. |
| **GO TO A HEARING ON JUNE 5, 2012** | Ask to speak in Court about the settlement. |
| **DO NOTHING** | Get no payment.  Give up rights. |

- These rights and options - **and the deadlines to exercise them** - are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the Settlement.  Payments will be made if the Court approves the Settlement and after appeals, if any, are resolved.  Please be patient.

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in that certain Class Action Settlement Agreement (the "Settlement Agreement") by and among Lead Plaintiffs and Defendants, which is available on the website established for the Settlement at ***www.WaMu2004CommonStockLitigation.com***.

**SUMMARY OF NOTICE**

Statement of Plaintiff Recovery

Pursuant to the proposed Settlement described herein, a Settlement Fund consisting of $41.5 million in cash, plus interest, has been established.  Lead Plaintiffs estimate that there were approximately 297.7 million shares of WMI common stock traded during the Class Period which may have been damaged.  Lead Plaintiffs estimate that the average recovery per damaged share of WMI common stock under the Settlement is approximately $0.14 per damaged share[2] before deduction of Court-awarded attorneys' fees and expenses.  A Class Member's actual recovery will be a proportion of the Net Settlement Fund determined by that claimant's Recognized Claim as compared to the total Recognized Claims of all Class Members who submit acceptable Proofs of Claim.  Depending on the number of Proofs of Claim submitted, when during the Class Period a Class Member purchased shares of WMI common stock, the purchase price paid, and whether those shares were held at the end of the Class Period or sold during the Class Period, and, if sold, when they were sold and the amount received, an individual Class Member may receive more or less than this average amount.  The precise amount of any Class Member's recovery will not be known until all Proofs of Claim have been submitted, reviewed and processed.  See the Plan of Allocation beginning on page 12 for more information on your Recognized Claim.

Statement of Potential Outcome of Case

The parties disagree on both liability and damages with respect to the claims asserted by Lead Plaintiffs against Defendants in the Action, and do not agree on the average amount of damages per share that would be recoverable by Authorized Claimants if the Action were to continue to be litigated and Lead Plaintiffs were to prevail on each claim alleged.  The issues on which the parties disagree include (a) whether the statements made or facts allegedly omitted were materially false, misleading, or otherwise actionable under the federal securities laws; (b) whether Defendants had the requisite scienter when the statements were made or facts were allegedly omitted; (c) whether loss causation and damages could be established; (d) the extent to which the various matters that Lead Plaintiffs alleged were materially false or misleading influenced (if at all) the trading price of WMI common stock at various times during the Class Period; (e) the extent to which the various allegedly adverse material facts that Lead Plaintiffs alleged were omitted influenced (if at all) the trading price of WMI common stock at various times during the Class Period; (f) the appropriate economic model for determining the amount by which WMI common stock was allegedly artificially inflated (if at all) during the Class Period; (g) the amount by which WMI common stock was allegedly artificially inflated (if at all) during the Class Period; (h) the effect of various market forces influencing the trading price of WMI common stock at various times during the Class Period; and (i) the extent to which external factors, such as general market and industry conditions, influenced the trading price of WMI common stock at various times during the Class Period.  Defendants deny that they are liable to Lead Plaintiffs or any other Class Members and deny that Lead Plaintiffs or any other Class Members have suffered any damages.

Statement of Attorneys' Fees and Costs Sought

Plaintiffs' Counsel are moving the Court to award attorneys' fees in an amount not to exceed one-third (33⅓%) of the Gross Settlement Fund and for reimbursement of their expenses in the approximate amount of $1,000,000.00.  The requested attorneys' fees and expenses would amount to an average of approximately $0.05 per damaged share in total for fees and expenses.  Plaintiffs' Counsel have expended considerable time and effort in the prosecution of this litigation on a contingent fee basis, and have advanced the expenses of the litigation, in the expectation that if they were successful in obtaining a recovery for the Class they would be paid from such recovery.  In this type of litigation it is customary for counsel to be awarded a percentage of the common fund recovery as their attorneys' fees.

Further Information

Further information regarding the Action and this Notice may be obtained by contacting Plaintiffs' Co-Lead Counsel:  Lori G. Feldman, Milberg LLP, One Penn Plaza, New York, New York 10119-0165, Telephone (212) 594-

---

[2]    An allegedly damaged share might have been traded more than once during the Class Period, and the indicated average recovery would be the total for all purchasers of that share.

5300; or William H. Narwold, Motley Rice LLC, One Corporate Center, 20 Church Street, 17th Floor, Hartford, Connecticut  06103, Telephone (860) 882-1681.

Reasons for the Settlement

For Lead Plaintiffs, the principal reason for the Settlement is the benefit to be provided to the Class now.  This benefit must be compared to the risk that no recovery might be achieved after a contested trial and likely appeals, possibly years into the future.

Defendants, who deny all allegations of wrongdoing or liability whatsoever, have agreed to the Settlement solely to avoid the risks, expense, distraction and time associated with continuing the Action.

**[END OF COVER PAGE]**

---

| **WHAT THIS NOTICE CONTAINS** |
|---|

### Table of Contents

**Page**

SUMMARY OF NOTICE ................................................................................................ 2
    Statement of Plaintiff Recovery ...................................................................... 2
    Statement of Potential Outcome of Case ........................................................ 2
    Statement of Attorneys' Fees and Costs Sought ............................................. 2
    Further Information ........................................................................................ 2
    Reasons for the Settlement ............................................................................ 3

BASIC INFORMATION ................................................................................................ 4
    1.    Why did I get this notice package? ..................................................... 4
    2.    What is this lawsuit about? ................................................................ 4
    3.    Why is this a class action? ................................................................. 5
    4.    Why is there a settlement? ................................................................ 5

WHO IS IN THE SETTLEMENT ..................................................................................... 6
    5.    How do I know if I am a Class Member? ............................................. 6
    6.    Are there exceptions to being included? ............................................. 6
    7.    What if I am still not sure if I am included in the Class? ....................... 6

THE SETTLEMENT BENEFITS — WHAT YOU GET ........................................................... 6
    8.    What does the Settlement provide? .................................................... 6
    9.    How much will my payment be? ......................................................... 6

HOW YOU GET A PAYMENT — SUBMITTING A PROOF OF CLAIM FORM ........................... 7
    10.    How can I get a payment from the Net Settlement Fund? ...................... 7
    11.    When would I get my payment? ......................................................... 7
    12.    What am I giving up to get a payment or stay in the Class? ................... 7
    13.    Will the Settlement affect any individual claim that I might have in the Chapter 11 Cases?......... 8

EXCLUDING YOURSELF FROM THE SETTLEMENT ........................................................... 8
    14.    How do I get out of the proposed Settlement? ..................................... 8
    15.    If I do not exclude myself, can I sue Defendants and the other Released Parties for the same thing later? ..................................................................... 8
    16.    If I exclude myself, can I get money from the proposed Settlement? ..................... 9

THE LAWYERS REPRESENTING THE CLASS ................................................................... 9
    17.    Do I have a lawyer in this case? ......................................................... 9
    18.    How will the lawyers be paid? ........................................................... 9

OBJECTING TO THE SETTLEMENT ............................................................................... 9
    19.    How do I tell the Court that I do not like the proposed Settlement? ............... 9

20.    What is the difference between objecting and excluding?.........................................................10

THE COURT'S SETTLEMENT FAIRNESS HEARING ..................................................................................10
21.    When and where will the Court decide whether to approve the proposed Settlement?............10
22.    Do I have to come to the hearing?.........................................................................................11
23.    May I speak at the hearing? ....................................................................................................11

IF YOU DO NOTHING ..........................................................................................................................11
24.    What happens if I do nothing at all? .......................................................................................11

GETTING MORE INFORMATION ...........................................................................................................11
25.    Are there more details about the proposed Settlement?.........................................................11
26.    How do I get more information?...............................................................................................11

PLAN OF ALLOCATION OF NET SETTLEMENT FUND AMONG CLASS MEMBERS ....................................12

SPECIAL NOTICE TO SECURITIES BROKERS AND OTHER NOMINEES ....................................................15

## BASIC INFORMATION

| 1. | Why did I get this notice package? |
|---|---|

You or someone in your family may have purchased the common stock of Washington Mutual, Inc. ("WMI") between April 15, 2003 and June 28, 2004, inclusive, and been damaged thereby.

The Court directed that this Notice be sent to Class Members because they have a right to know about a proposed Settlement of a class action lawsuit, and about all of their options, before the Court decides whether to approve the Settlement.  If the Court approves the Settlement, and after objections and appeals, if any, are resolved, an administrator appointed by the Court will make the payments that the Settlement allows.

This package explains the lawsuit, the Settlement, Class Members' legal rights, what benefits are available, who is eligible for them, and how to get them.

The Court in charge of the case is the United States District Court for the Western District of Washington at Seattle, and the case is known as *South Ferry LP #2 v. Kerry K. Killinger, et al.*, Case No. C04-1599-JCC (the "Action").  The Action was assigned to United States District Judge John C. Coughenour.  The people who sued are called Lead Plaintiffs, and the company and the persons they sued are called Defendants.

The Defendants are WMI, Kerry K. Killinger ("Killinger") (Chairman of the Board of Directors, President, and Chief Executive Officer of WMI during the Class Period), Thomas W. Casey ("Casey") (Executive Vice President, Chief Financial Officer, member of the Executive Committee and President's Counsel during the Class Period), and Deanna W. Oppenheimer ("Oppenheimer") (President of the Consumer Group and an executive management team member during the Class Period) (Killinger, Casey, and Oppenheimer are, collectively, the "Individual Defendants").

On September 26, 2008, WMI filed for voluntary bankruptcy pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").  WMI's chapter 11 case is overseen by the Bankruptcy Court and is jointly administered with the bankruptcy case of WMI Investment Corp. as *In re Washington Mutual, Inc.*, Case No. 08-12229 (MFW) (Bankr. D. Del.) (collectively, the "Chapter 11 Cases").  The Action is currently stayed against WMI pursuant to the Bankruptcy Code.  The Settlement is conditioned on, among other things, entry of the Bankruptcy Court Approval Order by the Bankruptcy Court.

| 2. | What is this lawsuit about? |
|---|---|

WMI maintained a mortgage lending business until its bankruptcy, and was the second-largest mortgage loan originator in the United States by April of 2003.

Beginning in July 2004, a number of securities fraud class actions were filed in this Court.  By Order dated November 30, 2004, those actions were consolidated into the Action.  South Ferry LP #2 ("South Ferry"), Metzler Investment GmbH ("Metzler"), and Walden Management Company Pension Plan ("Walden") were designated lead plaintiffs pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") and Milberg LLP (then known as Milberg Weiss Bershad & Schulman LLP) was appointed Lead Counsel.

On March 1, 2005, South Ferry, Metzler, and Walden filed the Consolidated Amended Complaint (the "Complaint") alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder.  Specifically, the Complaint alleged that, between April 15, 2003, and June 28, 2004, WMI, Killinger, Casey, Oppenheimer, William W. Longbrake ("Longbrake"), Craig J. Chapman ("Chapman"), and James G. Vanasek ("Vanasek") made false and misleading statements that (1) WMI had successfully integrated the various technology platforms and operational processes from certain recent acquisitions, and (2) WMI was well-positioned to withstand market changes in interest rates because of its hedging operations and the natural counterbalance of its risk.

The lawsuit seeks money damages against Defendants for violations of the federal securities laws.  Defendants deny all allegations of misconduct contained in the Complaint, and deny having engaged in any wrongdoing whatsoever.

| 3. | Why is this a class action? |
|---|---|

In a class action, one or more people called class representatives (in this case Walden) sue on behalf of people who have similar claims.  All these people are a class or class members.  Bringing a case, such as this one, as a class action allows adjudication of many similar claims of persons and entities that might be economically too small to bring in individual actions.  One court resolves the issues for all class members, except for those who exclude themselves from the class.

| 4. | Why is there a settlement? |
|---|---|

On May 17, 2005, WMI, Killinger, Casey, Oppenheimer, Longbrake, Chapman, and Vanasek moved to dismiss the Complaint.  On November 17, 2005, this Court granted in part and denied in part the motion to dismiss, dismissing the claims against Longbrake, Chapman and Vanasek, but holding as to the remaining defendants that plaintiffs had adequately pleaded their claims.  *South Ferry LP #2 v. Killinger*, 399 F. Supp. 2d 1121 (W.D. Wash. 2005).[3]

On December 2, 2005, the Defendants filed a motion for reconsideration of the denial of the motion to dismiss, or, in the alternative, for a certificate of appealability under 28 U.S.C. § 1292(b).  On December 6, 2005, this Court denied the motion for reconsideration.  On March 6, 2006, this Court issued an order granting the motion for certification of an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  All lower court proceedings were stayed by the Court due to the appeal.  The Defendants filed a motion with the United States Court of Appeals for the Ninth Circuit (the "Ninth Circuit") seeking permission to appeal, and the Ninth Circuit granted that motion on June 15, 2006.

On February 3, 2006, the Defendants filed an answer to the Complaint (the "Answer").  The Defendants denied, and continue to deny, all charges of wrongdoing or liability against them arising out of the conduct, statements, acts or omissions alleged or that could have been alleged in the Complaint.  In their Answer, the Defendants also asserted a number of affirmative defenses, including that the Complaint failed to state a claim against them; that the statements or omissions attributed to the Defendants were not actionable under the federal securities laws and did not cause injury to the plaintiffs; and that the Defendants acted in good faith.

Metzler filed an unopposed motion seeking appointment of Motley Rice LLC as Plaintiffs' Co-Lead Counsel on September 12, 2006.  On December 18, 2006, the Court issued an order granting this motion and appointed Motley Rice LLC as Plaintiffs' Co-Lead Counsel.

After extensive appellate briefing, the Ninth Circuit held oral argument on April 8, 2008.  On September 9, 2008, the Ninth Circuit vacated the scienter portion of this Court's November 17, 2005 Order and remanded the case for further proceedings.  *South Ferry LP #2 v. Killinger*, 542 F. 3d 776 (9th Cir. 2008).

Following remand, the parties filed additional briefs, and on October 1, 2009, the Court reaffirmed its earlier motion to dismiss order.  *South Ferry LP #2 v. Killinger*, 687 F. Supp. 2d 1248 (W.D. Wash. 2009).

From January 2010 to January 2011, the parties engaged in fact discovery.

On March 22, 2010, Lead Plaintiffs moved the Court for an order certifying the Class pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.  By Order dated January 6, 2011, the Court granted Plaintiffs' motion for class certification.  The Court's Order also certified Walden as Class Representative, but denied certification of Metzler as a class representative.

---

[3]     In its November 17, 2005 Order, the Court dismissed claims on behalf of those who sold put options during the Class Period, and South Ferry's claims were based on the sale of put options.  Accordingly, South Ferry withdrew as a lead plaintiff on March 15, 2010 [Dkt. No. 206] and was terminated from the Action on March 17, 2010.

Pursuant to formal pretrial discovery, Lead Plaintiffs obtained from Defendants and various non-parties approximately 660,000 documents relating to matters at issue in the Action, which Plaintiffs' Co-Lead Counsel were in the process of reviewing and analyzing.

The Court did not decide in favor of Lead Plaintiffs or Defendants.  Instead, both sides, with the assistance of David Geronemus of JAMS acting as a mediator, agreed to a Settlement.  That way, they avoid the risks and cost of a trial.  Lead Plaintiffs and their attorneys think the Settlement is best for the Class.

## WHO IS IN THE SETTLEMENT

To see if you will get money from this Settlement, you first have to determine if you are a Class Member.

| 5. | How do I know if I am a Class Member? |
|---|---|

The Court decided that everyone who fits the following description is a Class Member:  All persons who purchased the common stock of Washington Mutual, Inc. between April 15, 2003 and June 28, 2004, inclusive, and who were damaged thereby.

| 6. | Are there exceptions to being included? |
|---|---|

Excluded from the Class are WMI and the Individual Defendants; former defendants William W. Longbrake, Craig J. Chapman, James G. Vanasek and Michelle McCarthy; any other officers and directors of WMI during the Class Period; members of their immediate families and their legal representatives, heirs, successors or assigns; and any entity in which any of the Defendants or former defendants have or had a controlling interest.

If one of your mutual funds purchased shares of WMI common stock during the Class Period, that alone does not make you a Class Member.  You are a Class Member only if you directly purchased shares of WMI common stock during the Class Period.  Check your investment records or contact your broker to see if you purchased WMI common stock during the Class Period.

If you **sold** WMI common stock during the Class Period, that alone does not make you a Class Member.  You are a Class Member only if you **purchased** your shares during the Class Period.

| 7. | What if I am still not sure if I am included in the Class? |
|---|---|

If you are still not sure whether you are included, you can ask for free help.  You can call (877) 310-0495 toll free or visit ***www.WaMu2004CommonStockLitigation.com*** for more information.  Or you can fill out and return the Proof of Claim form described on page 7, in question 10, to see if you qualify.

## THE SETTLEMENT BENEFITS — WHAT YOU GET

| 8. | What does the Settlement provide? |
|---|---|

Pursuant to the terms of the Settlement Agreement, Lead Plaintiffs, on behalf of themselves and the Class, have agreed to settle and release all "Released Claims" (as defined below), including the Bankruptcy Claims in the Chapter 11 Cases, against the Defendants and the other "Released Parties" (as defined below) in exchange for a total of $41.5 million in cash (the "Cash Settlement Amount").  The Settlement Agreement further provides that the Cash Settlement Amount, plus interest earned thereon, will be divided, after the deduction of legal fees and expenses approved by the Court and other expenses of administering the Settlement, among all Class Members who send in valid Proof of Claim forms.

In addition, if the Effective Date of the Settlement occurs, the Bankruptcy Claims filed in the Bankruptcy Court on behalf of Walden, Metzler, and the Class will be withdrawn, with prejudice, in their entirety.

| 9. | How much will my payment be? |
|---|---|

Your share of the Net Settlement Fund will depend on the total Recognized Claims represented by the valid Proof of Claim forms that Class Members send in, how many shares of WMI common stock you bought, how much you paid for them, and when you bought and whether or when you sold them, and if so for how much you sold them.

You can calculate your Recognized Claim in accordance with the formula shown below in the Plan of Allocation.  It is unlikely that you will get a payment for the full amount of your Recognized Claim.  After all Class Members have sent in their Proof of Claim forms, the payment you get will be a part of the Net Settlement Fund equal to your Recognized

Claim divided by the total of everyone's Recognized Claims.  *See* the Plan of Allocation beginning on page 12 for more information on your Recognized Claim.

**HOW YOU GET A PAYMENT — SUBMITTING A PROOF OF CLAIM FORM**

| **10.** | **How can I get a payment from the Net Settlement Fund?** |
|---|---|

To qualify for a payment, you must send in a Proof of Claim form.  A Proof of Claim form is being circulated with this Notice.  You may also get a Proof of Claim form on the Internet at ***www.WaMu2004CommonStockLitigation.com***.  Read the instructions carefully, fill out the Proof of Claim form, include all the documents the form asks for, sign it, and mail it postmarked no later than **July 2, 2012.**

| **11.** | **When would I get my payment?** |
|---|---|

The Court will hold a hearing on **June 5, 2012,** to decide whether to approve the Settlement.  If the Court approves the Settlement, after that, there may be appeals.  It is always uncertain whether these appeals can be resolved, and resolving them can take time, perhaps more than a year.  It also takes time for all the Proofs of Claim to be processed.  Please be patient.

| **12.** | **What am I giving up to get a payment or stay in the Class?** |
|---|---|

Unless you exclude yourself, you are staying in the Class, and that means that, upon the "Effective Date" of the Settlement, you will release all "Released Claims" (as defined below) against the "Released Parties" (as defined below).

"Released Claims" means any and all claims, debts, demands, rights or causes of action or liabilities whatsoever (including, but not limited to, any claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses or liabilities whatsoever), whether known claims or Unknown Claims; whether based on federal, state, local, statutory or common law or any other law, rule or regulation, whether fixed or contingent, accrued or un-accrued, liquidated or un-liquidated, whether at law or in equity, matured or un-matured, whether class or individual in nature (i) that have been asserted in this Action or in the Chapter 11 Cases against any of the Released Parties relating to the purchase or sale of WMI common stock during the Class Period, including, without limitation, the Bankruptcy Claims, or (ii) that could have been asserted in the Action or the Chapter 11 Cases or in any forum against any of the Released Parties arising out of or based upon the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Complaint and which relate to the purchase or sale of WMI common stock during the Class Period.  For the avoidance of doubt, nothing contained herein shall be deemed to release, bar, waive, impair or otherwise impact:  (1) any claims to enforce the Settlement and the transactions required pursuant to the Settlement; (2) any claims belonging to the Debtors, their current affiliates or their successors in interest or otherwise asserted by the Debtors, their current affiliates or their successors in interest against any other Released Party, or any Released Party's defenses, counterclaims or claims for indemnification, if any—other than claims for indemnification with respect to payments made to defend or settle the Action—with respect thereto; (3) claims by any Released Party against the Debtors in the Chapter 11 Cases, including indemnification claims—other than claims for indemnification with respect to payments made to defend or settle the Action—or the Debtors' defenses and counterclaims with respect thereto; <u>provided</u>, <u>however</u>, that, to the extent that any Contributing Carriers claim subrogation rights against the Debtors on the basis of the Released Parties' indemnification claims, all such claims and the Debtors' defenses with respect thereto are expressly preserved; (4) except to the extent released pursuant to the settlement agreement in the class action styled *In re Washington Mutual, Inc. ERISA Litigation*, Lead Case No. 07-cv-1874 (W.D. Wash.), claims, if any, by any Class Member against the Released Parties arising under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. ("ERISA") that are separate and do not arise from or relate to the claims asserted in the Action; (5) claims by any Class Member individually in the Chapter 11 Cases based solely upon such Class Member's status as a holder or beneficial owner (as opposed to a purchaser) of any WMI debt or equity security with respect to their right to participate in the distribution of funds in the Chapter 11 Cases upon confirmation of a chapter 11 plan or otherwise solely to the extent that such distribution is being made on account of such security and not in any way arising from or related to being a Class Member; or (6) any Class Member's right to participate in the distribution of any funds recovered from any of Defendants by any governmental or regulatory agency.

"Released Parties" means WMI, the Individual Defendants, Chapman, Longbrake, Vanasek, McCarthy and any and all of their past or present subsidiaries, parents, successors and predecessors, officers, directors, agents, employees, attorneys, advisors, investment advisors, auditors, accountants, insurers, and any person, firm, trust, corporation,

officer, director or other individual or entity in which WMI, the Individual Defendants or Longbrake, Chapman, McCarthy and Vanasek has or has had a controlling interest or which was or is related to or affiliated with WMI or any of the Individual Defendants, and the legal representatives, marital communities, heirs, successors in interest or assigns of any of the foregoing.  For the avoidance of doubt, notwithstanding the designation of a party as a "Released Party," the Settlement Agreement only operates to release the Released Party from a claim, counterclaim or defense that is a Released Claim.

The "Effective Date" will occur when an Order entered by the Court approving the Settlement becomes final and not subject to appeal, and all of the other conditions to effectiveness contained in paragraph 25 of the Settlement Agreement have occurred.

If you remain a member of the Class, all of the Court's orders will apply to you and legally bind you.

| | |
|---|---|
| ***13.*** | ***Will the Settlement affect any individual claim that I might have in the Chapter 11 Cases?*** |

If the Effective Date of the Settlement occurs, Class Members will release only the Released Claims, including the Bankruptcy Claims filed in the Chapter 11 Cases by Lead Plaintiffs individually and on behalf of the Class.  The Settlement shall not in any way release, impair, or otherwise impact any claim or right to recovery of any Class Member individually in the Chapter 11 Cases based solely upon his, her, or its status as a holder (as opposed to a purchaser) or beneficial owner of a WMI debt or equity security with respect to the rights to participate in the distribution of funds in the Chapter 11 Cases upon confirmation of a chapter 11 plan or otherwise solely to the extent that such distribution is being made on account of such debt or equity security and not in any way arising from or related to being a Class Member.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not want a payment from this Settlement, but you want to keep any right you may have to sue or continue to sue Defendants and the other Released Parties, on your own, about the Released Claims, then you must take steps to get out.  This is called excluding yourself — also sometimes referred to as "opting out" of the Class.  The Individual Defendants may withdraw from and terminate the Settlement if putative Class Members who purchased in excess of a certain amount of WMI common stock exclude themselves from the Class.

| | |
|---|---|
| ***14.*** | ***How do I get out of the proposed Settlement?*** |

To exclude yourself from the Class , you must send a signed letter by mail stating that you "request exclusion from the Class in *South Ferry LP #2 v. Kerry K. Killinger, et al.*, Case No. C04-1599-JCC."  Your letter should state the date(s), price(s), and number(s) of shares of all your purchases and sales of WMI common stock during the Class Period.  In addition, be sure to include your name, address, telephone number, and your signature.  You must mail your exclusion request postmarked no later than **May 4, 2012** to:

WaMu 2004 Common Stock Litigation
EXCLUSIONS
c/o Rust Consulting, Inc., Claims Administrator
Post Office Box 2493
Faribault, MN  55021-9193

You cannot exclude yourself by telephone or by e-mail.  If you ask to be excluded, you will not get any settlement payment, and you cannot object to the settlement.  You will not be legally bound by anything that happens in this lawsuit, and you may be able to sue (or continue to sue) Defendants and the other Released Parties in the future.

| | |
|---|---|
| ***15.*** | ***If I do not exclude myself, can I sue Defendants and the other Released Parties for the same thing later?*** |

No.  Unless you exclude yourself from the Class, you give up any rights to sue the Defendants and the other Released Parties for any and all Released Claims.  If you have a pending lawsuit speak to your lawyer in that case immediately.  You must exclude yourself from *this* Class to continue your own lawsuit.  Remember, the exclusion deadline is **May 4, 2012**.

| 16. | If I exclude myself, can I get money from the proposed Settlement? |
|---|---|

No.  If you exclude yourself, do not send in a Proof of Claim form to ask for any money.  But, you may exercise any right you may have to sue, continue to sue, or be part of a different lawsuit against Defendants and the other Released Parties.

## THE LAWYERS REPRESENTING THE CLASS

| 17. | Do I have a lawyer in this case? |
|---|---|

The Court ordered that the law firm of Milberg LLP in New York, NY and Motley Rice LLC in Hartford, CT will represent the Class.  These lawyers are called Plaintiffs' Co-Lead Counsel.  You will not be separately charged for these lawyers.  The Court will determine the amount of Plaintiffs' Co-Lead Counsel's fees and expenses, which will be paid from the Gross Settlement Fund.  If you want to be represented by your own lawyer, you may hire one at your own expense.

| 18. | How will the lawyers be paid? |
|---|---|

Plaintiffs' Co-Lead Counsel are moving the Court to award attorneys' fees from the Gross Settlement Fund in an amount not to exceed one-third (33⅓%) of the Gross Settlement Fund and for reimbursement of their expenses in the approximate amount of $1,000,000.00 plus interest on such expenses at the same rate as earned by the Settlement Fund.

The motion for attorneys' fees will be submitted on behalf of Plaintiffs' Co-Lead Counsel and the following additional Plaintiffs' Counsel:  Law Offices of Clifford A. Cantor, P.C., 627 208th Ave. SE, Sammamish, Washington  98074-7033; Bull & Lifshitz, LLP, 18 East 41st Street, 11th Floor, New York, New York  10017; Kahn Swick & Foti, LLC, 206 Covington Street, Madisonville, Louisiana  70447; and Sturman LLC, 112 Madison Ave., 7th Floor, New York, New York  10016-7416.

Plaintiffs' Co-Lead Counsel, without further notice to the Class, will subsequently apply to the Court for payment of the Claims Administrator's fees and expenses incurred in connection with giving notice, administering the Settlement and distributing the Net Settlement Fund to the members of the Class.

## OBJECTING TO THE SETTLEMENT

You can tell the Court that you do not agree with the Settlement or some part of it.

| 19. | How do I tell the Court that I do not like the proposed Settlement? |
|---|---|

If you are a Class Member you can object to the Settlement or any of its terms, the proposed Plan of Allocation and/or the application by Plaintiffs' Co-Lead Counsel for an award of fees and expenses.  You may write to the Court setting out your objection.  You may give reasons why you think the Court should not approve any or all of the Settlement terms or arrangements.  The Court will consider your views if you file a proper objection within the deadline identified, and according to the following procedures.

To object, you must send a signed letter stating that you object to the proposed Settlement in *South Ferry LP #2 v. Kerry K. Killinger, et al.*, Case No. C04-1599-JCC.  Be sure to include your name, address, telephone number, and your signature, identify the date(s), price(s), and number(s) of shares of all purchases and sales of WMI common stock that you made during the Class Period, and state the reasons why you object to the Settlement.  Your objection must be filed with the Court and served on all the following counsel on or before **May 4, 2012**:

> **COURT:**
> Clerk of the Court
> United States District Court
>  for the Western District of Washington at Seattle
> U.S. Courthouse
> 700 Stewart Street
> Seattle, WA  98101

**PLAINTIFFS' CO-LEAD COUNSEL:**

Lori G. Feldman
Milberg LLP
One Penn Plaza
New York, NY  10119-0165

William H. Narwold
Motley Rice LLC
One Corporate Center
20 Church Street, 17th Floor
Hartford, CT  06103

**FOR DEFENDANTS:**

Steven Caplow
Davis Wright Tremaine LLP
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045

Barry M. Kaplan
Wilson Sonsini Goodrich & Rosati,
  Professional Corporation
701 Fifth Avenue, Suite 5100
Seattle, WA  98104

**Counsel for Defendant Thomas W. Casey**

**Counsel for Defendant Kerry K. Killinger**

Judith L. Mogul
Morvillo, Abramowitz, Grand,
  Iason, Anello & Bohrer, P.C.
565 Fifth Avenue
New York, NY  10017

**Counsel for Defendant Deanna W. Oppenheimer**

You do not need to go to the Settlement Fairness Hearing to have your written objection considered by the Court.  At the Settlement Fairness Hearing, any Class Member who has not previously submitted a request for exclusion from the Class and who has complied with the procedures set out in this question 19 and question 23 below for filing with the Court and providing to the counsel for Plaintiffs and Defendants a statement of an intention to appear at the Settlement Fairness Hearing may also appear and be heard, to the extent allowed by the Court, to state any objection to the Settlement, the Plan of Allocation or Plaintiffs' Co-Lead Counsel's motion for an award of attorneys' fees and reimbursement of expenses.  Any such objector may appear in person or arrange, at that objector's expense, for a lawyer to represent the objector at the Hearing.

| **20.**    **What is the difference between objecting and excluding?** |
| --- |

Objecting is simply telling the Court that you do not like something about the proposed Settlement.  You can object only if you stay in the Class.  Excluding yourself is telling the Court that you do not want to be part of the Class.  If you exclude yourself, you have no basis to object to the Settlement because the Settlement no longer affects you.

## THE COURT'S SETTLEMENT FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the proposed Settlement.  You may attend and you may ask to speak, but you do not have to.

| **21.**    **When and where will the Court decide whether to approve the proposed Settlement?** |
| --- |

The Court will hold a Settlement Fairness Hearing at **9:30 a.m.** on **Tuesday, June 5, 2012**, at the United States District Court for the Western District of Washington at Seattle, U.S. Courthouse, 700 Stewart Street, Seattle, Washington 98101.  At this hearing the Court will consider whether the Settlement is fair, reasonable and adequate. At the Settlement Fairness Hearing, the Court also will consider the proposed Plan of Allocation for the proceeds of the Settlement and the application of Plaintiffs' Co-Lead Counsel for attorneys' fees and reimbursement of expenses.  The Court will take into consideration any written objections filed in accordance with the instructions at question 19.  The Court also may listen to people who have properly indicated, within the deadline identified above, an intention to speak at the hearing; but decisions regarding the conduct of the hearing will be made by the Court.  *See* question 23 for more information about speaking at the hearing.  The Court may also decide how much to pay to Plaintiffs' Counsel.  After the hearing, the Court will decide whether to approve the settlement.  We do not know how long these decisions will take.

You should be aware that the Court may change the date and time of the Settlement Fairness Hearing.  Thus, if you want to come to the hearing, you should check with Plaintiffs' Co-Lead Counsel before coming to be sure that the date and/or time has not changed.  Please note that the Court may modify the proposed Settlement or the proposed Plan of Allocation without further notice to the Class.

| **22.** | **Do I have to come to the hearing?** |
|---|---|

No.  Plaintiffs' Counsel will answer questions the Court may have.  But, you are welcome to come at your own expense.  If you send an objection, you do not have to come to Court to talk about it.  As long as you filed your written objection on time, the Court will consider it.  You may also pay your own lawyer to attend, but it is not necessary.  Class Members do not need to appear at the hearing or take any other action to indicate their approval.

| **23.** | **May I speak at the hearing?** |
|---|---|

If you object to the Settlement, you may ask the Court for permission to speak at the Settlement Fairness Hearing.  To do so, you must include with your objection (see question 19 above) a statement stating that it is your "Notice of Intention to Appear in *South Ferry LP #2 v. Kerry K. Killinger, et al.*, Case No. C04-1599-JCC."  Persons who intend to object to the Settlement, the Plan of Allocation, and/or counsel's application for an award of attorneys' fees and expenses and desire to present evidence at the Settlement Fairness Hearing must include in their written objections the identity of any witnesses they may call to testify and exhibits they intend to introduce into evidence at the Settlement Fairness Hearing.  Unless otherwise ordered by the Court, you cannot speak at the hearing if you excluded yourself from the Class or if you have not provided written notice of your intention to speak at the Settlement Fairness Hearing by the deadline identified, and in accordance with the procedures described in questions 19 and 21 above.

## IF YOU DO NOTHING

| **24.** | **What happens if I do nothing at all?** |
|---|---|

If you do nothing, you will get no money from this Settlement and you will be precluded from starting a lawsuit, continuing with a lawsuit, or being part of any other lawsuit against Defendants and the other Released Parties about the Released Claims, ever again.  To share in the Net Settlement Fund you must submit a Proof of Claim form (see question 10).  To start, continue or be a part of any other lawsuit against the Defendants and the other Released Parties about the Released Claims you must exclude yourself from this Class (see question 14).

## GETTING MORE INFORMATION

| **25.** | **Are there more details about the proposed Settlement?** |
|---|---|

This Notice summarizes the proposed Settlement.  More details are in the Settlement Agreement.  You can get a copy of the Settlement Agreement by visiting ***www.WaMu2004CommonStockLitigation.com*** or by writing to Lori G. Feldman, Milberg LLP, One Penn Plaza, New York, New York 10119-0165 or to William H. Narwold, Motley Rice LLC, One Corporate Center, 20 Church Street, 17th Floor, Hartford, Connecticut  06103.

You also can call the Claims Administrator toll free at (877) 310-0495; write to WaMu 2004 Common Stock Litigation, c/o Rust Consulting, Inc., Claims Administrator, Post Office Box 2493, Faribault, MN  55021-9193; or visit the website at ***www.WaMu2004CommonStockLitigation.com***, where you will find answers to common questions about the Settlement, a Proof of Claim form, plus other information to help you determine whether you are a Class Member and whether you are eligible for a payment.  Plaintiffs' Counsel anticipate filing their papers in support of the Settlement, Plan of Allocation and their application for an award of fees and reimbursement of expenses with the Court and posting their submission on the website by April 13, 2012.

| **26.** | **How do I get more information?** |
|---|---|

For even more detailed information concerning the matters involved in this Action, you may refer to the pleadings, to the Settlement Agreement, to the Orders entered by the Court and to the other papers filed in the Action, which may be inspected at the Office of the Clerk of the United States District Court for the Western District of Washington at Seattle, U.S. Courthouse, 700 Stewart Street, Seattle, Washington 98101, during regular business hours.

## PLAN OF ALLOCATION OF NET SETTLEMENT FUND AMONG CLASS MEMBERS

The $41,500,000 Cash Settlement Amount and the interest earned thereon shall be the Gross Settlement Fund.  The Gross Settlement Fund, less all taxes, approved costs, fees and expenses (the "Net Settlement Fund") shall be distributed to members of the Class who file acceptable Proofs of Claim ("Authorized Claimants").

The Claims Administrator shall determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's "Recognized Claim" from purchases of WMI common stock during the Class Period from April 15, 2003 through June 28, 2004, inclusive.

The following proposed Plan of Allocation reflects the Lead Plaintiffs' proposition that the decreases in the price of WMI common stock occurring upon the revelations made on September 9, 2003, December 9, 2003, June 2, 2004 and June 28, 2004 reflected the elimination of artificial inflation that Defendants' alleged misrepresentations caused.

On September 8, 2003, WMI's common stock closed at $39.70 per share.  On September 9, 2003, following pre-close announcements, WMI's common stock closed at $38.86 per share, a $0.84 drop.  Part of this drop may be explained by the drop in the price of WMI's peer companies, so $0.81 of the drop is "recognized" under the Plan.  The reaction continued on September 10, 2003 as the price declined another $1.67 to close at $37.19. Again, because peer companies stock declined on this day, $1.27 of WMI's price decline will be recognized in the Plan.

On December 8, 2003, WMI's common stock closed at $43.85 per share.  On the next day, December 9, 2003, and following the announcement, WMI's common stock closed at $39.97 per share, a $3.88 drop. Because the stock price of WMI's peer companies also dropped, $3.63 of this drop will be recognized. The reaction continued on December 10, 2003 as the price declined another $1.40 to close at $38.57. Again, because WMI's peer companies stock declined on this day, $1.31 of WMI's price decline will be recognized in the Plan.

On June 1, 2004, WMI's common stock closed at $42.99 per share.  On June 2, 2004, following a pre-close announcement, WMI's common stock closed at $41.43 per share, a $1.56 drop.  Part of this decline could be attributed to a separate announcement by HSBC Bank dampening expectations that HSBC might be interested in acquiring WMI, so $0.37 of this price decline will be recognized under the Plan.

On June 28, 2004, WMI's common stock closed at $41.31 per share.  On June 29, 2004, following an announcement made after the close of trading on June 28, WMI's common stock closed at $38.47 per share, a $2.84 drop.  Again, because WMI's peer companies stock declined on this day, $2.71 of WMI's price decline will be recognized in the Plan.

During the 90 day period following the end of the Class Period, ending on September 24, 2004, the average trading price of WMI common stock, measured at the daily closing prices, was $38.8956 per share. "Recognized Claims" will be calculated for purposes of the Settlement as follows:

(A)      For shares of WMI common stock purchased during the period April 15, 2003 through September 8, 2003, inclusive, and

(1)      Sold on or before September 8, 2003, an Authorized Claimant shall have zero ($0.00) "Recognized Claim."

(2)      Sold at a loss[4] on September 9, 2003, an Authorized Claimant's "Recognized Claim" shall mean the lesser of: (a) $0.81 per share, or (b) the purchase price (including commissions, etc.) less the sales proceeds received (net of commissions, etc.).

(3)      Sold at a loss during the period September 10, 2003 through and including December 8, 2003, an Authorized Claimant's "Recognized Claim" shall mean the lesser of: (a) $2.08 per share, or (b) the purchase price (including commissions, etc.) less the sales proceeds received (net of commissions, etc.).

(4)      Sold at a loss on December 9, 2003, an Authorized Claimant's "Recognized Claim" shall mean the lesser of:  (a) $5.71 per share, or (b) the purchase price (including commissions, etc.) less the sales proceeds received (net of commissions, etc.).

(5)      Sold at a loss during the period December 10, 2003 through and including June 1, 2004, an Authorized Claimant's "Recognized Claim" shall mean the lesser of:  (a) $7.02 per share, or (b) the purchase price (including commissions, etc.) less the sales proceeds received (net of commissions, etc.).

---

[4]      Any WMI shares sold at a gain shall have zero ($0.00) Recognized Claim.  WMI shares purchased during the Class Period for less than $38.8956 per share and still held at the close of trading on September 24, 2004 shall have zero ($0.00) Recognized Claim.

(6)      Sold at a loss during the period June 2, 2004 through and including June 28, 2004, an Authorized Claimant's "Recognized Claim" shall mean the lesser of:  (a) $7.39 per share, or (b) the purchase price (including commissions, etc.) less the sales proceeds received (net of commissions, etc.).

(7)      Sold at a loss during the period June 29, 2004 through and including September 24, 2004, an Authorized Claimant's "Recognized Claim" shall mean the lesser of:  (a) $10.10 per share, or (b) the purchase price (including commissions, etc.) less the sales proceeds received (net of commissions, etc.).

(8)      Held at the close of trading on September 24, 2004, an Authorized Claimant's "Recognized Claim" shall mean the lesser of: (a) $10.10 per share, or (b) the purchase price (including commissions, etc.) less $38.8956 per share.

(B)      For shares of WMI common stock purchased on September 9, 2003, and

(1)      Sold on or before September 9, 2003, an Authorized Claimant shall have zero ($0.00) "Recognized Claim."

(2)      Sold at a loss during the period September 10, 2003 through and including December 8, 2003, an Authorized Claimant's "Recognized Claim" shall mean the lesser of:  (a) $1.27 per share, or (b) the purchase price (including commissions, etc.) less the sales proceeds received (net of commissions, etc.).

(3)      Sold at a loss on December 9, 2003, an Authorized Claimant's "Recognized Claim" shall mean the lesser of: (a) $4.90 per share, or (b) the purchase price (including commissions, etc.) less the sales proceeds received (net of commissions, etc.).

(4)      Sold at a loss during the period December 10, 2003 through and including June 1, 2004, an Authorized Claimant's "Recognized Claim" shall mean the lesser of:  (a) $6.21 per share, or (b) the purchase price (including commissions, etc.) less the sales proceeds received (net of commissions, etc.).

(5)      Sold at a loss during the period June 2, 2004 through and including June 28, 2004, an Authorized Claimant's "Recognized Claim" shall mean the lesser of:  (a) $6.58 per share, or (b) the purchase price (including commissions, etc.) less the sales proceeds received (net of commissions, etc.).

(6)      Sold at a loss during the period June 29, 2004 through and including September 24, 2004, an Authorized Claimant's "Recognized Claim" shall mean the lesser of:  (a) $9.29 per share, or (b) the purchase price (including commissions, etc.) less the sales proceeds received (net of commissions, etc.).

(7)      Held at the close of trading on September 24, 2004, an Authorized Claimant's "Recognized Claim" shall mean the lesser of:  (a) $9.29 per share, or (b) the purchase price (including commissions, etc.) less $38.8956 per share.

(C)      For shares of WMI common stock purchased during the period September 10, 2003 through December 8, 2003, inclusive, and

(1)      Sold on or before December 8, 2003, an Authorized Claimant shall have zero ($0.00) "Recognized Claim."

(2)      Sold at a loss on December 9, 2003, an Authorized Claimant's "Recognized Claim" shall mean the lesser of:  (a) $3.63 per share, or (b) the purchase price (including commissions, etc.) less the sales proceeds received (net of commissions, etc.).

(3)      Sold at a loss during the period December 10, 2003 through and including June 1, 2004, an Authorized Claimant's "Recognized Claim" shall mean the lesser of:  (a) $4.94 per share, or (b) the purchase price (including commissions, etc.) less the sales proceeds received (net of commissions, etc.).

(4)      Sold at a loss during the period June 2, 2004 through and including June 28, 2004, an Authorized Claimant's "Recognized Claim" shall mean the lesser of:  (a) $5.31 per share, or (b) the purchase price (including commissions, etc.) less the sales proceeds received (net of commissions, etc.).

(5)      Sold at a loss during the period June 29, 2004 through and including September 24, 2004, an Authorized Claimant's "Recognized Claim" shall mean the lesser of:  (a) $8.02 per share, or (b) the purchase price (including commissions, etc.) less the sales proceeds received (net of commissions, etc.).

(6)      Held at the close of trading on September 24, 2004, an Authorized Claimant's "Recognized Claim" shall mean the lesser of: (a) $8.02 per share, or (b) the purchase price (including commissions, etc.) less $38.8956 per share.

(D)      For shares of WMI common stock purchased on December 9, 2003, and

(1)      Sold on or before December 9, 2003, an Authorized Claimant shall have zero ($0.00) "Recognized Claim."

(2)      Sold at a loss during the period December 10, 2003 through and including June 1, 2004, an Authorized Claimant's "Recognized Claim" shall mean the lesser of:  (a) $1.31 per share, or (b) the purchase price (including commissions, etc.) less the sales proceeds received (net of commissions, etc.).

(3)      Sold at a loss during the period June 2, 2004 through and including June 28, 2004, an Authorized Claimant's "Recognized Claim" shall mean the lesser of:  (a) $1.68 per share, or (b) the purchase price (including commissions, etc.) less the sales proceeds received (net of commissions, etc.).

(4)      Sold at a loss during the period June 29, 2004 through and including September 24, 2004, an Authorized Claimant's "Recognized Claim" shall mean the lesser of: (a) $4.39 per share, or (b) the purchase price (including commissions, etc.) less the sales proceeds received (net of commissions, etc.).

(5)      Held at the close of trading on September 24, 2004, an Authorized Claimant's "Recognized Claim" shall mean the lesser of:  (a) $8.02 per share, or (b) the purchase price (including commissions, etc.) less $38.8956 per share.

(E)      For shares of WMI common stock purchased during the period December 10, 2003 through June 1, 2004, inclusive, and

(1)      Sold on or before June 1, 2004, an Authorized Claimant shall have zero ($0.00) "Recognized Claim."

(2)      Sold at a loss during the period June 2, 2004 through and including June 28, 2004, an Authorized Claimant's "Recognized Claim" shall mean the lesser of:  (a) $0.37 per share, or (b) the purchase price (including commissions, etc.) less the sales proceeds received (net of commissions, etc.).

(3)      Sold at a loss during the period June 29, 2004 through and including September 24, 2004, an Authorized Claimant's "Recognized Claim" shall mean the lesser of:  (a) $3.08 per share, or (b) the purchase price (including commissions, etc.) less the sales proceeds received (net of commissions, etc.).

(4)      Held at the close of trading on September 24, 2004, an Authorized Claimant's "Recognized Claim" shall mean the lesser of:  (a) $3.08 per share, or (b) the purchase price (including commissions, etc.) less $38.8956 per share.

(F)      For shares of WMI common stock purchased during the period June 2, 2004 through June 28, 2004, inclusive, and

(1)      Sold on or before June 28, 2004, an Authorized Claimant shall have zero ($0.00) "Recognized Claim."

(2)      Sold at a loss during the period June 29, 2004 through and including September 24, 2004, an Authorized Claimant's "Recognized Claim" shall mean the lesser of: (a) $2.71 per share, or (b) the purchase price (including commissions, etc.) less the sales proceeds received (net of commissions, etc.).

(3)      Held at the close of trading on September 24, 2004, an Authorized Claimant's "Recognized Claim" shall mean the lesser of:  (a) $2.71 per share, or (b) the purchase price (including commissions, etc.) less $38.8956 per share.

Each Authorized Claimant shall be allocated a *pro rata* share of the Net Settlement Fund based on his, her or its Recognized Claim compared to the Total Recognized Claims of all accepted claimants.  Every Authorized Claimant with a valid Recognized Claim shall receive a distribution amount of at least $10.00.

Class Members who do not submit acceptable Proofs of Claim will not share in the settlement proceeds.  Class Members who do not either submit a request for exclusion or submit an acceptable Proof of Claim will nevertheless be bound by the judgment and the Settlement.

In the event a Class Member has more than one purchase or sale of WMI common stock during the Class Period, all Class Period purchases and Class Period sales shall be matched on a First In First Out ("FIFO") basis.  A purchase or sale of WMI common stock shall be deemed to have occurred on the "contract" or "trade" date as opposed to the "settlement" or "payment" date.  The grant by gift, devise or operation of law of WMI common stock during the Class Period shall not be deemed a purchase or sale of WMI common stock for the calculation of an Authorized Claimant's Recognized Claim nor shall it be deemed an assignment of any claim relating to the purchase of such shares unless specifically provided in the instrument of gift or assignment.  The receipt of WMI common stock during the Class Period in exchange for securities of any other corporation or entity shall not be deemed a purchase or sale of WMI common stock.

Distributions will be made to Authorized Claimants after all claims have been processed and after the Court has finally approved the Settlement.  If any funds remain in the Net Settlement Fund by reason of un-cashed distributions or otherwise, then, after the Claims Administrator has made reasonable and diligent efforts to have Class Members who are entitled to participate in the distribution of the Net Settlement Fund cash their distributions, any balance remaining in the Net Settlement Fund one (1) year after the initial distribution of such funds shall be re-distributed to Class

Members who have cashed their initial distributions and who would receive at least $10.00 from such re-distribution, after payment of any unpaid costs or fees incurred in administering the Net Settlement Fund for such re-distribution.  If six months after such re-distribution, funds in excess of $100,000 remain in the Cash Settlement Accounts, then such funds shall be further re-distributed to Authorized Claimants who have cashed their most recent re-distribution and who would receive at least $10.00 from such further re-distribution, after payment of any unpaid costs or fees incurred in administering the Cash Settlement Accounts for such re-distribution. The redistributions shall continue until less than $100,000 remains, after which such balance shall be contributed to non-sectarian, not-for-profit 501(c)(3) organization(s) to be designated by Plaintiffs' Co-Lead Counsel.

Plaintiffs, Defendants, their respective counsel, and the Released Parties shall have no responsibility for or liability whatsoever for the investment or distribution of the Settlement Fund, the Net Settlement Fund, the Plan of Allocation or the determination, administration, calculation, or payment of any Proof of Claim or non-performance of the Claims Administrator, the payment or withholding of taxes owed by the Settlement Fund or any losses incurred in connection therewith.

## SPECIAL NOTICE TO SECURITIES BROKERS AND OTHER NOMINEES

If you purchased the common stock of Washington Mutual, Inc. between April 15, 2003 and June 28, 2004, inclusive, for the beneficial interest of a person or organization other than yourself, the Court has directed that, WITHIN SEVEN (7) DAYS OF YOUR RECEIPT OF THIS NOTICE, you either (a) provide to the Claims Administrator the name and last known address of each person or organization for whom or which you purchased WMI common stock during such time period or (b) request additional copies of this Notice and the Proof of Claim form, which will be provided to you free of charge, and within seven (7) days mail the Notice and Proof of Claim form directly to the beneficial owners of that WMI common stock.  If you choose to follow alternative procedure (b), the Court has directed that, upon such mailing, you send a statement to the Claims Administrator confirming that the mailing was made as directed.  You are entitled to reimbursement from the Gross Settlement Fund of your reasonable expenses actually incurred in connection with the foregoing, including reimbursement of postage expense and the cost of ascertaining the names and addresses of beneficial owners.  Those expenses will be paid upon request and submission of appropriate supporting documentation. All communications concerning the foregoing should be addressed to the Claims Administrator:

WaMu 2004 Common Stock Litigation
c/o Rust Consulting, Inc.
Claims Administrator
Post Office Box 2493
Faribault, MN  55021-9193
(877) 310-0495

Dated:      Seattle, Washington
             February 17, 2012                         By Order of the Court
                                                  CLERK OF THE COURT

WaMu 2004 Common Stock Litigation
c/o Rust Consulting, Inc.
Claims Administrator
Post Office Box 2493
Faribault, MN  55021-9193


**IMPORTANT COURT DOCUMENTS**

# EXHIBIT B

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| SOUTH FERRY LP #2, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) | Case No. C04-1599-JCC |
| vs. | ) ) | PROOF OF CLAIM AND RELEASE |
| KERRY K. KILLINGER, *et al.*, | ) ) | |
| Defendants. | ) ) | |

DEADLINE FOR SUBMISSION: JULY 2, 2012.

IF YOU PURCHASED THE COMMON STOCK OF WASHINGTON MUTUAL, INC. ("WMI") BETWEEN APRIL 15, 2003 AND JUNE 28, 2004, INCLUSIVE ("CLASS PERIOD")[1], AND WERE DAMAGED THEREBY, YOU ARE A "CLASS MEMBER" AND YOU MAY BE ENTITLED TO SHARE IN THE SETTLEMENT PROCEEDS.

Excluded from the Class are Washington Mutual, Inc. and the Individual Defendants; former defendants William W. Longbrake, Craig J. Chapman, James G. Vanasek and Michelle McCarthy; any other officers and directors of WMI during the Class Period; members of their immediate families and their legal representatives, heirs, successors or assigns; and any entity in which any of the Defendants or former defendants have or had a controlling interest.

IF YOU ARE A CLASS MEMBER, YOU MUST COMPLETE AND SUBMIT THIS FORM IN ORDER TO BE ELIGIBLE FOR ANY SETTLEMENT BENEFITS.

YOU MUST COMPLETE AND SIGN THIS PROOF OF CLAIM AND MAIL IT BY FIRST CLASS MAIL, POSTMARKED NO LATER THAN JULY 2, 2012 TO THE FOLLOWING ADDRESS:

WaMu 2004 Common Stock Litigation
c/o Rust Consulting, Inc.
Claims Administrator
Post Office Box 2493
Faribault, MN  55021-9193

YOUR FAILURE TO SUBMIT YOUR CLAIM BY JULY 2, 2012 WILL SUBJECT YOUR CLAIM TO REJECTION AND PRECLUDE YOUR RECEIVING ANY MONEY IN CONNECTION WITH THE SETTLEMENT OF THIS LITIGATION. DO NOT MAIL OR DELIVER YOUR CLAIM TO THE COURT OR TO ANY OF THE PARTIES OR THEIR COUNSEL AS ANY SUCH CLAIM WILL BE DEEMED NOT TO HAVE BEEN SUBMITTED. SUBMIT YOUR CLAIM ONLY TO THE CLAIMS ADMINISTRATOR.

NOTICE REGARDING ELECTRONIC FILES: Certain claimants with large numbers of transactions may request to, or may be requested to, submit information regarding their transactions in the form of electronic files. All Claimants MUST submit a manually signed paper Proof of Claim form listing all their transactions whether or not they also submit electronic copies. If you wish to file your claim electronically, you must contact the Claims Administrator at (877) 310-0495 or visit their website at *www.WaMu2004CommonStockLitigation.com* to obtain the required file layout. No electronic files will be considered to have been properly submitted unless the Claims Administrator issues to the Claimant a written acknowledgment of receipt and acceptance of electronically submitted data.

Instructions – Page 1 of 2

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Settlement Agreement.

NOTE: Separate Proofs of Claim should be submitted for each separate legal entity (for example, a claim from Joint Owners should not include separate transactions of just one of the Joint Owners, an Individual should not combine his or her IRA transactions with transactions made solely in the Individual's name). Conversely, a single Proof of Claim should be submitted on behalf of one legal entity including all transactions made by that entity no matter how many separate accounts that entity has (for example, a Corporation with multiple brokerage accounts should include all transactions made in Washington Mutual, Inc. common stock during the Class Period on one Proof of Claim, no matter how many accounts the transactions were made in.)

Submission of a Proof of Claim does not guarantee you will share in the distribution from the Settlement Fund. Distributions from the Settlement Fund will be governed by the Court-approved Plan of Allocation. Please note that the Court may modify the Plan of Allocation without further notice to the Class.

You should be aware that it will take a significant amount of time to process fully all of the Proofs of Claim and to administer the Settlement. This work will be completed as promptly as time permits, given the need to investigate and tabulate each Proof of Claim. Please notify the Claims Administrator of any change of address.

## REMINDER CHECKLIST

1.  ☐   Please be sure to sign the Proof of Claim on page 4. If this Proof of Claim is submitted on behalf of joint claimants, then both claimants must sign.

2.  ☐   Please remember to attach supporting documents. Do NOT send any stock certificates. Keep copies of everything you submit.

3.  ☐   If you are acting in a representative, you must submit evidence of your current authority to act on behalf of that Class Member.

4.  ☐   Do NOT use highlighter on the Proof of Claim or any supporting documents.

5.  ☐   If you move after submitting this Proof of Claim, please notify the Claims Administrator of the change in your address.

## NOTE: RECEIPT ACKNOWLEDGMENT NEEDED

The Claims Administrator will send a written confirmation of its receipt of your Proof of Claim. Do not assume your claim is submitted until you receive written confirmation of its receipt. Your claim is not deemed fully filed until the Claims Administrator sends you written confirmation of its receipt of your Proof of Claim. If you do not receive an acknowledgement postcard within thirty (30) days of your mailing the Proof of Claim, then please call the Claims Administrator toll free at (877) 310-0495.

<table>
<tr><td>MUST BE POSTMARKED<br>NO LATER THAN<br>JULY 2, 2012</td><td><i>WaMu 2004 Common Stock Litigation</i><br>No. C04-1599-JCC<br><u>PROOF OF CLAIM AND RELEASE</u><br>Use Blue or Black Ink Only</td><td>For Official Use Only<br><br>01</td></tr>
</table>

**PART I.   CLAIMANT IDENTIFICATION** - Complete either Section A or B and then proceed to C.  Please type or print.

A.   Complete this Section ONLY if the Beneficial Owner is an individual, joint, or IRA account.  Otherwise, proceed to B.

Last Name (Beneficial Owner)

First Name (Beneficial Owner)

Last Name (Joint Beneficial Owner, if applicable)

First Name (Joint Beneficial Owner)

Name of IRA Custodian, if applicable

If this account is an IRA, and if you would like any check that you MAY be eligible to receive made payable to the IRA account, please include "IRA" in the "Last Name" box above (e.g., Jones IRA).

B.   Complete this Section ONLY if the Beneficial Owner is an Entity; i.e., corporation, trust, estate, etc.  Then, proceed to C.

Entity Name

Name of Representative, if applicable (Executor, administrator, trustee, c/o, etc.)

C.   Account/Mailing Information:

Specify one of the following:

☐ Individual/Sole Proprietor   ☐ Joint Owners   ☐ Corporation   ☐ IRA   ☐ Partnership   ☐ Pension Plan

☐ Trust   ☐ Other:

Number and Street or P.O. Box

City

State

Zip Code

Foreign Province and Postal Code

Foreign Country

Telephone Number (Day)

Telephone Number (Evening)

E-mail Address

Account Number

Enter Taxpayer Identification Number below for the Beneficial Owner(s).

Social Security No. (for individuals)   or   Taxpayer Identification No.

  

*YOU MUST SUBMIT DOCUMENTATION SUPPORTING THE INFORMATION BELOW.[2]*

**PART II:**     <u>SCHEDULE OF TRANSACTIONS IN WASHINGTON MUTUAL, INC. (WMI) COMMON STOCK</u>

A.    Number of shares of **Washington Mutual, Inc.** common stock *held* at the close of trading on
**April 14, 2003.**  (If none, write "zero" or "0"; if other than zero, must be documented)[3]

Number of Shares

B.    **P**urchases of Washington Mutual, Inc. common stock during the period **April 15, 2003** and **September 24, 2004**, inclusive (in chronological order).   (Persons who received Washington Mutual, Inc. common stock during the Class Period other than by purchase are not eligible to submit claims for those transactions.)

| Trade Date of Purchase *(List Chronologically)* Month/Day/Year | Number of Shares Purchased or Acquired | Purchase Price Per Share | Total Amount Paid *(Including Commissions Taxes & Fees)* |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

C.    Sales of Washington Mutual, Inc. common stock during the period **April** 15, 2003 and **September** 24, 2004, inclusive (in chronological order).  (If none, write "zero" or "0"; if other than zero, must be documented)

| Trade Date of Sale *(List Chronologically)* Month/Day/Year | Number of Shares Sold | Sale Price Per Share | Total Amount Received *(Excluding Commissions Taxes & Fees)* |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

D.    Number of shares of **Washington Mutual, Inc.** common stock *held* at the close of trading on
September 24, 2004.  (If none, write "zero" or "0"; if other than zero, must be documented)

Number of Shares

*If you require additional space, attach extra schedules in the same format as above.*
*Sign and print your name on each additional page.*

---

[2]   Documentation to show a purchase or sale should normally include a trade confirmation slip or a monthly statement showing the trade.
[3]   Documentation to show holding would commonly include the monthly brokerage statement for the account in which the stock was held.



PART III:   <u>CLAIMANT'S STATEMENT</u>

1.      I affirm that I purchased the common stock of Washington Mutual, Inc. ("WMI") between April 15, 2003 and June 28, 2004, inclusive.  (Do not submit this Proof of Claim if you did not purchase Washington Mutual, Inc. common stock during this period).

2.      By submitting this Proof of Claim, I state that I believe in good faith that I am a Class Member as defined above and in the Notice of Pendency of Class Action and Proposed Settlement, Motion for Attorneys' Fees, and Settlement Fairness Hearing (the "Notice"), or am acting for such person; that I am not a Defendant in the Action or anyone excluded from the Class; that I have read and understand the Notice; that I believe that I am entitled to receive a share of the Net Settlement Fund; that I elect to participate in the proposed Settlement described in the Notice; and that I have not filed a request for exclusion.  (If you are acting in a representative capacity on behalf of a Class Member (for example, as an executor, administrator, trustee, or other representative), you must submit evidence of your current authority to act on behalf of that Class Member.  Such evidence would include, for example, letters testamentary, letters of administration, or a copy of the trust documents.)

3.      I consent to the jurisdiction of the Court with respect to all questions concerning the validity of this Proof of Claim.  I understand and agree that my claim may be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to my status as a Class Member and the validity and amount of my claim.  No discovery shall be allowed on the merits of the Action or Settlement in connection with processing of the Proofs of Claim.

4.      I have set forth where requested above all relevant information with respect to each purchase of Washington Mutual, Inc. common stock during the Class Period, and each sale, if any, of such securities.  I agree to furnish additional information (including transactions in other Washington Mutual, Inc. securities) to the Claims Administrator to support this claim if requested to do so.

5.      I have enclosed photocopies of the stockbroker's confirmation slips, stockbroker's statements, or other documents evidencing each purchase, sale or retention of Washington Mutual, Inc. common stock listed below in support of my claim.  IF ANY SUCH DOCUMENTS ARE NOT IN YOUR POSSESSION, PLEASE OBTAIN A COPY OR EQUIVALENT DOCUMENTS FROM YOUR BROKER BECAUSE THESE DOCUMENTS ARE NECESSARY TO PROVE AND PROCESS YOUR CLAIM.  IF YOU HAVE QUESTIONS ABOUT WHAT TYPES OF DOCUMENTS SUFFICE TO SUPPORT A CLAIM, PLEASE CONTACT THE CLAIMS ADMINISTRATOR AT (877) 310-0495.

6.      I understand that the information contained in this Proof of Claim is subject to such verification as the Claims Administrator may request or as the Court may direct, and I agree to cooperate in any such verification.  (The information requested herein is designed to provide the minimum amount of information necessary to process most simple claims.  The Claims Administrator may request additional information as required to efficiently and reliably calculate your Recognized Claim.  In some cases the Claims Administrator may condition acceptance of the claim based upon the production of additional information, including, where applicable, information concerning transactions in any derivatives of the subject securities such as options.)

7.      I hereby acknowledge that, upon the occurrence of the Effective Date, by operation of law, I on behalf of myself and on behalf of my heirs, executors, administrators, predecessors, successors, and assigns (or, if I am submitting this Proof of Claim on behalf of a corporation, a partnership, estate or one or more other persons, I on behalf of it, him, her or them and on behalf of its, his, her or their heirs, executors, administrators, predecessors, successors, and assigns) shall fully and forever release, remise and discharge each of the "Released Parties" of all "Released Claims," as defined in the Notice.

8.      Request for Taxpayer Identification Number:

Enter taxpayer identification number below for the Beneficial Owner(s).  For most individuals, this is your Social Security Number.  The Internal Revenue Service ("I.R.S.") requires such taxpayer identification number.  If you fail to provide this information, your claim may be rejected.

Social Security Number            or     Employer Identification Number

___ ___ ___ — ___ ___ — ___ ___ ___ ___                ___ ___ — ___ ___ ___ ___ ___ ___ ___



9.    Certification

I (We) certify that I am (we are) NOT subject to backup withholding under the provisions of Section 3406 (a)(1)(c) of the Internal Revenue Code because:  (a) I am (We are) exempt from backup withholding, or (b) I (We) have not been notified by the I.R.S. that I am (we are) subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the I.R.S. has notified me (us) that I am (we are) no longer subject to backup withholding.

NOTE:  If you have been notified by the I.R.S. that you are subject to backup withholding, please strike out the language that you are not subject to backup withholding in the certification above.

UNDER THE PENALTIES OF PERJURY, I (WE) CERTIFY THAT ALL OF THE INFORMATION I (WE) PROVIDED ON THIS PROOF OF CLAIM FORM IS TRUE, CORRECT AND COMPLETE.

Executed this _____ day of _____, 201__ in _____, _____.
                                                                                                                (City)                                           (State/Country)

|  |  |
|---|---|
|  |  |

Signature of Claimant                                                          (Type/print name of Claimant)

|  |  |
|---|---|
|  |  |

Signature of Joint Claimant, if any                                        (Type/print name of Joint Claimant, if any)

*If Claimant is other than an individual, or is not the person completing this form, the following also must be provided:*

|  |  |
|---|---|
|  |  |

Signature of person signing on behalf of Claimant              (Type/print name of person signing on behalf of Claimant)

|  |
|---|
|  |

Capacity of person signing on behalf of Claimant, if other than an individual (e.g., Administrator, Executor, Trustee, etc.)


THIS PROOF OF CLAIM MUST BE SUBMITTED NO LATER THAN JULY 2, 2012, AND MUST BE MAILED TO:

WaMu 2004 Common Stock Litigation
c/o Rust Consulting, Inc.
Claims Administrator
Post Office Box 2493
Faribault, MN  55021-9193


A Proof of Claim received by the Claims Administrator shall be deemed to have been submitted when posted, if mailed by July 2, 2012, and if a postmark is indicated on the envelope and it is mailed first class, and addressed in accordance with the above instructions.  In all other cases, a Proof of Claim shall be deemed to have been submitted when actually received by the Claims Administrator.



# EXHIBIT C

| \multicolumn{4}{c}{WaMu 2004 Common Stock Litigation Exclusions} |
|---|---|---|---|
| No. | Name | Address | Date Received |
| 1 | Katherine Walker Childs | 12510 NE 94th Street<br>Kirkland, WA 98033-5875 | 2/27/2012 |
| 2 | Ruth E. Bridges | 1827 Thornhill Rd. #107<br>Wesley Chapel, FL 33544 | 3/12/2012 |
| 3 | Charlie Rivera | 12143 Maple Ridge Dr.<br>Parrish, FL 34219 | 3/19/2012 |
| 4 | Denny Sue Johnson | Box 1714<br>Gold Beach, OR 97444 | 3/19/2012 |
| 5 | Lillian N. Mosley<br>R.E. Mosley | 275 County Road 4247<br>DeKalb, TX 75559 | 3/22/2012 |
| 6 | Ernest A. Dahl | 2226 Vista Hogar<br>Newport Beach, CA 92660 | 3/23/2012 |
| 7 | Donald W. Dearment | 500 E. Pitt St.<br>Bedford, PA 15522 | 3/28/2012 |
| 8 | Arthur Nelson | P.O. Box 129<br>Seekonk, MA 02771 | 3/26/2012 |
| 9 | Mary Nake Bond | 7923 Colonel Glenn Rd.<br>Little Rock, AR 72204 | 3/27/2012 |
| 10 | Charles W. Hadley<br>Ethel S. Hadley | 3907 NE 110th St.<br>Seattle, WA 98125 | 3/27/2012 |
| 11 | Earl F. O'Connor | 7343 S. Sherman Dr.<br>Indianapolis, IN 46237 | 3/28/2012 |
| 12 | Abe Price | 158 Lollypop Lane #3<br>Naples, FL 34112-5109 | 3/29/2012 |
| 13 | Jane K. Whitney | 6609 Markstown Drive Apt B<br>Tampa, FL 33617-9365 | 3/30/2012 |
| 14 | Mark Paper | 700 Twelve Oaks Center Dr. Ste. 711<br>Wayzata, MN 55391 | 4/2/2012 |
| 15 | Edward T. Flotz | 127 Franconian Dr. S.<br>Frankenmuth, MI 48734 | 4/2/2012 |
| 16 | Bradley Keding | 15545 Meyer Ave<br>Allen Park, MI 48101 | 4/3/2012 |
| 17 | Debra A. Langford | 1480 North Meadow Rd.<br>Merrick, NY 11566 | 4/5/2012 |
| 18 | Josephine R Burns | P.O. Box 546<br>El Granada, CA 94108-0546 | 4/2/2012 |
| 19 | Moira L. L. Nichols | 33 Linda Ave. Apt. 2003<br>Oakland, CA 94611 | 4/6/2012 |
| 20 | Richard J. Imbra | 3312 Grandada Ave.<br>San Diego, CA 92104 | 4/6/2012 |
| 21 | Bruce MacLeod | 556 Mill Street Ext.<br>Lancaster, MA 01523 | 4/9/2012 |
| 22 | John Mitchell Campbell Jr. | 16 East Fox Chase Rd.<br>Chester, NJ 07930 | 4/9/2012 |
| 23 | Janet Schultz | 846 Newport bay Dr.<br>Edwardsville, IL 62025 | 4/9/2012 |
| 24 | Susan Iorns | 16 Ocean Parade<br>Pukerua Bay<br>Porirua 5026 New Zealand | 4/10/2012 |
| 25 | Cordelia F Biddle<br>H. Stephen Zettler | 514 Pine Street<br>Philadelphia, PA 19106 | 4/10/2012 |
| 26 | Lawrence Papola<br>Marie Papola | 191 Atlantic Pl.<br>Hauppauge, N 11788 | 4/10/2012 |